MITCHELL A. KRAMER
BARBARA H. KRAMER
KRAMER & KRAMER, LLP
1077 Rydal Road, Suite 100
Rydal, PA 19046
Telephone: (215) 887-9030
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |
|---|---|
| LYNX ASSOCIATES, INC. ) | ) |
| 24 Cayuga Avenue ) | |
| Oakland, NJ 07436-4026 ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 02-CV-2741 |
| ) | |
| ASG CONSULTANTS LTD. ) | |
| 36 Hett Creek Drive ) | |
| Port Moody, B.C., Canada V3H427 ) | |
| ) | |
| and ) | |
| ) | |
| AMAR GREWAL and KAL GREWAL, ) | |
| husband and wife, ) | |
| 36 Hett Creek Drive ) | |
| Port Moody, B.C., Canada V3H427 ) | |
| ) | |
| Defendants ) | |
| ) | |

_____ )    **JURY TRIAL DEMANDED**

PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Lynx Associates, Inc., by way of Complaint against the defendant says:

NATURE OF CASE

1.    The plaintiff is a company that contracted with defendant ASG Consultants Ltd. ("ASG")

to act as that defendant's sales representative to sell products manufactured or supplied

by ASG in a designated territory.

2.    The defendant ASG  has wrongfully terminated the plaintiff's contract and failed to pay

sums of money to the plaintiff as required by the applicable contract, in breach of the

contract and in violation of various applicable statutes.

3.    Defendants Amar and Kal Grewal are the shareholders of defendant ASG, which they do

not treat as a separate legal entity but rather as their personal instrumentality. Rather,

they act as its alter egos, stripping it of independent control of its assets, and thus they

must be held personally responsible for ASG's liabilities to prevent illegality and

injustice, including ASG's liabilities to Lynx Associates, Inc.

JURISDICTION AND VENUE

4.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that there is

complete diversity of citizenship between the parties and the amount in controversy

exceeds $75,000.00, exclusive of costs and interest

5.    Venue in this Court is proper under 28 U.S.C. §1391(a) and (c) as a substantial part of the

events and omissions giving rise to plaintiff's claim arose in this judicial district, plaintiff

sold defendant ASG's products in this judicial district and conducts a substantial volume

of business in this judicial district.

PARTIES

6.    Plaintiff Lynx Associates, Inc.  ("Lynx") is a New York corporation with its principal

place of business in Oakland, New Jersey.

7.    Defendant ASG Consultants Ltd. ("ASG") is a Canadian company with its principal

place of business in Port Moody, British Columbia, Canada.

8.    Defendants Amar Grewal and Kal Grewal, (collectively, "the Grewals")  also residing in

2

Port Moody, British Columbia, Canada, are husband and wife and are the sole

shareholders of defendant ASG and act as its alter egos.

<u>FACTUAL ALLEGATIONS</u>

9.    ASG is a manufacturer of a seedling protection system and trades under the name of

"Repellex."

10.   The Grewals are the sole shareholders of ASG, and maintain full control over all its

affairs.

11.   The Grewals own the facility at which all of ASG's business is done, and lease that

facility to ASG.

12.   Defendant Kal Grewal takes no salary from ASG, but instead at her discretion draws

whatever amount of money she desires for her personal use from ASG's corporate funds.

13.   Defendant Amar Grewal also draws money from ASG's corporate funds as he desires for

his personal use.

14.   As ASG does not own its facility, and does not have extensive equipment or inventory on

hand, it has limited assets.

15.   The Grewals' use of ASG as their personal instrumentality, especially their disregard of

corporate boundaries by taking ASG's funds for their personal use, renders ASG's assets

vulnerable to being stripped.

16.   The Grewals do not treat ASG as a distinct legal entity.

17.   Plaintiff is a sales agency engaged in the business of representing manufacturers and

distributors in the horticultural industry, and has spent many years and invested

substantial amounts of time and money fostering strong business relationships with

horticultural wholesalers and customers in the Territory in which it does business.

<u>ASG - LYNX CONTRACT</u>

18. On or about August 1, 1998, ASG and LYNX entered into a Sales Agency Agreement (the "Contract"). *See* Contract, attached hereto as Exhibit 1 and made part hereof.

19. Pursuant to the Lynx Contract, ASG appointed Lynx as ASG's sole and exclusive sales representative for goods and services manufactured or supplied (the "Products") by ASG in a territory comprising Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, Tennessee, West Virginia, Kentucky, Ohio, Indiana, Michigan, Wisconsin, Minnesota and Iowa (the "Territory").

20. Lynx had the exclusive right to represent ASG's Products in the Territory.

21. Lynx had fostered strong personal and business relationships over many years with its customers in said Territory.

22. The Contract had an initial term commencing August 1, 1998, and ending August 1, 2001.

23. The Contract provided as follows:

> In the event of a 'without cause termination' under paragraph 7.2 by the Principal, commission shall continue to be earned by the Agency for a period of three (3) years following the termination of this Agreement. The rate shall be at fifty percent (50%) of the amount the Agency earns pursuant to paragraph 6.1 of this agreement.

