IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASG CONSULTANTS, LTD., et al., <br><br> Defendants. | Civil Action No. 02-CV-2741 |

**DEFENDANTS' PRETRIAL MEMORANDUM**

In accordance with the Court's June 9, 2003 Scheduling Order, Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal, and Kal Grewal, through their undersigned counsel, respectfully submit their pretrial memorandum pursuant to Federal Rule of Civil Procedure 26(a)(3) and Local Rule of Civil Procedure 16.1(c).

**I.   NATURE OF ACTION AND JURISDICTION**

This matter arises out of the termination of the parties' relationship under a contract entitled the Sales Agency Agreement (the "Agreement"), pursuant to which Plaintiff Lynx Associates, Inc. ("Lynx") served as a sales representative for ASG. After termination of the Agreement, Lynx filed this action against Defendants for breach of the Agreement, breach of the implied covenant of good faith and fair dealing, interference with advantageous business relationships, violation of the New Jersey Sales Representatives' Rights Law, N.J.S.A. § 2A:61A-1, *et seq.,* violation of the sales representative's laws of various other states, and breach of a bonus agreement. Jurisdiction is premised upon 28 U.S.C. § 1332(a).

**II.   COUNTER STATEMENT OF FACTS**

ASG is a small, family-owned company specializing in the manufacture of repellant products that are designed to prevent animals from destroying or damaging plants. Specifically,

{00003986;v1}

ASG markets a seedling protection system under the trade name Repellex (ASG's product line will hereinafter be referred to as "Repellex").  Lynx is a sales agency engaged in the business of representing manufacturers and distributors of products utilized in the horticultural industry.

In approximately February 1998, Lynx learned of Repellex after receiving an inquiry about it from a customer.  Thereafter, Lynx contacted ASG to find out more about the product.  At the time, ASG was operating out of the Grewal's home and producing its line of products in their garage.  Following Lynx's initial inquiry, the parties continued discussions concerning Lynx representing ASG as a sales representative.  Prior to its discussions with Lynx, ASG had never contracted with a sales representative to sell Repellex.  Until it entered the Agreement with Lynx, ASG had marketed and sold Repellex on its own.

In June 1998, Lynx sent ASG a draft of its "Standard Representation Agreement," which was based in part on a standard agreement produced by the Manufacturers' Agents National Association ("MANA").  After some negotiations, none of which involved the contractual provisions at issue in this case, the parties executed the Agreement on September 1, 1998.[1]  The Agreement was drafted almost exclusively by Lynx.

The Agreement provided that Lynx would act as ASG's sales representative in a territory covering 22 states (the "Territory") for an initial term of three years.  Unless terminated, the Agreement would automatically renew from year to year for a period not to exceed twenty-one years.  The Agreement also provided that it could be terminated "for cause" at any time or "without cause" after the initial three-year term:

> 7.2  Without Cause Termination
>
> 7.2.1  After the third (3) year, or on expiration of any one (1) year term thereafter, provided written notice of election to terminate is

---

[1] The Agreement recites that its is made as of August 1, 1998 but it was not signed by the parties until September 1, 1998.

> given in writing to the other party one-hundred twenty (120) days before expiration of the existing term.

Id. at p. 5, ¶7.2. The Agreement further provided that ASG would have to continue paying Lynx commissions, at fifty percent of the Agreement rate, for a period of three years if ASG terminated the Agreement "without cause":

> In the event of a "without cause termination" under paragraph 7.2 by the Principal, commission shall continue to be earned by the Agency for a period of three (3) years following the termination of this Agreement. The rate shall be at fifty percent (50%) of the amount the Agency earns pursuant to paragraph 6.1 of this agreement.

Id. at p. 4, ¶6.2. This provision applied whether ASG terminated the Agreement after its initial term or after twenty years. Lynx was not required to make any continuing payments if it terminated the Agreement "without cause."

After executing the Agreement, Lynx began acting as ASG's sales representative in the Territory. During the course of the initial term of the Agreement, ASG became dissatisfied with Lynx's representation of ASG. In November 2000, ASG wrote to Lynx to express its dissatisfaction with Lynx's performance under the Agreement. In this letter, ASG outlined what it believed to be Lynx's failure to perform its obligations and duties as required under the Agreement. The issues raised in the November 2000 letter were not addressed to ASG's satisfaction and, in April 2001, ASG provided notice to Lynx that it would not renew the Agreement after the initial three-year term expired. While this letter did not follow the precise guidelines for a "for cause" termination established by the Agreement, the notice was based on the issues set forth in ASG's November 2000 letter to Lynx. ASG intended to, and did, terminate the Agreement "for cause" based on Lynx's failure to cure these problems.

The Agreement expired as of August 1, 2001 and Lynx ceased to represent ASG. The parties disputed the precise amount of commissions due and owing to Lynx as of the termination

of the Agreement and were not able to resolve this dispute. ASG believes that it owes Lynx approximately $10,000.00 in commissions.

Lynx filed its initial complaint against ASG in approximately May 2002. After the parties conducted discovery, Lynx sought leave to file a amended complaint, which the Court granted in July 2003. The amended complaint added Amar and Kal Grewal as Defendants, alleging that they are the "alter-ego" of ASG and that the corporate veil should be pierced to hold them personally liable for all claims against ASG.

### III. TRIAL WITNESSES AND EXHIBITS

**A.  Trial Witnesses**

Defendants will present the following witness at trial:

(1) Amar Grewal (liability and damages)
36 Hett Creek Drive
Port Moody, British Columbia, Canada V3H 4Z7
(604) 552-5769

Defendants may present the following witnesses at trial:

(1) Kal Grewal (liability and damages)
36 Hett Creek Drive
Port Moody, British Columbia, Canada V3H 4Z7
(604) 552-5769

(2) Michael Kozak (liability and damages)

Defendants do not intend to present any witnesses by deposition testimony.

**B.  Trial Exhibits**

Defendants may offer at trial the exhibits listed on the schedule attached hereto as Exhibit A. Defendants also may offer at trial any exhibits listed by Lynx as its trial exhibits.

### IV. MONETARY DAMAGES

Defendants are not seeking any monetary damages.

V.  **ESTIMATE OF DAYS REQUIRED FOR TRIAL**

Defendants estimate that the trial of this matter will take two to three days.

VI. **LEGAL ISSUES**

The pertinent legal issues concerning this matter are set forth at length in Defendants' Memorandum of Law in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, which is being filed this date.

Respectfully submitted,

KLEINBARD, BELL & BRECKER LLP

_____
Robert B. Bodzin
Eric J. Schreiner
1900 Market Street, Suite 700
Philadelphia, PA  19103
(215) 568-2000

Dated:  October 13, 2003