**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____          )

LYNX ASSOCIATES, INC.                                    )
                                                                        )
          Plaintiff                                          )
                                                                        )
          v.                                                  )          Civil Action No. 02-CV-2741
                                                                        )
ASG CONSULTANTS LTD.                                  )
                                                                        )
and                                                                     )
                                                                        )
AMAR GREWAL and KAL GREWAL,             )
                                                                        )
          Defendants                                    )
_____  )

## PROPOSED JURY INSTRUCTIONS

Plaintiff, Lynx Associates, Inc., hereby submits the following proposed jury instructions for the Court's consideration, with each proposed jury instruction on a separate page. Plaintiff reserves the right to submit further proposed instructions at a later time should such additional proposed instructions prove necessary.

1. **BURDEN OF PROOF IN CIVIL CASES**

This is a civil case, not a criminal one.  That means that one private party has sued another to recover money damages for a harm the first party claims the second did to it.  The party that sued is the plaintiff; the party or parties that are sued are called the defendant or defendants.  In this case, there is one plaintiff and three defendants.  In civil cases like this one, the plaintiff has the burden of proving those contentions which entitle it to relief in the form of a money judgment for damages.

When a party has the burden of proof on a particular issue, his contention on that issue must be established by a fair preponderance of the evidence.  The evidence establishes a contention by a fair preponderance of the evidence if you are persuaded that it is more probably accurate and true than not.

To put it another way, think, if you will, of an ordinary balance scale, with a pan on either side.  On one side of the scale, place all of the evidence favorable to the plaintiff.  On the other, place all of the evidence favorable to the defendant.  If the scales are equally balanced, you should find for the defendant.  If, after comparing the weight of the evidence, you feel that the scales tip, ever so slightly or to the slightest degree, in favor of the plaintiff, Lynx Associates, your verdict must be for the plaintiff.

Source: Pa. Suggested Standard Civil Jury Instructions No. 5.50.

**2. <u>THE ROLES OF JURY AND JUDGE</u>**

You, the jury, have heard the evidence.  Now it is your role to decide what the facts are, and then apply those facts to the law that I will give to you.  That is how you are to reach your verdict.

As the jury in this case, you and only you are the judges of the facts.  You will have to decide what happened.  I play no part in judging the facts.  My role is to be the judge of the law.  That means that I decide what the legal principles are that are to guide you in your decisions on the facts.

You are to judge the facts in this case solely on the evidence presented to you.  The evidence consists of the testimony of the witnesses, the exhibits marked into evidence, and any material that we read to you.

In deciding the facts, you may properly apply common sense and draw upon your own everyday practical knowledge of life.  You should keep your deliberations free of any bias or prejudice.  All parties have the right to expect you to consider the evidence conscientiously, and to apply the law as I outline it to you.

You should not take anything I may have said or done during the trial as indicating what I think of the evidence or what your verdict should be.

Sources:  Pa. Suggested Standard Civil Jury Instructions Nos. 1.34, 20.00(2)(4)..

### 3. <u>NUMBER OF WITNESSES</u>

The number of witnesses offered by one side or the other does not, in itself, determine the weight of the evidence.  It is a factor, but only one of many factors that you should consider.  Whether the witnesses appear to be biased or unbiased or whether they are interested or disinterested persons, are among the important factors that indicate the reliability of their testimony.  The important thing is the quality of the testimony of each witness.  In short, the test is not which side brings the greater quantity of evidence but which witness or witnesses, and which evidence, you consider most worthy of belief.  Even the testimony of one witness may outweigh that of many, if you have reason to believe his or her testimony in preference to theirs.

Source: Pa. Suggested Standard Civil Jury Instructions No. 5.03.

## 4.  **DEFINING "CONTRACT" AND "BREACH OF CONTRACT"**

Plaintiff, Lynx Associates, Inc., has made claims against defendant, ASG Consultants Ltd., for breaches of contract and has claimed that it has suffered monetary loss as a result. Some of the claims are based on the parties' Sales Agency Agreement.  Lynx also has a claim based on a bonus commission agreement.  I will discuss each of these claims, but first I want to explain to you what the law means when it speaks of a "contract" and what it means to breach that contract.

