IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASG CONSULTANTS, LTD., et al., <br><br> Defendants. | Civil Action No. 02-CV-2741 |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE***

**I.   INTRODUCTION**

Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal and Kal Grewal, through their undersigned counsel, file this Memorandum of Law in opposition to Plaintiff Lynx Associates, Inc.'s ("Lynx") Motion *In Limine* (the "Motion"), which seeks to exclude all evidence concerning defaults or deficiencies in Lynx's performance of its obligations under the Sales Agency Agreement (the "Agreement"). This evidence should not be excluded because it is relevant both to Defendants' defense that ASG terminated the Agreement "for cause" and their defense that Lynx cannot recover damages under the Agreement because of its own material breaches of the Agreement.

Although styled as a motion *in limine* to exclude certain evidence, the Motion essentially asks the Court to enter summary judgment against Defendants on the issue of whether ASG terminated the Agreement "for cause." In fact, the Motion assumes that Defendants cannot raise the "for cause" termination defense. This assumption is incorrect because there is sufficient evidence in the record to permit ASG to at least have the opportunity to present evidence to the

jury and argue that it terminated the Agreement "for cause." As a result, Lynx's Motion is fundamentally flawed.

Lynx contends that Defendants cannot raise the defense that ASG terminated the Agreement "for cause" because ASG purportedly did not follow the contractual notice provisions and, furthermore, because ASG allegedly has admitted that it did not terminate Lynx "for cause." From that starting point, Lynx then argues that any evidence concerning defaults or deficiencies in Lynx's performance is irrelevant and inadmissible under Federal Rule of Evidence 402. Both of Lynx's aforementioned contentions are wrong. ASG complied with the terms of the Agreement and Defendants have not admitted that ASG did not terminate Lynx "for cause." Thus, the defense that ASG terminated the Agreement "for cause" is very much a part of this case and evidence in support of this defense is both relevant and admissible under Rule 402.

Lynx's Motion also is fatally flawed because it ignores the fact that, regardless of whether ASG terminated the Agreement "for cause," Lynx cannot recover damages under the Agreement if it materially breached the Agreement. The evidence Lynx seeks to exclude plainly is relevant to this issue. Accordingly, Lynx's Motion should be denied.[1]

## II. ARGUMENT

Lynx's Motion should be denied because evidence pertaining to defaults or deficiencies in Lynx's performance under the Agreement is patently relevant to two of Defendants' defenses: 1) ASG terminated the Agreement "for cause;" and, 2) Lynx cannot recover under the Agreement because of its own breaches of the Agreement.

---

[1] The facts relevant to this Motion already are set forth at length in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (filed on October 14, 2003) and in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (filed contemporaneously with this Memorandum of Law). Accordingly, Defendants will not repeat them herein.

From the start of this case, throughout discovery, and in answering Plaintiff's First Amended Complaint, Defendants consistently have maintained that ASG terminated the Agreement "for cause." Defendants asserted this position when they answered Lynx's First Amended Complaint, raising the following affirmative defenses:

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because ASG's nonrenewal of the parties' agreement was justified, legitimate and **for cause**.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by **Plaintiff's own material breaches of the Agreement**.

See Defendants' Answer to Plaintiff's First Amended Complaint at p. 12 (emphasis added) (attached hereto as Exhibit A).[2] Moreover, Amar Grewal could not have been more clear during his deposition that ASG terminated Lynx "for cause" based on ASG's failure to comply with its obligations and duties under the Agreement. See Grewal Trans. at p. 136, l.9-p. 137, l.12; p. 180, l.18-p. 181, l.1 (attached hereto as Exhibit C).

Lynx's claim that "[t]here is now no dispute about the fact that ASG did not terminate Lynx for cause in the way the Agreement provides" is untenable. See Plaintiff's Memorandum of Law in Support of its Motion *In Limine* ("Plaintiff's Memo of Law") at p. 3. The Agreement, in relevant part, provides as follows with respect to a "for cause" termination:

7.1  For Cause Termination

---

[2] Under the liberal notice pleading standard required by the Federal Rules of Civil Procedure, these affirmative defenses plainly are sufficient to raise the defense that ASG terminated the Agreement "for cause." See S.K.A. Steel Trading, Inc. v. Penn Terminals, Inc., 1998 U.S. Dist. LEXIS 19190 at *2 (Dec. 3, 1998 E.D. Pa.) ("The federal rules of civil procedure require only notice pleading, which requirement is equally applicable to the pleading of affirmative defenses. It is not necessary for a defendant to use 'magic words' in asserting an affirmative defense, but the defense must simply be sufficient to put the court and plaintiff on notice of the issues involved.") (attached hereto as Exhibit B).

