**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNX ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASG CONSULTANTS, LTD., et al., <br><br> Defendants. | Civil Action No. 02-CV-2741 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal and Kal Grewal, through their undersigned counsel, file this Memorandum of Law in opposition to Plaintiff Lynx Associates, Inc.'s ("Lynx") Motion for Partial Summary Judgment (the "Motion").

Lynx's Motion is premised upon three dubious propositions. First, its claim that ASG has admitted that it did not terminate Lynx "for cause" is untenable. From the beginning of this action through discovery and answering Lynx's First Amended Complaint, Defendants have maintained that ASG terminated the Sales Agency Agreement (the "Agreement") "for cause." Numerous disputed facts surround this issue and Defendants are entitled to assert this defense at trial. Second, Lynx's contention that ASG's decision not to renew the Agreement should be considered a "termination without cause" misconstrues the Agreement. Pursuant to the terms of the Agreement, ASG could elect not to renew the Agreement at the conclusion of its initial three-year term without its decision being considered a "termination without cause." Third, Lynx assumes that paragraph 6.2 of the Agreement is enforceable as a matter of law. Paragraph 6.2, however, constitutes a penalty provision that is unenforceable as a matter of law.

{00004833;v1}

Consequently, partial summary judgment should be denied for three separate reasons: (1) genuine issues of disputed fact exist concerning whether ASG terminated Lynx "for cause"; (2) Lynx is not entitled to judgment as a matter of law because under the Agreement ASG's decision not to renew after the initial three-year term was not a "termination for cause"; and (3) Lynx is not entitled to judgment as a matter of law because paragraph 6.2 is an unenforceable penalty provision.

## II.  COUNTERSTATEMENT OF FACTS

In approximately February 1998, Lynx learned of ASG's Repellex line of repellant products (hereinafter referred to as "Repellex") after receiving an inquiry about it from a customer. See Transcript of the June 17, 2003 Deposition of Michael Kozak ("Kozak Trans."), at p. 22, l.8-15 (attached hereto as Exhibit A). Lynx then contacted ASG to find out more about Repellex. Id. at p. 27, l.14-p. 28, l.12. Michael Kozak, Lynx's president, spoke with Amar Grewal about Repellex and thereafter wrote to ASG expressing Lynx's interest in potentially becoming a sales representative for the company. Id. at p. 29, l.16-24. Prior to its discussions with Lynx, ASG had never entered into a contract with a sales representative to sell Repellex. See Transcript of the June 18, 2003 deposition of Amar Grewal ("Grewal Trans."), at p. 21, l. 13 (attached hereto as Exhibit B). Up until this time, ASG had marketed and sold Repellex on its own by advertising in trade magazines. Id. at p. 21, l.9-20.

Following Lynx's initial inquiry, the parties continued discussions concerning Lynx representing ASG as a sales representative. At the time, ASG was operating out of the Grewals' home and producing its line of products in their garage. Id. at p. 36, l.10-20. Lynx was aware that ASG was a small company being run out of the Grewals' home with very little staff. See Kozak Trans at p. 69, l.4-13.

On June 8, 1998, Lynx sent ASG a draft of its "Standard Representation Agreement". See June 3, 1996 Facsimile from M. Kozak to A. Grewal (attached hereto as Exhibit C). Lynx drafted this contract and had portions of it reviewed by counsel. See Kozak Trans. at p. 66, l.22-p. 67, l.16. Parts of Lynx's "Standard Representation Agreement" were based on an a standard agreement produced by the Manufacturers' Agents National Association ("MANA"). Id. at p. 68, l.13-16. After some negotiations, none of which related to the contractual provisions at issue, the parties executed the Agreement on September 1, 1998. The Agreement was drafted almost exclusively by Lynx.

