IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASG CONSULTANTS, LTD., et al., <br><br> Defendants. | Civil Action No. 02-CV-2741 |

**DEFENDANTS' PROPOSED PRELIMINARY AND FINAL JURY INSTRUCTIONS**

Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal and Kal Grewal, through their undersigned counsel, respectfully submit their proposed preliminary and final jury instructions for the Court's consideration. These proposed preliminary and final jury instructions supplement the Court's standard preliminary jury instructions previously supplied to the parties.

**I.     PROPOSED PRELIMINARY JURY INSTRUCTIONS**

   **1.     Burden of Proof**

This is a civil case. The plaintiff has the burden of proving his case by what is called the "preponderance of the evidence." That means the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what the plaintiff claims is more likely true than not. To put it differently, if you were to put the plaintiff's and the defendants' evidence on opposite sides of the scales, the plaintiff would have to make the scales tip somewhat on his side. **If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence. Therefore, the party having the burden of proving that issue has failed with respect to that particular issue.** If the plaintiff fails to meet this burden, the verdict must be for the defendants. As to "affirmative defenses,"

however, the burden of proving the essential facts of the defense by the preponderance of the evidence is on the defendants.

**In this case, the plaintiff must prove by a preponderance of the evidence its claims that:  1) defendants breached the Sales Agency Agreement; 2) defendants breached the implied covenant of good faith and fair dealing; 3) defendants interfered with plaintiff's business relationships with wholesalers, customers and sub-agents; 4) defendants violated the New Jersey Sales Representatives' Rights Law; and 5) defendants violated the sales representative's laws of certain other states.**[1]

## II.     PROPOSED FINAL JURY INSTRUCTIONS

### 1.     Breach of Contract

Plaintiff Lynx Associates, Inc. has sued Defendants in this case for breach of the Sales Agency Agreement.  In order to find for Lynx on these claims, you must find by a preponderance of the evidence that Lynx performed as required by the terms and conditions of the Sales Agency Agreement, ASG failed or refused to perform as required by the terms of the Sales Agency Agreement, and Lynx suffered damages as a result of ASG's failure to perform.

### 2.     Termination of the Sales Agency Agreement "For Cause"

You have heard evidence concerning ASG's termination of the Sales Agency Agreement.  The Sales Agency Agreement permitted either party to terminate the Agreement "for cause" at any time under the following conditions:

(1)     an actual breach or default by a party in the reasonable performance of its obligations and duties under the Sales Agency Agreement;

---

[1]   This is the Court's standard preliminary instruction on the Burden of Proof.  Modifications proposed by Defendants are in bold and underlined.

(2)   the failure of the defaulting party to cure the default or breach within 30 days after receiving written notice from the other party specifying the breach or default; and

(3)   if the default or breach is not cured, written notice is received from the party not in default of its election to terminate the Sales Agency Agreement fifteen days after the expiration of the thirty day period the defaulting party had to cure the breach or default.[2]

If you find that Defendants have proven by a preponderance of the evidence that Lynx (i) did not reasonably perform its duties and obligations under the Sales Agency Agreement, (ii) that ASG provided Lynx written notice specifying the breach or default, and (iii) that the breach or default was not cured after thirty days and ASG sent Lynx written notice of its election to terminate the Sales Agency Agreement, then you shall find that ASG effectively terminated the Sales Agency Agreement "for cause."  If you find that ASG effectively terminated the Sales Agency Agreement "for cause," then you shall find for Defendants on Lynx's claim that ASG breached the Sales Agency Agreement by terminating Lynx contrary to the terms of the Agreement.

3.   **Substantial Compliance With the Sales Agency Agreement "For Cause" Termination Provisions**

In determining whether Defendants have proven that ASG effectively terminated the Sales Agency Agreement "for cause," you may find that ASG effectively terminated the Sales Agency Agreement "for cause" even if ASG did not follow the precise notice requirements set forth in the Agreement.  You are permitted to find that ASG terminated the Agreement "for cause" if you find that ASG substantially complied with the notice requirements.[3]  In other

---

[2] Sales Agency Agreement at p. 4, ¶7.1.2.
[3] See Universal Computer (Systems) Ltd. v. Drescher, 653 F. Supp. 518, 525 (D.N.J. 1987) ("Substantial performance occurs when a party acts in good faith and only makes slight deviations from its prescribed obligations, so that the other party gets substantially what it bargained for.").

words, as long as ASG gave Lynx effective notice of its defaults under the Sales Agency Agreement, at least thirty days to cure these defaults and, after they were not cured, effective notice of its intent to terminate the Sales Agency Agreement, you may find that ASG terminated the Agreement "for cause."

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing

Lynx has sued Defendants in this case for breach of the implied covenant of good faith and fair dealing based, at least in part, on ASG's termination of the Sales Agency Agreement. If you find that that ASG effectively terminated the Sales Agency Agreement "for cause," you cannot find that ASG's termination of the Sales Agency Agreement constituted a violation of the implied covenant of good faith and fair dealing.

