IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 02-cv-2741 |
| ) | |
| ASG CONSULTANTS LTD., ) | |
| ) | |
| and ) | |
| ) | |
| AMAR GREWAL and KAL GREWAL, ) | |
| ) | |
| Defendants ) | |
| ) | |
| _____ ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION *IN LIMINE* AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

As mandated by this Court's Scheduling Order, plaintiff, Lynx Associates, Inc. ("Lynx") and defendants ASG Consultants, Ltd ("ASG") and Amar and Kal Grewal all filed dispositive motions on October 14, 2003. Lynx filed a motion for partial summary judgment, seeking this Court's judgment that ASG did not terminate the parties' Agreement for cause. Lynx also filed a motion *in limine* seeking to have all evidence concerning any supposed cause for termination excluded. At the same time, defendants filed their own motion for summary judgment on a host of topics. At its heart, however, was an argument that ASG did not terminate either for cause or without cause, but did some other thing defendants call "deciding not to renew." Lynx already has responded to defendants' motion, which fails for the simple reason that "deciding not to renew" is exactly how the Agreement defines "termination without cause."

Shortly after Lynx responded to defendants' motion, defendants in turn responded to Lynx's motion for partial summary judgment and motion *in limine*. Defendants' responses attempt to avoid conceding what in fact they consistently have admitted, that ASG did not terminate Lynx for cause. In trying to avoid their own admissions of this obvious fact, defendants place themselves in the odd position of writing, in one and the same sentence, that "ASG's decision not to renew after the initial three-year term was *not a 'termination for cause'*" and "genuine issues of disputed fact exist concerning whether ASG terminated Lynx 'for cause.'" Defendants' Memorandum Opposing Lynx's Motion for Partial Summary Judgment at 2 (both quotes are from the first sentence on the page, with the emphasis supplied). The first of those two quoted phrases is correct– Lynx did not terminate for cause. There is no real question about that.

Defendants have admitted that they did not follow the contractual requirements for terminating the contract for cause, as pointed out in both Lynx's motion *in limine* and motion for partial summary judgment. In response to Lynx's requests for admission 6, which asked ASG to admit that Lynx was never notified that its termination was for cause, defendants answered:

> Subject to and without waiver of the foregoing objections, admitted in part and denied in part. More specifically, ASG denies that it "never" notified Lynx that its termination was for cause; ASG notified Lynx by letters dated November 14, 2000 and September 28, 2001, that Lynx was terminated for cause.[1] *ASG admits, however, that its notification did not meet those technical guidelines established by Paragraph 7.1.2 of the Agreement.*

(Emphasis supplied). *See* defendants' responses to requests for admissions, attached and made a part hereof as Exhibit 1. That is, defendants want to claim they could have terminated for cause

---

[1] Those letters are discussed below.

if they had followed the contractual provisions (a highly disputed fact) but they admit they did not follow the contract's procedure for terminating for cause (therefore, an undisputed fact).

Apart from defendants' own admission, which should end the matter, the underlying documents show ASG did not terminate for cause. A quick review of these documents will suffice to show that when defendants stated they did not terminate for cause, they simply were admitting the unavoidable truth. First, on November 14, 2000, several months before the end of the initial three-year term, ASG's owner and president Amar Grewal wrote Lynx a letter complaining about "issues" he had with a supposed lack of communication between Lynx and Grewal and allegedly insufficient efforts to stay in communication with certain accounts. *See* Exhibit 2 attached and made a part hereof, which is a true and correct copy of that letter. Mr. Grewal's letter did not contain what the Agreement requires as a prerequisite for termination for cause. That letter did not state any cause for termination under the Agreement and, in fact, did not even mention termination of the Agreement.

Under section 7.1.2 of the Agreement, termination for cause requires that ASG provide a "good faith written notice specifying such breach or default."[2] The letter on November 14, 2000 did not specify any contractual breaches or defaults. The Agreement states at section 5:

---

[2] Section 7.1.2 provides in full, under the heading of "For Cause Termination:"
   "**7.1.2** The election of one party (the "aggrieved party") to terminate this Agreement upon (1) the actual breach or actual default by the other party in the reasonable performance of the defaulting party's obligations and duties under this Agreement and (2) the failure of the defaulting party to cure the same within thirty (30) days (the "cure period") after receipt by the defaulting party of a good faith written notice from the aggrieved party specifying such breach or default and (3) provided that the defaulting party has not cured the default and the aggrieved party may then give written notice to defaulting party of his or its election to terminate fifteen (15) days after expiration of the cure period."

3

> Principal is interested only in the results obtained by the Agency, who shall have *sole control of the manner and means of performing under this Agreement.* Principal shall not have the right to require Agency to do anything which would jeopardize the relationship of independent contractor between Principal and Agency, unless otherwise agreed in writing.

(Emphasis supplied).  Even if Mr. Grewal's complaints in his letter were sincere and legitimate (which Lynx would dispute vigorously), they do not specify breaches or defaults under the Agreement.  To the contrary, they concern the "manner and means" Lynx used in acting as ASG's sales representative, something over which the Agreement gives Lynx sole control.