*See* Exhibit 1 at par. 6.2.

24. On September 28, 2001, plaintiff received a letter, from Bilfield & Sandel Co., L.P.A., attorneys for ASG, purporting to terminate the Agreement "for cause" which letter stated

4

in part as follows:

> Firstly, the agreement between Lynx Associates, Inc. and ASG Consultants dated August 1, 1998, has been terminated as you acknowledge in your letter of August 24, 2001.  The agreement was elected by ASG Consultants Ltd. to be terminated for cause. You were notified by correspondence dated November 14, 2000 of several issues and concerns on the part of my clients which have not been addressed and cured.

*See* September 28, 2001, letter, attached here as Exhibit 2 and made part hereof.

25.    That letter followed a letter dated April 19, 2001, attached hereto and made part hereof as

Exhibit 3, which spoke about termination of the Contract and continuation of the

relationship.  This letter either failed to properly terminate the agreement or triggered the

termination without cause provisions of the agreement.

26.    Paragraph 7.1 of the Contract, entitled "For Cause Termination" provides as follows:

> 7.1.1  Commission of a felony by either party in the course of performance of the Agreement shall entitle the other to effect immediate termination upon the giving of written notice.

> 7.1.2  The election of one party (the "aggrieved party") to terminate this Agreement upon (1) the actual breach or actual default by the other party in the reasonable performance of the defaulting party's obligation and duties under this Agreement and (2) the failure of the defaulting party to cure the same within thirty (30) days (the "cure period") after receipt by  the defaulting party of a good faith written notice from the aggrieved party specifying such breach or default and (3) provided that the defaulting party has not cured the default and the aggrieved party may then give written notice to defaulting party of his or its election to terminate fifteen (15) days after expiration of the cure period.

> 7.1.3  The other party is declared insolvent or bankrupt, or makes an assignment for the benefit of creditors, or a receiver is appointed or any proceeding is demanded by, for or against the other under any provision of the Federal Bankruptcy Act or any amendment thereof is not removed within sixty (60) days after

notice from the other party of election to terminate.

*See* Exhibit 1 at par. 7.1.

27.    None of the circumstances set forth in paragraph 7.1 of the Contract occurred, and the ASG's purported termination "for cause" was in fact a termination of the Lynx "without cause" and without foundation or justification under the Agreement.  Lynx was not given notice of any breach of its agreement with defendant or an opportunity to cure.  In fact, Lynx was not in breach of the contract.

28.    In addition to terminating Lynx without cause, ASG has failed to compensate Lynx as required by the Contract.

<u>COUNT I</u>

<u>BREACH OF CONTRACT</u>

29.    The averments contained in paragraphs one through 28 are incorporated by reference as though set forth fully herein.

30.    Defendant ASG breached the Contract by terminating the plaintiff in violation of the explicit provisions of the Contract.

31.    Defendant ASG breached the Contract by terminating the plaintiff contrary to the terms of the Contract, without cause, asserting that good cause existed to terminate the Contract where none exists and by failing to pay damages as required by the Contract.

32.    As a result of defendant ASG's breaches of the Contract, plaintiff has suffered and will continue to suffer damages including amounts defendant agreed to pay, lost profits, diminution of the value of its business, and loss of good will.

<u>COUNT II</u>

## BREACH OF CONTRACT

33.  The averments contained in paragraphs one through 32 are incorporated by reference as though set forth fully herein.

34.  The Contract gave plaintiff the exclusive right to solicit orders on behalf of defendant ASG within the Territory. *See* Exhibit 1 at par. 1.

35.  The Contract further gave plaintiff the right to receive commissions on all accepted orders solicited within and/or delivered to the Territory. *See* Exhibit 1 at par. 6.1.

36.  Defendant ASG breached the Contract by permitting individuals or entities other than plaintiff to solicit orders within the Territory and failing to pay plaintiff commissions for all orders solicited and/or delivered in the Territory.

37.  As a result of defendant ASG's breaches, plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its business, and loss of good will.

## COUNT III

## BREACH OF THE IMPLIED COVENANT OF

## GOOD FAITH AND FAIR DEALING

38.  The averments contained in paragraphs one through 37 are incorporated by reference as though set forth fully herein.

39.  Defendant ASG's termination of the plaintiff constituted a breach of the implied covenant of good faith and fair dealing.

40.  ASG persistently had backorder problems, thereby limiting the amount of the product that Lynx could sell.

41.  ASG failed to deliver Products in a prompt and reasonable manner, thereby limiting the amount of Products that Lynx could sell.

42.  As a result of defendant ASG's breaches of the covenant of good faith and fair dealing, the plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its business, and loss of good will.

COUNT IV

INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

43.  The averments contained in paragraphs one through 42 are incorporated by reference as though set forth fully herein.

44.  Prior to entering into its Contract with defendant ASG, plaintiff had long-standing, well-established relationships with wholesalers and customers in the horticultural business.