A contract is a legally, enforceable agreement between two or more competent parties who have each promised to do, or refrain from doing, some lawful act.   Failure of a party to a contract to perform in accordance with that contract's terms gives the other party a cause of action for breach of contract.  A breach of contract occurs when a party to the contract fails to perform any contractual duty of immediate performance, or violates an obligation, engagement or duty.

Source: Pa. Suggested Standard Civil Jury Instruction No. 15.00 and No. 15.04; Restatement (Second) of Contracts §235.

**5.  FACTS THE JURY NEED NOT DECIDE ABOUT THE CONTRACT**

In this case, you do not need to decide if the Sales Agency Agreement was a binding

contract between Lynx and ASG, as that fact is admitted.  *See* First Amended Complaint and

defendants' Answer thereto at ¶ 18.

You also do not need to decide what the Sales Agency Agreement means.  That is a job

for this Court. As I have already told you, the judge decides the law, and the jury decides the

facts.  One matter of law for the judge to decide is the meaning of the words of a contract that

may be in dispute.

Source:  Pa. Suggested Standard Civil Jury Instructions No 15.01 *W.S. Delavu, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 681 (Pa.Super.,2002), citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

6.  **TERMINATION OF THE CONTRACT**

Lynx's first claim for breach of contract is that ASG terminated the Sales Agency Agreement in a way that violated the terms of that Agreement.

The Sales Agency Agreement allowed ASG to terminate the contract under two different sets of conditions.  One, which I will discuss first, is termination without cause.  The other, which I will discuss later, is termination with cause.  (*See* First Amended Complaint and defendants' Answer thereto at ¶¶ 23, 26.)

I instruct you that in order to terminate the contract without cause, ASG had to give Lynx notice of its intention to terminate the contract at least 120 days before the expiration of the term of that contract.  ASG has admitted that it did not notify Lynx of such an intention to terminate without cause in the manner required by the contract. (*See* Defendant's Response to Request for Admission 7: "ASG admits, however, that its notification of termination did not meet those technical guidelines established by Paragraph 7.1.2 or 7.2.1 of the Agreement.")

The Sales Agency Agreement also allows ASG to terminate the contract with cause if Lynx itself did not meet its obligations under the Agreement, and if ASG gave Lynx written notice specifying how Lynx was failing to meet its obligations, and if after that notice Lynx did not cure any such failures within thirty days.  (*See* Paragraph 7.1.2 of the Agreement).  I instruct you that defendants have admitted that ASG did **not** follow the contractual procedures that it had to follow before it could terminate the parties' contract with cause. (*See* Defendant's Response to Request for Admission 6: "ASG admits, however, that its notification did not meet those technical guidelines established by Paragraph 7.1.2 of the Agreement.").  ASG did not identify any way in which Lynx failed to meet its obligations under the Agreement, and ASG never gave Lynx an

opportunity to cure any failures to meet any of its contractual obligations.

## 7.  DAMAGES FOR TERMINATION OF THE CONTRACT

If you find that defendant, ASG, breached its contract with Lynx by terminating Lynx without cause and without giving proper notice, Lynx is entitled to recover for that breach in accordance with the terms of that contract.   That contract states that "In the event of a 'without cause' termination' under paragraph 7.2 by the Principal, commissions shall continue to be earned by the Agency for a period of three (3) years following the termination of this Agreement." (*See* paragraph 6.2 of the Agreement, quoted in defendant's Response to Request for Admission Number 4).  The contract further explains that the rate should be 50% of the rate Lynx earned before termination, and should be on all orders received from Lynx's old territory.  *See* paragraphs 6.1 and  6.2 of the Agreement.

Thus, if you decide that ASG breached its contract by terminating Lynx without cause and without proper notice, you must decide the amount of commissions Lynx would have earned from September 28, 2001 to September 28, 2004, and award Lynx 50% of that amount in damages.

**8.  BREACH OF EXCLUSIVITY**

Lynx also claims that ASG breached the Sales Agency Agreement  in allowing others to solicit orders for ASG's products in Lynx's territory during the term of the Agreement, and then failing to pay commissions to Lynx on those sales. (*See* Count II of the First Amended Complaint).   If you find that ASG did breach the Agreement in this fashion,  Lynx is entitled to recover for those injuries which have been proved to you with reasonable certainty.  Those injuries are termed "damages."   If you find the contract was breached, you must then decide, based on the evidence that has been presented, what amount of money will compensate it for those injuries which were a direct and foreseeable result of the breach, and that the parties could have reasonably foreseen with the certainty at the time they made the contract.  Generally, the measure of damages is that sum which will compensate the plaintiff for the loss it has sustained. Here, that would be an amount equal to the commissions that were not paid to Lynx for sales that took place in its territory.