****

> 7.1.2 The election of one party (the "aggrieved party") to terminate this Agreement upon (1) the actual breach or actual default by the other party in the reasonable performance of the defaulting party's obligations and duties under this Agreement and (2) the failure of the defaulting party to cure the same within thirty (30) days (the "cure period") after receipt by the defaulting party of a good faith written notice from the aggrieved party specifying such breach or default and (3) provided that the defaulting party has not cured the default and the aggrieved party may then give written notice to defaulting party of his or its election to terminate fifteen (15) days after expiration of the cure period.

See Exhibit 1 to Plaintiff's Memo of Law at p. 4, ¶7.1.2. ASG substantially complied with the notification provisions of the Agreement, following a process that, if anything, was more generous to Lynx than the specific procedures outlined in the Agreement

Specifically, on November 14, 2000, ASG sent Lynx a letter that plainly provided Lynx with "good faith" notice of its failure to comply with its duties and obligations under the Agreement. See Exhibit 3 to Plaintiff's Memo of Law. In the November 14th letter, Amar Grewal lists the deficiencies in Lynx's performance in five separate, numbered paragraphs and specifically states: "I need these issues/problems to be immediately corrected, without any excuses." Id. at p.1. ASG then gave Lynx more than the thirty days required under the Agreement to cure these deficiencies. Finally, when the deficiencies were not cured, ASG sent Lynx a letter on April 19, 2001, that provided Lynx with notice that ASG was electing to terminate the Agreement at the end of the initial term (rather than within fifteen days of the expiration of the cure period as permitted under the Agreement). See April 19, 2001 letter from Amar Grewal to Michael Kozak (attached hereto as Exhibit D). Although Mr. Grewal stated in the April 19th letter that ASG was providing notice of its decision to terminate the Agreement pursuant to paragraph 7.2.1 of the Agreement, which relates to "without cause termination," Mr. Grewal's deposition testimony plainly demonstrates that his intent was to terminate the

Agreement at the expiration of the initial term "for cause." See Grewal Trans. at p. 136, l.9-22; p. 180, l.18-p. 181, l.1. In any case, as of April 2001, Lynx was fully aware that ASG had elected to terminate the Agreement at the end of its initial term.[3] ASG also confirmed in writing in September 2001 that it previously had terminated the Agreement "for cause." See Exhibit 2 to Plaintiff's Memo of Law.

The fact that ASG may not have strictly adhered to the technical notification guidelines set forth in the Agreement does not preclude it from raising its termination "for cause" defense. Lynx was on full notice of ASG's position that it was not complying with its duties and obligations under the Agreement and Lynx had more than thirty days to cure these deficiencies. In other words, ASG substantially complied with these requirements. See generally Universal Computer (Systems) Ltd. v. Drescher, 653 F. Supp. 518, 525 (D.N.J. 1987) ("Substantial performance occurs when a party acts in good faith and only makes slight deviations from its prescribed obligations, so that the other party gets substantially what it bargained for."); see also W.A. Butler Co. v. Colgate-Palmolive Co., 1992 U.S. Dist. LEXIS 15259 at * 9-10 (E.D. Pa. Oct. 1, 1992) (dismissing breach of contract claims based on allegations of improper notice of non-renewal of contracts because defendant substantially complied with notice provisions of contracts) (attached hereto as Exhibit E). In fact, the notification process described above that ASG followed, if anything, was more generous towards Lynx than that established by the Agreement. At a minimum, whether ASG substantially complied with the notice provisions of the Agreement constitutes a disputed issue of fact that needs to be decided by the jury.

In its Motion, Lynx relies upon two things to support its baseless contention that ASG allegedly has admitted that it did not follow the procedures required to terminate the Agreement

---

[3] Consequently, Lynx's claim that ASG did not terminate the Agreement until "shortly after the first one year renewal term began" is meritless. See Plaintiff's Memo of Law at p. 2.