The Agreement provided that Lynx would act as ASG's sales representative in a territory covering 22 states (the "Territory") for an initial term of three years. Unless terminated, the Agreement would automatically renew from year to year for a period not to exceed twenty-one years. See Exhibit 1 to Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment ("Plaintiff's Memo of Law") at p. 1, ¶1 and p.4, ¶7. The Agreement also provided that it could be terminated "for cause" at any time or "without cause" after the initial three-year term:

> 7.1  For Cause Termination
>
> ****
>
> 7.1.2  The election of one party (the "aggrieved party") to terminate this Agreement upon (1) the actual breach or actual default by the other party in the reasonable performance of the defaulting party's obligations and duties under this Agreement and (2) the failure of the defaulting party to cure the same within thirty (30) days (the "cure period") after receipt by the defaulting party of a good faith written notice from the aggrieved party specifying such breach or default and (3) provided that the defaulting party has not cured the default and the aggrieved party may then give written notice to defaulting party of his or its election to terminate fifteen (15) days after expiration of the cure period.
>
> ****

>7.2  Without Cause Termination
>
>7.2.1  After the third (3) year, or on expiration of any one (1) year term thereafter, provided written notice of election to terminate is given in writing to the other party one-hundred twenty (120) days before expiration of the existing term.

<u>Id.</u> at p. 5, ¶7.2.  The Agreement further provided that ASG would have to continue paying Lynx commissions, at fifty percent of the Agreement rate, for a period of three years if ASG terminated the Agreement "without cause":

>In the event of a "without cause termination" under paragraph 7.2 by the Principal, commission shall continue to be earned by the Agency for a period of three (3) years following the termination of this Agreement.  The rate shall be at fifty percent (50%) of the amount the Agency earns pursuant to paragraph 6.1 of this agreement.

<u>Id.</u> at p. 4, ¶6.2.  Lynx, on the other hand, was entitled to terminate the Agreement "without cause" without incurring any financial penalty.

After executing the Agreement, Lynx began acting as ASG's sales representative in the Territory.  During the course of the initial term of the Agreement, problems began to develop with Lynx's representation of ASG.  In November 2000, Mr. Grewal wrote to Mr. Kozak to express ASG's dissatisfaction with Lynx's performance.  <u>See</u> November 14, 2000 letter from A. Grewal to M. Kozak (attached hereto as Exhibit D).  In this letter, Mr. Grewal provided Lynx with notice of Lynx's failure to perform its obligations and duties under the Agreement and an opportunity to cure these deficiencies.  <u>See</u> Grewal Trans. at p. 149, l.18-p. 152, l.24.  In fact, ASG allowed Lynx even more than the thirty days required under the Agreement to cure these deficiencies.  These deficiencies were not cured to ASG's satisfaction, however, and in April 2001 ASG gave Lynx notice that it would not renew the Agreement after its initial three-year term expired.  <u>See</u> April 19, 2001 letter from A. Grewal to M. Kozak (attached hereto as Exhibit E).

Mr. Grewal stated in the April 19th letter that ASG was providing notice pursuant to paragraph 7.2.1of the Agreement of its decision to "discontinue or terminate" the Agreement. Id. While paragraph 7.2.1 relates to "without cause termination," Mr. Grewal's deposition testimony plainly demonstrates that his intent was to terminate the Agreement at the expiration of the initial term "for cause." See Grewal Trans. at p. 136, l.9-22; p. 180, l.18-p. 181, l.1. Thus as of April 2001, Lynx was on notice that ASG was terminating the Agreement at the end of its initial term. Consequently, Lynx's claims that "ASG terminated Lynx after the contract had renewed pursuant to its terms" and that ASG did not make it clear that it no longer wanted Lynx to represent it until August 2001 are without merit. See Plaintiff's Memo of Law at p.p 1-2.

### III. ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is warranted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). All reasonable inferences must be drawn in favor of the non-moving party. See La Fata v. Raytheon Co., 223 F. Supp. 2d 668, 678 (E.D. Pa. 2002). In this case, there are genuine issues of material fact and Lynx is not entitled to judgment as a matter of law. Accordingly, the Court should deny Lynx's Motion.

#### B. Lynx is not Entitled to Partial Summary Judgment

### 1.     There are Genuine Issues of Disputed Fact Concerning Whether ASG Terminated the Agreement "For Cause"

Lynx's Motion should be denied because there are genuine issues of disputed fact concerning whether ASG terminated the Agreement "for cause" that preclude the entry of summary judgment. Lynx attempts to circumvent the issue of whether ASG terminated the Agreement "for cause" by making the self-serving claim that "Defendant has now admitted that it did not terminate Lynx for cause." See Plaintiff's Memo of Law at p. 1. This claim is the very foundation of Lynx's Motion. Unfortunately for Lynx, it is a foundation made of sand.