### 5. Meeting of the Minds -- "Bonus Agreement"

Lynx has introduced evidence pertaining to a "bonus agreement" with ASG. You are instructed that in order for the parties to have a binding agreement, the parties must have had a meeting of the minds concerning the terms and conditions of that agreement that are sought to be enforced.[4] "Meeting of the minds," as used in this instruction, means that there is some manifestation that the parties mutually knew and understood the terms and conditions of the contract and that the parties mutually intended, assented and agreed that the terms and conditions would be binding upon them. In order to find for Lynx on its breach of contract claim related to the "bonus agreement" it contends it entered with ASG, you must find by a preponderance of the evidence that the parties had a "meeting of the minds" with respect to the "bonus agreement."

---

[4] See MDC Investment Property v. Marando, 44 F. Supp.2d 693, 699 (D.N.J. 1999) ("This lack of agreement on critical terms shows that the parties never had the requisite "meeting of the minds" to create an enforceable contract.").

### 6. Mutual Assent -- "Bonus Agreement"

Lynx has introduced evidence pertaining to a "bonus agreement" with ASG. You are instructed that in order for the "bonus agreement" to be binding upon ASG, it is necessary that the parties had mutual assent to the terms of the "bonus agreement."[5] In order to find for Lynx on its breach of contract claim related to the "bonus agreement" it contends it entered with ASG, you must find by a preponderance of the evidence that the parties manifested mutual assent to the terms of the "bonus agreement."

### 7. Interference With Advantageous Business Relationships -- Prima Facie Case

Lynx has sued ASG in this action for improper interference with its business relationships with wholesalers, customers and sub-agents. In order to find for Lynx on these claims, you must find that Lynx has established the following by a preponderance of the evidence:

> 1) Lynx had existing business relationships with the wholesalers, customers and sub-agents that are the subject of these claims for the sale of Repellex;
>
> 2) ASG had knowledge of these relationships;
>
> 3) ASG wrongfully and intentional interfered with these relationship;
>
> 4) There was a reasonable probability that Lynx would have received the anticipated economic benefits from the relationships in the absence of interference; and,
>
> 5) Damages to Lynx resulting from the interference[6]

---

[5] See Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 287 (3d Cir. 1993) ("Under New Jersey law, on of the primary requisites to the formation of any contract is mutual assent.").
[6] See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993).

### 8. Interference With Advantageous Business Relationships -- Malice and Justification

You are further instructed that in order to find for Lynx on it claims for interference with advantageous business relationships, you must find by a preponderance of the evidence that ASG acted with malice.[7] Malice, as it is used in this instruction, means that ASG intentionally committed a wrongful act, without justification or excuse.[8]

Therefore, even though you may have found from the facts and prior instructions that ASG did interfere with Lynx's business relationships with wholesalers, customers or sub-agents, you still must find for ASG if you are further satisfied that ASG committed the acts with justification. You may find such justification from evidence that indicates that once the Sales Agency Agreement terminated, Lynx had no right to continue selling ASG's Repellex line of products and nothing in the Agreement prohibited ASG from continuing to do business with wholesalers, customers and sub-agents interested in Repellex. You also may find such justification from evidence that indicates that the wholesalers and customers with whom Lynx had dealings concerning Repellex were the customers of ASG.

### 9. Piercing the Corporate Veil

In this case, Lynx is attempting to pierce the corporate veil. This is a legal term that means Lynx is attempting to hold individuals -- in this case Amar and Kal Grewal -- liable for the actions of a corporate entity -- in this case ASG. Under typical circumstances, only ASG would be liable for its actions. Lynx is seeking to have you disregard ASG's corporate form and impose personal liability on Amar and Kal Grewal for ASG's conduct.

---

[7] See Monmouth Real Estate Investment Trust v. Manville Foodland, Inc, 482 A.2d 186, 190 (N.J. Super. 1984) ("[A]n element of a tortious interference with a contractual or business relationship is malice, that is, the 'intentional doing of a wrongful act without justification or excuse.'").

[8] See id.

You may impose personal liability on Amar and/or Kal Grewal for the actions of ASG only if you find by a preponderance of the evidence that Amar and/or Kal Grewal so dominated ASG and controlled its affairs that the separate existence of ASG was a sham. In other words, you must find that Amar and Kal Grewal used ASG for their own illegitimate purposes, such as to perpetrate fraud or evade the law.[9] If you do not find by a preponderance of the evidence that Amar and/or Kal Grewal used ASG in this manner, than you shall not impose personal liability on them for ASG's actions.

### 10. Damages -- Limitation on Double Recovery

In this case, Lynx has alleged a series of theories of recovery. Lynx has sought recovery for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with advantageous business relationships, violation of the New Jersey Sales Representatives' Rights Law, and violation of various states' laws covering sales representatives. If you find for Lynx on any of those bases of liability, you may award Lynx such damages as will reasonably compensate Lynx for the losses suffered. In awarding damages, however, you must use care to award Lynx damages only once for each loss suffered. The mere fact that you may find that Defendants are liable under more than one of the bases of liability does not permit you to award the measure of loss more than once. In this case, for example, if you decide to award damages, you may award damages only once for the loss of commissions or profits.

---

[9] See Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330, 334 n.6 (3d Cir. 2000); Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3d Cir. 1994); Catsouphes v. Atex Associates, Inc., 671 A.2d 208, 210 (N.J. Super. 1996).

        Respectfully submitted,

        KLEINBARD, BELL & BRECKER LLP

        _____
        Robert B. Bodzin
        Eric J. Schreiner
        1900 Market Street, Suite 700
        Philadelphia, PA  19103
        (215) 568-2000

Dated:  October 13, 2003