Section 7.12 further requires that this notice give thirty days to cure the default or breach.  Mr. Grewal's November 14, 2000 letter, however, makes no reference to a need for cure, or to a thirty day period in which to effect such a cure.  Finally, section 7.1.2 allows termination for cause only after the passage of that thirty-day cure period, at which time ASG would be required to provide yet another written notice, this time specifying that defaults or breaches had not been cured, so the contract would terminate in fifteen days.  ASG did not follow up its letter of November 14, 2000 with any such further notice that supposed defaults had not been cured and that the contract was being terminated for cause.

ASG did not send any subsequent letter that would comply with Section 7.1.2 between November 14, 2000 and the end of the initial three-year term in August of 2001.  Instead, ASG admits that Amar Grewal, ASG's owner and president, sent Lynx a letter on April 19, 2001, which stated the following:

> According to the terms of the agreement (paragraph 7.2.1) written notice must be given to the other party 120 days prior to the expiration of the existing terms by either party if they wish to discontinue or terminate the agreement.  I wish to exercise this option with this letter and not continue with the current existing agreement after its expiration date.

4

*See* Exhibit 3 attached and made a part hereof, which is a true and correct copy of that letter. Of course, section 7.2.1 of the Agreement is headed "Without Cause Termination." Whatever protests defendants might now make, it is clear that Amar Grewal knew what he was doing, and what he was doing was terminating Lynx without cause. Even in that letter, Mr. Grewal said he was not really interested in terminating the Agreement at the end of the term. Instead, he wrote, "Please note that my intention for doing this is to actually continue the association with Lynx Associates but under a new, revised sales rep agreement." *Id.* (underscore in original). ASG expressed no dissatisfaction with Lynx's performance, but just wanted to cut Lynx's commission rate.

ASG did not send any letter after that April 19, 2001 letter purporting to give any sort of notice of termination for cause. Only on September 28, 2001, weeks after the Agreement had been terminated, did ASG's counsel send a letter suggesting that the termination had been for cause. *See* Exhibit 4 attached and made a part hereof, a true and correct copy of that letter.

The thrust of defendants' argument is that these documents, although failing to follow the contractual provisions for termination without cause, were almost good enough to do so, so they should count as substantial compliance with the contract's requirements. Defendants' own case citations, however, show how far ASG was from being in "substantial compliance." Contrasting what ASG did to what happened in the Pennsylvania decision defendants cite , *W.A. Butler Co. v. Colgate-Palmolive Co.*, 1992 U.S.Dist.LEXIS 15259 (E.D. Pa. 1992) is very instructive. In *Butler,* a manufacturer, Hill's Pet Products, had the contractual right to terminate its distributor, Butler, by giving thirty days' notice of a decision not to renew. *Id.* at 2 (note that in *Butler*, as in this case, termination unless for cause was the same as non-renewal). In fact, Hill's had a set of

5

identical contracts with seventeen different Butler branches. In 1990, Hill's sent six letters to six of the different Butler branches, giving thirty days' notice of an intention not to renew. One of the letters went to Butler's address, but not the one specified in the parties' contract. *Id.* at 4. *That* error was insignificant; that, the Court said, was substantial compliance. On the other hand, telling Lynx it was being terminated without cause, as ASG did on April 19, 2001, never specifying any breaches of contract or giving an opportunity to cure, and finally, weeks after the termination, saying it was "really" for cause, as ASG did on September 28, 2001, is not substantial compliance. As defendants quote from *Universal Computer Systems, Ltd. v. Drescher*, 653 F.Supp. 518, 525 (D.N.J. 1987), "Substantial performance occurs when a party acts in good faith and *only makes slight deviations from its prescribed obligations*, so that the other party gets substantially what it bargained for." (Emphasis supplied). If what ASG did was ever really intended to be a termination for cause, it certainly involved a great deal more than a "slight" deviations from the prescribed obligations of the parties' Agreement.

ASG did not terminate the parties' Agreement for cause. Defendants should not now be allowed to confuse this clearly resolved issue. Therefore, plaintiff respectfully requests that this Court grant its motion for partial summary judgment and its motion *in limine*.

DATED: October 31, 2003               Respectfully submitted,

                                       Kramer & Kramer, LLP

                                   By:_____
                                       Mitchell A. Kramer
                                       Barbara H. Kramer
                                       1077 Rydal Road, Suite 100
                                       Rydal, PA 19046
                                       (215) 887-9030

## CERTIFICATE OF SERVICE

      I hereby certify that I caused a copy of Plaintiff's Reply Memorandum in Support of its Motion *In Limine* and Motion For Partial Summary Judgment to be served on counsel for defendants by facsimile and first class mail as follows:

> Robert B. Bodzin, Esquire
> Kleinbard, Bell & Becker LLP
> 1900 Market Street, Suite 700
> Philadelphia, Pennsylvania 19103

Date: October 31, 2003

                                                  Mitchell A. Kramer
                                                  Attorney for Plaintiff

Case 2:02-cv-02741-BWK    Document 49    Filed 10/31/2003    Page 8 of 8