45.  Plaintiff also developed and entered into numerous advantageous business relationships with horticultural wholesalers and customers that purchased defendant ASG's Products through plaintiff.

46.  Defendant ASG knew of these relationships and in fact entered into its business relationship with plaintiff to capitalize on these relationships.

47.  By terminating plaintiff without cause and by contacting and selling Products directly to plaintiffs' customers, defendant ASG intended to disrupt these various relationships and to misappropriate and take unfair advantage of plaintiff's reputation and good will.

48.  As a result of this conduct, plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its businesses, and loss of good will.

8

## COUNT V

## INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

49.     The averments contained in paragraphs one through 48 are incorporated by reference as though set forth fully herein.

50.     Plaintiff had well-established relationships with subagents engaged by plaintiff to assist with the solicitation of orders of defendant ASG's Products within the Territory.

51.     Defendant ASG knew of these relationships and in fact entered into its business relationship with plaintiff to capitalize on these relationships.

52.     By terminating plaintiff without cause and by improperly contacting and soliciting these subagents to work on behalf of defendant ASG, defendant ASG intended to disrupt plaintiff's relationships with its subagents, and to misappropriate and take unfair advantage of plaintiff's reputation and good will.

53.     As a result of this conduct, plaintiff has suffered and will continue to suffer damages including lost profits, diminution of the value of its businesses, and loss of good will.

## COUNT VI

## VIOLATION OF THE NEW JERSEY SALES REPRESENTATIVES' RIGHTS LAW

54.     The averments contained in paragraphs one through 53 are incorporated by reference as though set forth fully herein.

55.     Plaintiff is a "Sales Representative" as defined under the Sales Representatives' Rights Law, N.J. Stat. Ann. 2A:61A-1(c).

56.     Defendant ASG is a "Principal" as defined under the Sales Representatives' Rights Law, N.J. Stat. Ann. 2A:61A-1(b).

57. Under N.J. Stat. Ann. 2A:61A-2, "when a contract between a principal and a sales representative to solicit wholesale orders is terminated, the commissions and other compensation earned and unpaid through the last day of the contract shall become due and payable within 30 days. When a sales representative is discharged the commissions and other compensation earned and unpaid through the last day of the contract shall become due and payable within seven days."

58. Contrary to the requirement of N.J. Stat. Ann. 2A:61A-2, defendant ASG has failed to pay the commissions owing and due to plaintiff.

59. Numerous and repeated demands have been made upon defendant ASG to account for and to pay the commissions outstanding to the plaintiff, but defendant ASG has failed and refused to do so.

60. As a result of defendant ASG's violations of the New Jersey Sales Representatives's Rights law, plaintiff has suffered damages including unpaid commissions and is entitled to costs and attorney fees.

<u>COUNT VII</u>

<u>VIOLATION OF VARIOUS SALES REPRESENTATIVE'S LAWS</u>

61. The averments contained in paragraphs one through 60 are incorporated by reference as though set forth fully herein.

62. Plaintiff is owed commissions for sales into a number of states in the Territory that require payment of commissions to be made within a limited time after termination of the contract between the agent and its principal. In each case, the time for payment of commissions has passed without payment being made.

10

63.    Those states in which exemplary damages, multiple damages, and/or liquidated damages plus counsel fees and costs are to be paid on past-due commissions, are New Hampshire, Massachusetts, New York, Pennsylvania, Maryland, Tennessee, Ohio, Indiana, Michigan, Wisconsin, Minnesota and Iowa.  Each of those states was part of plaintiff's Territory.

64.    As a result of defendant ASG's violations of the laws protecting sales representatives in various states, plaintiff has suffered damages including unpaid commissions, and is entitled to multiple, exemplary, and/or liquidated damages, costs, and attorney fees.

## COUNT VIII

## BREACH OF CONTRACT

65.    The averments contained in paragraphs one through 64 are incorporated by reference as though set forth fully herein.

66.    Defendant ASG contracted to pay plaintiff bonus commissions based on the amount of sales within the Territory, as well as the percentage increase of such sales.  The required bonus commissions were set forth in a writing, faxed to Lynx on or about September 26, 2000, which was accepted by Lynx.   *See* September 26, 2000, facsimile, attached hereto and made part hereof as Exhibit 4.

67.    Defendant ASG failed to pay commissions as required by the September 26, 2000, facsimile.

68.    As a result of defendant ASG's breach, plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its business, and loss of good will.

## COUNT IX

<u>PERSONAL LIABILITY OF DEFENDANTS AMAR AND KAL GREWAL</u>

69.     The averments contained in paragraphs one through 68 are incorporated by reference as though set forth fully herein.

70.     The Grewals have complete control over ASG.

71.     The Grewals siphon ASG's corporate funds for their personal benefit.

72.     The Grewals use of ASG's corporate funds ignores corporate formalities.

73.     ASG is a mere puppet or alter ego of its controlling shareholders, the Grewals.

74.     The Grewals' complete control of ASG's corporate funds, and their conduct in withdrawing those funds for personal benefit without corporate formalities, places ASG at risk of having its assets stripped and unavailable to pay ASG's debts and liabilities.