Source: Pa. Suggested Standard Civil Jury Instructions No. 15.26.

10

### 9. <u>IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>

Lynx also has claimed that ASG breached the Sales Agency Agreement's implied covenant of good faith and fair dealing by deliberately failing to fill orders promptly. If you find that ASG acted in bad faith by deliberately failing to fill orders promptly, you should find for Lynx on this claim. *See Dorn v. Stanhope Steel, Inc.*, 534 A.2d 798 (Pa. Super. 1987).

## 10.  <u>DAMAGES FOR BREACH OF IMPLIED COVENANT</u>

A breach of the implied covenant of good faith and fair dealing is a breach of the contract. Where one party to a contract breaches that contract, the other party may recover for those injuries which have been proved to you with reasonable certainty.  Those injuries are termed "damages."  Generally, the measure of damages is that sum which will compensate the plaintiff for the loss it has sustained.  If you find the contract was breached, you must then decide, based on the evidence that has been presented, what amount of money will compensate it for those injuries which were a direct and foreseeable result of the breach.

Where, as in this case, the plaintiff seeks damages for lost profits, plaintiff is entitled to an award in the amount of profits it would have received had the contract not been breached.  In establishing the loss of future profits, the only fact which must be proved with certainty is the fact that some loss has been suffered.  Once some loss has been established, the actual amount of lost profits may be estimated from the facts in evidence and all inferences which may be drawn from those facts.

Source: Pa. Suggested Standard Civil Jury Instructions No. 15.26;  *Eazor Express, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 520 F.2d 951(3d.Cir 1975);  *Willred Co. v. Westmoreland Meetal Mfg. Co.*, 200 F.Supp. 59 (E.D.Pa. 1961).

11. **BONUS COMMISSION CONTRACT**

Lynx has claimed that the parties entered into an additional contract for bonus commissions. ASG has disputed that the parties entered into such a contract. For Lynx to prevail, it must establish the following items by a preponderance of the evidence.

A. *An Offer*. A valid offer expresses a willingness to enter into a contract. The offer gives someone else the power to create the contract by making a valid acceptance of the offer and thereby "sealing the deal." In determining whether something was intended to be an actual offer, it must be examined in context, and it must be examined in light of the surrounding circumstances. You may find that one party's actions did constitute an offer when you consider the custom established in a particular trade or business, the relation between the parties, and the prior dealings between the

parties. The offer must create the power to accept, and thereby create a binding contract.

B. *Acceptance*. An acceptance is a clear indication that one agrees to be bound by the terms of the offer. The acceptance must be given within the time specified by the offer, or within a reasonable time if none is specified. The person to whom the offer was directed is the only person who may accept the offer.

If the parties have had previous dealings whereby certain methods of acceptance have become customary between them, then such will constitute a valid acceptance. An example of this would be a beginning of the requested performance upon receipt of the offer, rather than sending notice of acceptance of the offer first.

An acceptance must not change the terms of the offer, or impose any additional conditions. If it does change the terms of the offer, it will be considered a counteroffer, rather than an acceptance,

13

and will therefore not create a contract.

C. *Consideration*. There must be consideration given by each party to a valid contract. That is, each party must have bargained to exchange his or her promise for another. The exchanged promises are either promises to perform or promises not to perform some act. The value or adequacy of the consideration given will not usually be examined, but the circumstances that show that both parties were capable of bargaining will be examined. In that sense, competent people are free to contract, and even if one makes a bad deal, he or she is bound by the agreement.

Source: Pa. Suggested Standard Civil Jury Instructions No. 15.00.