"for cause" -- Defendants' second affirmative defense and ASG's response to request for admission number six. Defendants' second affirmative defense sets forth the defense that ASG elected not to renew the Agreement at the end of its initial term, which action did not constitute a termination "for cause" or "without cause" under the terms of the Agreement. This defense does not constitute an admission by Defendants that ASG did not terminate the Agreement "for cause" or that Defendants had abandoned their "for cause" termination defense. It is nothing more than one of several alternative, affirmative defenses. Defendants remained free to assert the defense that ASG terminated the Agreement "for cause." See Fed. R. Civ. Proc. 8(e)(2) ("A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.").

Lynx's reliance on ASG's response to Lynx's request for admission six similarly is misplaced. In this response, ASG specifically denied that it never notified Lynx that ASG terminated the Agreement "for cause." ASG merely admitted "that its notification did not meet those technical guidelines established by Paragraph 7.1.2 of the Agreement." See Exhibit 4 to Plaintiff's Memo of Law at p. 6. As discussed above, the fact that the Agreement's "technical guidelines" were not met does not mean that ASG did not comply with the terms of the Agreement. In sum, whether ASG terminated the Agreement "for cause" is an issue that is central to this case.

As a result, Lynx's reliance on Federal Rule of Evidence 402 is unavailing. Rule 402 provides that relevant evidence generally is admissible. In this case, evidence pertaining to defaults and deficiencies in Lynx's performance under the Agreement is directly relevant to the issue of whether ASG terminated the Agreement "for cause."

Furthermore, setting aside whether ASG complied with the requirements to terminate the Agreement "for cause," evidence pertaining to defaults and deficiencies in Lynx's performance under the Agreement is relevant to the ultimate determination of whether Lynx should be entitled to recover under the Agreement. A party's material breach of a contract is a defense to an attempt to enforce the same contract. See In re: Manuel Kaplan, 143 F.3d 807, 812 (3d Cir. 1997) ("Likewise, if First Options materially breached its promises to Kaplan, he may assert that breach as a defense to First Options' proof of claim."); In re: Billingsley, 276 B.R. 48, 53 (Bankr. D.N.J. 2002) ("Outside of the bankruptcy context, the breach of a material term of an agreement by one party relieves the other party of its obligations."); United Incentives, Inc. v. Sea Gull Lighting Products, Inc., 1992 U.S. Dist. LEXIS at *15 (E.D. Pa. March 2, 1992) ("A material failure of performance by a party to a contract discharges the non-breaching party from all liability under the contract.") (attached hereto as Exhibit F); see also Restatement (Second) of Contracts § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."). Here, regardless of whether ASG properly terminated the Agreement "for cause," Lynx cannot recover under the Agreement if it committed its own material breaches of the Agreement. Lynx simply ignores this principle in arguing that evidence concerning deficiencies in Lynx's performance of its contractual obligations is irrelevant.

Finally, Lynx's reliance on Federal Rule of Evidence 403 also is misplaced. Rule 403 allows a court to exclude otherwise relevant evidence if "its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of . . . waste of time . . . ." Fed. R. Evid. 403 (emphasis added). In this case,

the probative value of evidence concerning defaults and deficiencies in Lynx's performance under the Agreement is not "substantially outweighed" by the danger that such evidence will create unfair prejudice, confuse the issues, mislead the jury, or waste time. This evidence relates to an issue that is at the very heart of this case. Indeed, the jury will be asked to decide if ASG terminated the Agreement "for cause" and/or if Lynx's own material breaches of the Agreement should preclude it from recovering damages. If anything, the jury's consideration of evidence concerning defaults and deficiencies in Lynx's performance under the Agreement will be helpful, facilitating the jury's fair and just resolution of this case.

### III.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Lynx's Motion and allow Defendants to present evidence concerning defaults or deficiencies in Lynx's performance of its obligations under the Agreement.

Respectfully submitted,

KLEINBARD, BELL & BRECKER LLP

_____
ROBERT B. BODZIN, ESQUIRE
ERIC J. SCHREINER, ESQUIRE
1900 Market Street, Suite 700
Philadelphia, PA  19103
(215) 568-2000

Dated:  October 28, 2003