Defendants have made no such admission. Lynx's claim that Defendants have made this admission is deliberately misleading because Lynx intentionally ignores both the affirmative defenses in Defendants' Answer to Plaintiff's First Amended Complaint and the deposition testimony of Amar Grewal. As Lynx is well aware, ASG has contended from the very outset of this case that it terminated Lynx "for cause." ASG maintained this position when it answered Lynx's First Amended Complaint, raising the following affirmative defenses:

#### FOURTH DEFENSE

>   Plaintiff's claims are barred, in whole or in part, because ASG's nonrenewal of the parties' agreement was justified, legitimate and **for cause**.

#### FIFTH DEFENSE

>   Plaintiff's claims are barred, in whole or in part, by **Plaintiff's own material breaches of the Agreement**.

See Defendants' Answer to Plaintiff's First Amended Complaint at p. 12 (emphasis added)

(attached hereto as Exhibit F).[1]  Moreover, Amar Grewal could not have been more clear during his deposition that ASG terminated Lynx "for cause" based on ASG's failure to comply with its obligations and duties under the Agreement.  See Grewal Trans. at p. 136, l.9-p. 137, l.12; p. 180, l.18-p. 181, l.1.

The fact that ASG may not have strictly adhered to the notification guidelines set forth in the Agreement does not preclude it from raising its termination "for cause" defense.  ASG's November 14, 2000 letter plainly provided Lynx with "good faith" notice of its failure to comply with its duties and obligations under the Agreement.  ASG then gave Lynx more than the thirty days required under the Agreement to cure these deficiencies.  Finally, when the deficiencies were not cured, ASG provided Lynx notice, through its April 19, 2001, letter that it was terminating the Agreement at the end of the initial term (rather than within fifteen days of the expiration of the cure period as permitted under the Agreement).  This is substantial compliance with the requirement of the Agreement.  See Universal Computer (Systems) Ltd. v. Drescher, 653 F. Supp. 518, 525 (D.N.J. 1987) ("Substantial performance occurs when a party acts in good faith and only makes slight deviations from its prescribed obligations, so that the other party gets substantially what it bargained for."); see also W.A. Butler Co. v. Colgate-Palmolive Co., 1992 U.S. Dist. LEXIS 15259 at * 9-10 (E.D. Pa. Oct. 1, 1992) (dismissing breach of contract claims based on allegations of improper notice of non-renewal of contracts because defendant substantially complied with notice provisions of contracts) (attached hereto as Exhibit H).  If

---

[1] Under the liberal notice pleading standard required by the Federal Rules of Civil Procedure, these affirmative defenses plainly are sufficient to raise the defense that ASG terminated the Agreement "for cause."  See S.K.A. Steel Trading, Inc. v. Penn Terminals, Inc., 1998 U.S. Dist. LEXIS 19190 at *2 (Dec. 3, 1998 E.D. Pa.) ("The federal rules of civil procedure require only notice pleading, which requirement is equally applicable to the pleading of affirmative defenses. It is not necessary for a defendant to use 'magic words' in asserting an affirmative defense, but the defense must simply be sufficient to put the court and plaintiff on notice of the issues involved.") (attached hereto as Exhibit G).

anything, the notification process followed by ASG was more generous towards Lynx than that established by the Agreement. At a minimum, whether ASG substantially complied with the notice provisions of the Agreement constitutes a disputed issue of fact that needs to be decided by the jury.

In its Motion, Lynx relies upon two things to support its contention that "Defendant has now admitted that it did not terminate Lynx for cause" -- Defendants' second affirmative defense and ASG's response to request for admission number six. Lynx seizes upon Defendants' second affirmative defense, which is one of ASG's several, alternative affirmative defenses, to the exclusion of all other defenses. Under the Federal Rules of Civil Procedure, however, ASG is permitted to assert alternative defenses. See Fed. R. Civ. Proc. 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.").

Lynx's reliance on ASG's response to Lynx's request for admission six similarly is misplaced. In this response, ASG specifically denied that it never notified Lynx that ASG terminated the Agreement "for cause." ASG merely admitted that its notification "did not meet those technical guidelines established by Paragraph 7.1.2 of the Agreement." See Exhibit 5 to Plaintiff's Memo of Law. Neither the second affirmative defense nor ASG's response to request for admission six support Lynx's claim that ASG "has now admitted that it did not terminate Lynx for cause." See Plaintiff's Memo of Law at p. 1.