75.     The Grewals' ability and willingness to strip ASG of its assets, which assets are needed to pay plaintiff the sales commissions ASG owes to plaintiff, jeopardizes the public policy of the various sales representatives laws that show a legislative intent to protect sales representatives' right to payment.

76.     Justice and respect for public policy requires that this Court "pierce the corporate veil" between ASG and the Grewals, treat ASG and Grewals as alter egos, and hold the Grewals personally liable on all the Counts in this Complaint aforepleaded.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs pray for judgment against all defendants as follows:

1.     For actual damages in an amount according to proof at trial;

2.      For compensatory damages suffered by plaintiff for violations of the applicable statutes

        in an amount according to proof at trial;

3.      For multiple damages as required or authorized by statute;

4.      For punitive and exemplary damages in an amount according to proof at trial and

        sufficient to punish defendants and to deter others from similar wrongdoing;

5.      For attorney fees;

6.      For pre and post judgment interest;

7.      For costs of suit; and

8.      For such further relief as the Court may deem just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues so triable.

Kramer & Kramer, LLP

By:_____
        Mitchell A. Kramer
        Barbara H. Kramer
        John R. Prince
        1077 Rydal Road, Suite 100
        Rydal, PA  19046
        (215) 887-9030

s:\Lynx\amendedcomplaint.wpd

<u>SALES AGENCY AGREEMENT</u>

THIS AGREEMENT is made as of the <u>1st</u> day. of <u>August</u> , 1998 , by and

BETWEEN ASG Consultants LTD.,("PRINCIPAL") AND Lynx Associates Inc., ("AGENCY").

WHEREAS, ASG Consultants Ltd. is a manufacturer and supplier of products for tne horticulture industry;

WHEREAS, Lynx Associates Inc. is a sales agency engaged in the business of representing manufacturers and distributors to the horticultural industry.

NOW THEREFORE, in consideration of the parties, it is agreed:

1.  Exclusive Representation.  Principal grants to Agency the exclusive right to act as Principal's sales representative, to solicit orders for the Principal's goods, and services ("Products") within the following geographical area:

Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, Tennessee, West Virginia, Kentucky, Ohio, Indiana, Michigan, Wisconsin, Minnesota, Iowa ('7er@tory"), (exclusions, if any, are: none

2.  Sales Policies.  The prices, charges and terms of sale of the products ("Sales Policies") shall be established by the Principal.  The Sales Policies shall be those currently in effect and established from time to time by the Principal in its price books, bulletins, and other authorized releases, Written notice of each Sales Policy change shall be given by the Principal to the Agency at least thirty (30) days in advance of such change.

3.  Orders and Collections.  Orders for products solicited by the Agency shall be forwarded to and subject to acceptance by the Principal.  All invoices in connection with orders to the Territory shall be rendered by the Principal direct to the customers, and full responsibility for all collections and bad debts rests with the Principal.  Agency shall forward promptly to Principal any and all monies or remittances in any form which Agency may collect or which may be placed in Agency's hands by customers of Principal.  Furthermore, Agency shall make no allowances or adjustments in accounts, or authorize the return of any Products, unless given specific advanced authorization, in individual cases, in writing by Principal.  The Principal agrees to refer to the Agency for attention all inquiries concerning the Principal's products received by the Principal from any source or by any means whatsoever from the Territory or for shipment of products into the territory.  The Principal agrees to promptly furnish the Agency, on a daily basis, with copies of all correspondence and documentation between the Company and

**PLAINTIFFS**        1
**EXHIBIT**
**1**

any customer covering any products ordered from within or for shipment into the Territory or sold to a customer within the Territory.  The Principal also agrees to furnish the Agency with a statement by the tenth (10th) day of each month covering the amount of orders and amount of invoices for the previous month and the amount of commission due the Agency.

4. **Duties**.  The Purpose of the Agreement is to promote orders and reorders of Principal's products and services in the Territory and the long term goodwill of the Agency.  The Agency agrees to diligently and faithfully work the Territory in an endeavor to secure business for the Principal and use its best efforts to promote Principal's products.  Principal will provide product training to Agency staff and use its best efforts to perform and provide its products in a fit, merchantable, workmanlike and marketable manner, provide marketing support for the sales effort of the Agency and protect and promote Agency-customer relationships within the territory.

4.1  The Principal shall furnish the Agency with all necessary sales supplies such as catalogs, price lists, display material, and other sales aids in sufficient quantity to fulfill the requirements of the territory, at no charge, unless mutually agreed upon in writing.  In addition, the Principal shall furnish adequate samples to the Agency.  Such samples shall remain the property of the Principal and, except in the case of distributed samples, shall be returned to Principal upon termination of this Agreement, or at the request of the Principal, and in as good condition as when received by Agency with allowance for ordinary wear and tear.