### 12. <u>DAMAGES FOR BREACH OF BONUS COMMISSION CONTRACT</u>

If you find that ASG breached the bonus commission contract, Lynx is entitled to recover for those injuries which have been proved to you with reasonable certainty. Those injuries are termed "damages." If you find the contract was breached, you must then decide, based on the evidence that has been presented, what amount of money will compensate it for those injuries which were a direct and foreseeable result of the breach, and that the parties could have reasonably foreseen with the certainty at the time they made the contract. Generally, the measure of damages is that sum which will compensate the plaintiff for the loss it has sustained. Here, that would be an amount equal to the bonus commissions that were not paid to Lynx for sales that took place in its territory.

Source: Pa. Suggested Standard Civil Jury Instructions No. 15.26.

12. **TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**

In addition to a claim against ASG for breaking the contract between them, Lynx has a claim against ASG for tortious interference with advantageous business relationships between Lynx and wholesalers and customers in the horticultural business.  (*See* Count IV of the First Amended Complaint). One who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct;

(b) the actor's motive;

(c) the interests of the other with which the actor's conduct interferes;

(d) the interests sought to be advanced by the actor;

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other;

(f) the proximity or remoteness of the actor's conduct to the interference; and

(g) the relations between the parties.

Sources: Restatement (Second) of Torts §766B;  Restatement (Second) of Torts § 767.

16

### 13.  **DAMAGES FOR TORTIOUS INTERFERENCE**

If you find that ASG tortiously interfered with Lynx's advantageous business relationships, Lynx is entitled to damages that will fairly and adequately compensate it.  Fair and adequate compensation includes:

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

Sources: Restatement (Second) of Torts §774A.

### 14.  **ALTER EGO LIABILITY**

Lynx further claims that Amar Grewal and Kal Grewal are ASG's alter egos and

responsible for ASG's debts and liabilities to Lynx.  The law generally recognizes that alter ego

liability will be imposed "whenever necessary to avoid injustice." [See *Rinck v. Rinck,* 363

Pa.Super. 593, 526 A.2d 1221, 1223 (Pa.Super.1987)]. "Factors considered...include, but are not

limited to, the following: '[T]he failure to observe corporate formalities; non-payment of

dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant

shareholders; non-functioning of other officers and directors; absence of corporate records;

whether the corporation is a mere facade for the operations of a common shareholder or

shareholders; and gross undercapitalization.'"  [ *See Eastern Minerals & Chemicals Co. v.*

*Mahan,* 225 F.3d 330, 333 n. 7 (3d Cir.2000) (quoting *Wheeling-Pittsburgh Steel Corp. v.*

*Intersteel, Inc.,* 758 F.Supp. 1054, 1059 (W.D.Pa.1990))]. [*See also  C-L Associates, Inc. v.*

*Airside Equipment Sales, Inc.,* 2003 MBQB 104 (Manitoba Court of Queen's Bench, 2003) at ¶

17, citing *Canadian Opera Co. v. 670800 Ontario, Inc.*, [1990] OJ No. 2270 (QL)(Gen.Div.).

You may find one or both of the Grewals to be ASG's alter ego if you find that the funds

paid to the corporation "flowed through the corporation to the individual." *C-L Associates, Inc. v.*

*Airside Equipment Sales, Inc.,* 2003 MBQB 104 (Manitoba Court of Queen's Bench, 2003) at ¶

17, citing *Canadian Opera Co. v. 670800 Ontario, Inc.*, [1990] OJ No. 2270 (QL)(Gen.Div.).

These are all factors to be considered.  You do not need to find all of them in order to find

alter ego liability.  Rather, if you find that, taken as a whole, the Grewals, or either of them

individually, did not respect the separate corporate existence of ASG, you should find that person

or persons to be ASG's alter ego. [*See First Realvest, Inc. v. Avery Builders, Inc.,* 410 Pa.Super. 572, 600 A.2d 601, 604 (Pa.Super.1991)].

Respectfully submitted,

DATE: October 13, 2003

_____
KRAMER & KRAMER, LLP
Mitchell A. Kramer (04036)
1077 Rydal Road, Suite 100
Rydal, PA 19046
(215) 887-9030
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of Plaintiff's Proposed Jury Instructions to be served on counsel for defendants by Fedex Overnight Delivery as follows:

Robert B. Bodzin, Esquire
Kleinbard, Bell & Becker LLP
1900 Market Street, Suite 700
Philadelphia, Pennsylvania 19103

Date: October 13, 2003

_____
Mitchell A. Kramer
Attorney for Plaintiff