In sum, Lynx's Motion attempts to characterize ASG's "nonrenewal" defense as the only basis that ASG has raised for termination of the Agreement and deliberately ignores ASG's "for cause" termination defense. Lynx's calculated attempt to sidestep Defendants' "for cause" termination defense is not surprising, because the question of whether ASG terminated Lynx "for cause" involves issues of disputed fact that must ultimately be decided by the jury. Lynx's complete disregard of this defense, and the disputed factual issues that are attendant to it, is fatal to its Motion.

### 2. Lynx is not Entitled to Judgment as a Matter of Law Because ASG's Election not to Renew the Agreement After the Initial Term was not a "Without Cause Termination"

Even if the Court were to find that ASG has admitted that it did not terminate Lynx "for cause" (which it should not), Lynx's Motion should be denied because as a matter of law ASG's election to not renew the Agreement after its initial three-year term was not a "without cause termination." Lynx's claim that the Agreement only could be terminated "for cause" or "without cause" misconstrues the Agreement. Likewise, its contention that "the Agreement itself defines termination without cause and the decision not to renew as one and the same thing" (Plaintiff's Memo of Law at p. 6) finds no support in actual the terms of the Agreement. Notwithstanding Lynx's argument, the Agreement could be terminated in any one of three ways: (1) "for cause" at any time; (2) "without cause" after the initial term expired; or, (3) by electing prior to the end of the initial term not to have it automatically renew.

The Agreement was for an initial period of three years. Thereafter, the Agreement provided that it would automatically renew from year to year for a period not to exceed twenty-one years. See Exhibit 1 to Plaintiff's Memo of Law at p. 4, ¶7. ASG simply elected to not allow the Agreement to automatically renew itself after the initial term.

The language of the "without cause" termination provision of the Agreement supports the conclusion that ASG's action could not possibly have resulted in a "without cause termination." By providing that the Agreement could be terminated "without cause" only "*[a]fter the third (3) year,* or on expiration of any one (1) year term thereafter," paragraph 7.2.1 plainly precludes either party from terminating the Agreement "without cause" at any time during the third year of the Agreement.[2]  See Exhibit 1 to Plaintiff's Memo of Law at p. 5, ¶7.2.1.

In short, ASG elected not to renew the Agreement at the conclusion of its initial term and provided notice of this election to Lynx prior to the end of the initial term.  Under the Agreement, this decision did not operate as a "without cause termination" and, therefore, Lynx is not entitled to judgment as a matter of law.[3]

### 3. Lynx is not Entitled to Judgment as a Matter of Law Because Paragraph 6.2 is an Unenforceable Penalty Provision

Finally, assuming *arguendo* that the Court finds that ASG's nonrenewal of the Agreement constituted a "without cause termination," Lynx's Motion still should be denied because paragraph 6.2 of the Agreement is unenforceable as a matter of law.  Paragraph 6.2 of the Agreement constitutes a stipulated damages clause that is an unenforceable penalty

---

[2] If there is any ambiguity in paragraph 7.2.1, it should be construed against Lynx as the drafter of the Agreement.  See SPM Corp. v. M/V Ming Moon, 965 F.2d 1297, 1302 (3d Cir. 1992) ("At the very least, the Blue Anchor bill of lading is an ambiguous form contract, and, as such, must be construed against its drafter, Blue Anchor."); Atlantic City Racing Assoc. v. Sonic Financial Corp., 90 F. Supp.2d 497, 506 (D.N.J. 2000) ("Where ambiguities appear in the contract, they are to be strictly construed against the drafter.").

[3] In fact, as set forth in Defendants' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment, it is Defendants -- not Lynx -- who are entitled to summary judgment on this claim.  See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment, at § III(B)(1).

provision.[4] Consequently, Defendants -- not Lynx -- are entitled to summary judgment on any claim predicated upon paragraph 6.2.[5]

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Lynx's Motion for Partial Summary Judgment.

Respectfully submitted,

KLEINBARD, BELL & BRECKER LLP

_____
ROBERT B. BODZIN, ESQUIRE
ERIC J. SCHREINER, ESQUIRE
1900 Market Street, Suite 700
Philadelphia, PA  19103
(215) 568-2000

Dated:  October 28, 2003

---

[4] For further discussion of the unenforceability of paragraph 6.2, see Defendant's Memorandum of Law in Support of Their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment filed on October 14, 2003, at pages 11-15, section III(B)(2).

[5] See id.