4.2  Principal shall not be deemed to be in default under any of the terms and conditions of this Agreement where the delays or inability of Principal to perform is occasioned by strikes, boycotts, lockouts, shortages, currency devaluation, acts of God, governmental regulations, or other occurrences beyond the control of Principal, except that the Principal must notify the Agent within three (3) days of the submission of an order as required under paragraph 6.1.

5. **Relationship Created**.  The Agency is not an employee of the Principal for any purpose whatsoever, but is an independent contractor.  Principal is interested only in the results obtained by the Agency, who shall have sole control of the manner and means of performing under this Agreement.  Principal shall not have the right to require Agency to do anything which would jeopardize the relationship of independent contractor between Principal and Agency, unless otherwise agreed in writing.  Agency shall be responsible for Agency's taxes.  All expenses and disbursements incurred by Agency in connection with performance by Agency or Agency's sales activities shall be borne wholly and completely by Agency.  Agency does not have, nor shall Agency hold itself out as having any right, power or authority to create any contract or obligation, express or implied, on behalf of, in the name of, or binding on the Principal unless Principal shall consent thereto in writing, excepting to solicit orders as the same are more particularly defined in this Agreement.  Agency shall have the right to appoint and shall be solely responsible for Agency's own sub-agents, salespersons, employees, agents and representatives who shall be at Agency's own risk, expense, and supervision and shall not have any claim against the Principal for compensation or reimbursement unless otherwise agreed to in writing between the parties.  Principal shall not during the term of this Agreement or for three years after termination thereof engage, hire, or employ Agency's sub-

2

agents, salespersons, employees, representatives or agents unless otherwise agreed to by Agency.  On termination of the Agency's right to solicit orders for new business for the Principal, the Agency shall promptly return to the Principal all promotional material, order forms and supplies provided by the Principal to the Agency prior to termination.

5.1  Inasmuch as Agency will or may during the term hereof, be acting as sales agent of sales representative for other firms.  Agency warrants and agrees that during the term hereof, it will not, directly or indirectly, become interested in or devote any of his time, efforts or ability in the promotion and/or sale of any products or services which conflict with the business of Principal or which is contrary. to the best interest of Principal of become affiliated, associated, partner or member, directly or indirectly in any firm, organization or corporation which markets or promotes products which conflict with the business of principal.  Principal understands that the Agency currently represents the following firms: Smithers Oasis, Therm-O-Rock East, Chilean Nitrate, Natural Industries, Wellmark, Bio-Plex Organics, Custom Medallion, Nichols Paper Sleeves, V-Grip Corporation, Aquatherm Industries, DeWitt Company, Bamboo Supply Co., ACF Environmental, Texas Wire Products and Bird Depot.

6.  **Commission**.  The Agency's commission rate is: 10%.  The commission rate on the accounts of DeerBusters (Frederick, MD), PMC Specialties Group (Cincinnati, OH), BioPlex Organics (Manheim, PA), Clear Ridge Nursery (Union Bridge, MD) and Greenwood Nursery (McMinnville, TN) shall be, 5% until their current product pricing is changed and increased to at least the "Distdbut6r Cost' on the published Distributor Price List.  At that time, the commission rate shall change to the regular rate of 10%.,

6.1  Commissions are earned by the Agency on all "accepted orders" solicited within and / or delivered to the Territory, whether the orders are sent in by the Agency, received by the Principal by the mails, taken at the Principal's place of business, or otherwise. The Principal has the option of accepting or rejecting any order solicited within the Territory or any order for delivery to the Territory, except that an order will be considered an accepted order for the purpose of commissions, unless the Principal does not ship or invoice and notifies the Agency in writing of the order or orders rejected by the Principal within three (3) days of the submission of the order to the Principal whether submitted by the Agency, a customer or through some other source.  Principal shall be entitled to charge back against Agency's commission a sum equal to the commission paid on orders on which the Principal has shipped the product, the customer has returned the product and the Principal has given the customer full refund or credit for the purchase price on such returned product.  Commissions payable to the Agency shall be computed on net amount of each invoice rendered for each order or part of an order on shipment, exclusive of insurance, normal 'and recurring bona fide trade discounts and any applicable sales or similar taxes.  The Agency shall not be charged with or liable for advertising allowances nor any decrease or reduction of commission based upon volume or other discounts unless mutually agreed in writing by all parties prior to acceptance of the order, All commissions payable to the Agency thereunder shall be due and payable to Agency on or before the thirtieth (30th) day of the month immediately following invoicing.  In the event of termination of this Agreement by either party, the Agency shall be paid commissions on all orders from or deliveries to the Territory which are substantially attributable in whole or in part to activities or services performed prior to the effective date of termination, regardless of the shipment and invoice date, except in the event of a "for cause termination"

3

under Paragraph 7.1, in which event Commission obligation is limited to shipments made by Principal prior to the effective date of termination.

6.2  In the event of a "without cause termination" under paragraph 7.2 by the

16

Principal, commission shall continue to be earned by the Agency for a period of three (3) years following the termination of this Agreement. The rate shall be at fifty percent (50%) of the amount the Agency earns pursuant to paragraph 6.1 of this agreement.

6.3 Principal in Principal's sole discretion has the right to split Commissions on orders obtained solely outside the "Territory" as follows:

6.3.1 Twenty-five percent (25%) of the commission shall be payable to the Agency in the Territory where the customers order is OBTAINED (order 'entry' commission).

6.3.2 Fifty percent (50%) of the commission shall be payable to the Agency responsible for developing and maintaining specifications or contact that result in or contributes to the booking of the order or negotiated the contract. (Order 'influence' commission).

6.3.3 Twenty-five percent (25%) of the commission shall be payable to Agency in the Territory where the represented products are delivered. (order 'destination commission).

6.4 Both Principal and Agency recognize that on rare occasion and under unusual circumstances it may be necessary by mutual agreement to negotiate a percentage reduction of the Agency's commission and the Principal's profit margin at the same time in order to meet competition and obtain an order.

**7. Term.** This Agreement shall continue in force and effect for three (3) years and thereafter from year to year (not to exceed twenty-one (21) years unless renewed thereafter in writing by the parties) unless the first to occur of the following events, at which time the Agency's right to solicit new business shall terminate:

**7.1    For Cause Termination**

**7.1.1** Commission of a felony by either party in the course of performance of the Agreement shall entitle the other to effect immediate termination upon the giving of written notice.

**7.1.2** The election of one party (the "aggrieved party") to terminate this Agreement upon (1) the actual breach or actual default by the other party in the reasonable performance of the defaulting party's obligations and duties under this Agreement and (2) the failure of the defaulting party to cure the same within thirty (30) days (the "cure period") after receipt by the defaulting party of a good faith written notice from the aggrieved party specifying such breach or default and (3) provided that the defaulting party has not cured the default and the aggrieved party may then give written notice to defaulting party of his or its election to terminate fifteen (15) days after expiration of the cure period.

**7.1.3** The other party is declared insolvent or bankrupt, or makes an assignment for the benefit of creditors, or a receiver is appointed or any proceeding is

demanded by, for or against the other under any provision of the Federal Bankruptcy Act or any amendment thereof which is not removed within sixty (60) days after notice from the other party of election to terminate,

### 7.2    Without Cause Termination

7.2.1  After the third (3) year, or on expiration of any one (1) year term thereafter, provided written notice of election to terminate is given in whting to the other party one-hundred twenty (120) days before expiration of the existing term.

7.2.2 For each year of continuous service, after the first three years, the notice periods under Paragraphs 7.2.1 above, shall be extended an additional thirty (30) days. (e.g., in the fourth year - one-hundred fifty (150) days; fifth year - one-hundred eighty (180) days, etc.).

8. General Provisions.

8.1  This Agreement may be modified or amended in whole or in part from time to time only by the mutual written agreement signed by all parties and delivered by each to the other prior to the effective date of such modi ' fication or amendment.  Principal shall save Agency harmless from and against and indemnify Agency for all liability, loss, costs, expense or damages whatsoever caused by reason of any of Phncipal's products (whether or not defective or covered by warranty) and any act or commission of Principal or Principal's customers or vendees, including but not limited to any injury (whether to body, property of personal or business character or reputation) sustained by any person or organization or to any person or to property whether from breach of warranty, products liability, infringement or any patent rights or other rights of third p@ies and whether from any violation of municipal, state or federal laws or regulations governing the products or services or their sale which may result from the sale or distribution of the Product by the Agency, and including any act by the Agency related to the design, alteration, modification or change of the product supplied by the Principal, except as to modification or change caused by or assumed in writing by Agency. Principal agrees to include Agency as an insured in all policies of Principal which provide protection or indemnity against any liability to customers, consumers or third parties as to any liability or responsibility above referred to.

8.1.1  Agency hereby indemnities and holds Pdncipal free and harmless from any and all claims, demands, actions,'damages, or losses, including reasonable attorney's fees, arising from, out of, or in connection with the activities of Agency, and Agency's employees and agents, and the operation of Agency's business, equipment, motor vehicles, and other properties, in connection with the solicitation or servicing of customers hereunder.

8.2  If and in the event any provision of this Agreement is void or voidable under any applicable local or state law, such void or voidable provision shall not affect the balance of the Agreement which shall remain fully enforceable as if said void or voidable provision had been deleted by mutual consent of the parties.

8.3 This Agreement shall be binding upon each of the parties hereto, their heirs, successors, assigns and successors in interest.

5

8.4  Agency recognizes and acknowledges that Principal is the sole and exclusive owner of a registered trademark and proprietary technology.  Immediately upon the expiration or termination of this Agreement or any renewal thereof, Agency agrees to cease and desist from using the trademark or any proprietary technology of Principal.

8.5  All information received by Agency from Principal concerning the design, manufacture and development of Principal's products, which are stamped or marked "Confidential", is deemed to be a trade secret and shall not be disclosed by Agency to any person, firm or corporation without the prior written consent of Principal.

8.6 Agency agrees that during the term hereof, and for a period of five (5) years from the termination date of this Agreement, Agency will not, directly or indirectly through any other person, firm, or corporation, become interested in or devote any time, efforts or ability, towards the manufacture or technology transfer resulting in the manufacture of the same or similar competitive product as produced by the Principal without the written consent of the Principal.

8.7  The rights or obligations of any of the parties hereto may be assigned or delegated, respectively, in connection with the safe of all of any portion of the business of the assigning or delegating party; provided, however, that the assignee or delegate continues the transferred business (or portion thereof sold) upon essentially the same of larger scale and scope of effectiveness as the Principal's or Agency's business or portion thereof sold, as appropriate and enters into a binding legal contract, where permitted under controlling law, with the selling Principal or Agency prohibiting the seller from engaging in an activity competitive with the Products in the Territory for a period of three (3) years, or more, form the effective date of such transfer of assignment.


9.    Notices.  Any Notice, demand or request required or permitted to be given hereunder shall be in writing and shall be deemed'effective twenty-four (24) hours after having been deposited in the United States mail, postage prepaid, registered or certified and addressed to the addressee at its main office, as set forth below.  Any party may change its address for purposes of this Agreement by written notice given in accordance herewith.

DATE: September 01/98               Date: 9/1/98

(PRINCIPAL): ASG Consultants, Ltd.      (AGENCY): Lynx Associates Inc.

By: _____      By: _____
     Amar S. Grewal, President               Michael Kozak, President


Address of Principal's Main Office:      Address of Agency's Main Office:
36 Hett Creek Drive               25 Mandy Lane
Port Moody, BC V3H 4Z7               Washingtonville, NY 10992
Canada                     United States

19

6

# BILFIELD & SANDEL CO., L.PA.
## Attorneys and Counselors at Law

Murray D. Bitfield                                                    Telephone: 216/696-LAWS
Martin L Sandel                                                             Fax 216/696-2316
Olan R. Reese                                                    E Mail:    unthelaw@aol.com
Anthony Scott Farren                                            Web Site: www.696laws.com

September 28,2001

Mr. Michael Kozak, President
Lynx Associates, Inc.
24 Cayuga Aycnue
Oakland, NJ 074364026

Re:  Our Clients.- - RepeHex and ASG Consultants Ltd.

Dear  Mr. Kozak:

      Your letters of August 24 and September 25, 2001, have been forwarded to me for response.

      Firstly, the agreement between Lynx Associates, Inc. and ASG Consultants dated August 1, 1998, has been terminated as you acknowledge in your letter of August 24,2001.  The agreement was elected by ASG Consultants Ltd. to be terminated for cause.  You were notified by correspondence dated November 14, 2000 of several issues and concerns on the part of my clients which have not been addressed and cured.

      By reason of the for cause termination of the agreement, no commission will be paid for the period following termination.

      Secondly, my client wishes to amicably conclude all dealings with Lynx.  If amicable resolution is not possible, we are prepared to litigate.

      Thirdly, my client has been in the process of compiling a final accounting.  This accounting comprehends the following:

1.      The commission owed for June is $3,570.28;

2.      The actual Bio-Plex credit is $1,432.22. Since $676.06 has been applied to your account, the remaining commission of $756.16 will be currently applied.

3.    The sum of $175.80 for Clear Ridge (April summary) is due and owing.

1000 Erieview Tower    - 10th Floor -    -1301 East Ninth    -    Cleveland, Ohio 44114-1824

**PLAINTIFF'S**
**EXHIBIT 2**

2

SEP-28-2001 18:00        BILFIELD&SANDEL CO.,L.P.R            216 696 2316    P.03

Mr. Michael Kozak
September 28, 2001
Page 2

4.    Kruse Company filed Chapter XI bankruptcy.  This is not a credit or collection matter. Therefore, the $499.80 commission withheld is correct.

5.    My client's fax transmittal to you of July 24, 2000 contained a "tentative bonus plan" as clearly stated in the first sentence of the correspondence.  You were requested to submit your feedback but did not.  Accordingly, there was no meeting of the minds on this issue.  It never became part of the contract between Lynx and ASG.  Therefore, no incentive bonus exists and none will be paid.

6.    In December of 1999, when the Clear Ridge account commission was discussed with you, my client agreed that you would retain the commissions on Miller Horticultural, an account in Missouri, not in your territory, in lieu of the past Clear Ridge account.  My client also agreed to increase the Clear Ridge commission to 10% in the new year.  ASG has honored its part of the agreement. No additional commissions for April through December of 1999 will be paid.

7.    With respect to wire transfers, please note that over three years of wire transfers, there have been at least twelve wire,transfers where ASG absorbed the full transfer costs.  At $20.00 per transfer, your account will be debited $240.00.

8.    Commission credits of $306.37 from various customers In your territory, never previously submitted, are applied to your account.

In summary the following represents an accounting of the funds owed to you by ASG.

| | |
|---|---|
| June 2001 Commissions | $ 3,570.28 |
| July 2001 Commissions | $ 3,840.79 |
| August 1 - August 19, 2001 commissions | $ 3,520.11 |
| Bio-Plex Commission Credits | - $ 756.16 |
| Other Commission Credits | -$,306.37 |
| Wire Transfer Cost | - $ 240.00 |
| Clear Ridge @ April 2001 | $   175.80 |

21

Total Amount Owing:                     $9.804.45

3

SEP-28-2001 19:00          B I LF I ELD &SANDEL CO.  L. P.A          216 696 2316    P.04

Mr. Michael Kozak
September 28, 2001
Page 3


Although my client has against you which it intends to present in Court, ASG Consultants is willing in settlement and compromise to remit to you the sum of $9,804.45. This sum, if accepted by you, will requite fall release of all claims.  In the event that you are not prepared to execute a full release, we are prepared to proceed to litigation. I trust that you will proceed accordingly as you deem in your best interests.

Very truly yours,


Martin L. Sandel


MILS:Iaw

TOTAL P.04

4

..........

FROM    REPELLEX PROTECTION SYSTEMS          PHONE NO.     1 604 461 5767          Apr. 9 2001 11: 26AM P1

**SEEDLING PROTECTION SYSTEMS**

April 19/2001

**Lynx Associates Inc.**
**14 Cayuga Avenue,**
**Oakland, New Jersey**
**07891**

                    *RE:    Contract Renewal @ The Sales Agency Agreement*

<u>Attention: Michael Kozak</u>

Dear Michael:

As you are aware, The Sales Agency Agreement between Lynx Associates and ASG
Consultants expires August 19, 2001. According to the terms of the agreement (paragraph
7.2-1) written notice must be given to the other party 120 days prior to expiration of the
existing term by either party if they wish to discontinue or terminate the agreement.  I
wish to exercise this option with this letter and not continue with the current existing
agreement after its expiration date.

Please note that my intention for doing this is to actually <u>continue</u> the association with
Lynx Associates but under a new, revised sales rep agreement.  After 'three years under
the current terms, it is only natural any agreement would need to be fine tuned to
account for changes that have occurred during that period.  Therefore, I am unable to have
our current agreement automatically renew itself.

I look forward to discussing those changes in detail over the next few months, and
meeting at the Arett show to finalize our new agreement.  Best Regards.

Sincerely,


Mr. Amar Grewal
President


**ASG** Consultants Ltd.                     Port Moody      B.C. - Canada  - V3H 4Z7

Toll free 1-877-REPEL-IT

PLAINTIFF'S                     Website.www.repellex.com          E-mail: infio@repellex.com
EXHIBIT   3
                                      1

**SUBJECT:  PROPOSAL**

Thank you for taking the time to provide details In your counter proposal concerning the incentive program ASG Consultants Ltd. would like to offer.  I would however like to make the following recommendations.

1.  ASG will not provide any type of 'monthly straight fee'... for services offered above and beyond those outlined in our current agreement.  Any type of bonus compensation for past performance will be based on a percentage of future sales.

2.  As ASG will be setting up Reps across the country, as well as changing and fine tuning both territories and compensation packages for those reps, our incentive program cannot be based on "total company sales".  The incentive program will be based solely on the territory outlined in our current agreement with Lynx Associates.

3.  Lynx Associates Inc. will no longer be required to review any type of advertising or marketing material to be produced by ASG.  It is the sole responsibility of ASG to hire external proof – readers and advertisement specialists to undertake this duty.  Lynx Associates Inc. will however continue to fine tune and submit all programs, proposals, presentations etc., necessary to continue the growth of sales, as outlined by our agreement in place.

4.  With regards to the loss incurred by Lynx Associates Inc, over Year 1 of our agreement, please answer the following questions:
•    At the time of our agreement signing @ October 1998, was it not made clear by Lynx Associates Inc. that you expected to incur a loss in the first year due to the "low" sales currently in place.  Therefore, why would you now ask for compensation based upon this loss?

•    Was our higher commission structure (10%) not based upon the low current sales within the territory at the time of the agreement signing?

On the other hand, ASG Consultants Ltd., is willing to increase the incentive program originally offered to Lynx Associates Inc., based on total sales and rate of sales growth within the territory:

(1)  **TOTAL SALES WITHIN TERRITORY**

| | |
|---|---|
| $ 400,000 - 549,000 | 0.75 |
| $ 550,000 - 749,000 | 1.25 |
| $ 750,000 - 999.000 | 1.75 |
| $ 1,000,000 + | 2.00 |

(2)  **% INCREASE IN SALES**

| | |
|---|---|
| 20% - 24% | 0.75 |
| 25% - 29% | 1.00 |
| 30% - 34% | 1.25 |
| 35% - 39% | 1.50 |
| 40% + | 2.00 |

**PLAINTIFF'S
EXHIBIT  4**
1