IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASG CONSULTANTS, LTD., et al., <br><br> Defendants. | Civil Action No. 02-CV-2741 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal and Kal Grewal, through their undersigned counsel, file this reply in further support of their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment on Counts One and Three through Nine of Plaintiff Lynx Associates, Inc.'s ("Lynx") First Amended Complaint.  This reply briefly addresses the issues raised in Lynx's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (the "Opposition Memo of Law").[1]

**II.  ARGUMENT**

      **A.  Count One**

           **1.  ASG's Non-Renewal of the Agreement was not a "Termination Without Cause"**

Lynx argues that Defendants are not entitled to summary judgment on Count One because ASG's election not to renew the Sales Agency Agreement (the "Agreement") is a

---

[1] Lynx has stated that it does not intend to pursue its claims that are the subject of Counts Four, Five and Eight of its First Amended Complaint.  See Lynx's Opposition Memo of Law at p. 5. n.2.  Accordingly, there is no dispute that Defendants should be granted summary judgment on Counts Four, Five and Eight.

{00005347;v1}

"termination without cause" under the Agreement.  ASG's election to not renew the Agreement after its initial three-year term, however, was not a "without cause termination."

Lynx's error lies in its conclusion that the Agreement only could be terminated "for cause" or "without cause."  This determination misconstrues the Agreement because the Agreement could be terminated in any one of three ways:  (1) "for cause" at any time; (2) "without cause" after the initial term expired; or, (3) by electing prior to the end of the initial term not to have it automatically renew.

The Agreement was for an initial period of three years.  Thereafter, the Agreement provided that it would automatically renew from year to year for a period not to exceed twenty-one years.  See Exhibit E to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment ("Defendants' Memo of Law") at p. 4, ¶7.  ASG simply elected to not allow the Agreement to automatically renew itself after the initial term.  The language of the "without cause" termination provision of the Agreement, which provides that the Agreement could be terminated "without cause" only "*[a]fter the third (3) year,* or on expiration of any one (1) year term thereafter," supports the conclusion that paragraph 7.2.1 plainly precludes either party from terminating the Agreement "without cause" at any time during the third year of the Agreement.[2]  See Exhibit E to Defendants' Memo of Law at p. 5, ¶7.2.1 (emphasis added).  Nothing precluded either party

---

[2]  If there is any ambiguity in paragraph 7.2.1, it should be construed against Lynx as the drafter of the Agreement.  See SPM Corp. v. M/V Ming Moon, 965 F.2d 1297, 1302 (3d Cir. 1992) ("At the very least, the Blue Anchor bill of lading is an ambiguous form contract, and, as such, must be construed against its drafter, Blue Anchor."); Atlantic City Racing Assoc. v. Sonic Financial Corp., 90 F. Supp.2d 497, 506 (D.N.J. 2000) ("Where ambiguities appear in the contract, they are to be strictly construed against the drafter.").

from electing not to renew the Agreement during its third year, prior to the conclusion of the initial term.

Lynx's claim that Amar Grewal's April 19, 2001 letter to Lynx demonstrates that ASG understood that "termination without cause" and non-renewal were on in the same is wrong. Mr. Grewal's reference in this letter to paragraph 7.2.1 of the Agreement was a mistake. As his deposition testimony plainly demonstrates, Mr. Grewal's intent was to terminate the Agreement at the expiration of the initial term "for cause." See Transcript of the June 18, 2003 deposition of Amar Grewal ("Grewal Trans.") at p. 136, l.9-22; p. 180, l.18-p. 181, l.1 (Exhibit A to Defendants' Memo of Law). Under the Agreement, however, ASG's termination of the Agreement "for cause" also operated as a non-renewal of the Agreement because rather than electing to immediately terminate the Agreement "for cause," ASG waited until the end of the Agreement's initial term. Thus, the April 19th letter effected both a termination "for cause" and a non-renewal of the Agreement, but not a termination "without cause."

### 2. Paragraph 6.2 is a Liquidated Damages Clause

Lynx also argues that summary judgment is not appropriate on Count One because paragraph 6.2 of the Agreement is not a liquidated damages clause and, therefore, the case law invalidating liquidated damages clauses is not applicable to paragraph 6.2.

Paragraph 6.2 is a liquidated damages clause because the overall effect of paragraph 6.2 is to provide Lynx with damages in the event ASG terminated the Agreement "without cause." The fact that paragraph 6.2 does not contain the term "liquidated damages" does not preclude it from being characterized as a stipulated damages clause. In River Road Associates v. Chesapeke Display and Packaging Co., 104 F. Supp.2d 418 (D.N.J. 2000), for example, the court reviewed a lease provision allowing the landlord to reinstate the lease after termination if the tenant failed to remediate structural defects in the property. The court held that this provision was a stipulated

damages clause, even though the term "liquidated damages" was absent from the lease provision, stating:

> Although Plaintiff stresses the fact that the term "liquidated damages" is not used in the paragraph, New Jersey caselaw counsels against reliance upon strict adherence to formalistic requirements in examining such clauses. Cf. Wasserman's Inc. v. Township of Middletown, 137 N.J. 238, 645 A.2d 100, 107 (N.J. 1994) (explaining that New Jersey courts assessing the enforceability of stipulated damages clauses have "relied on the 'circumstances of the case and not on the words used by the parties'") (quoting Gibbs v. Cooper, 86 N.J.L. 226, 90 a, 1115, 1116 (E.&A. 1914)); Spialter v. Testa, 162 N.J. Super. 421, 392 A.2d 1265, 1268 (N.J. Super. Ct. App. Div. 1978) (reasoning that although the "clause at issue does not specifically use the term liquidated damages, that alone is not determinative, for the court must look to substance as well as form."). As a result, in order to determine whether 6(c) constitutes a stipulated damages clause, and is thereby subject to the caselaw cited by Defendant, the Court will focus its inquiry upon the overall substance of paragraph 6.

Id. at 421 (footnote omitted).

The "overall substance" of paragraph 6.2 is that it requires ASG to continue making payments to Lynx for three years -- without receiving anything in return -- if ASG elects to terminate the Agreement "without cause." ASG is required to make these payments whether it terminates the Agreement in its fourth year or its twentieth year. In short, paragraph 6.2 provides a formula to establish a measure of damages in the event ASG does not allow the Agreement to automatically renew for the full twenty-one year term. Consequently, paragraph 6.2 is subject to the enforceability test applied to stipulated damage clauses.

Lynx's attempt to characterize paragraph 7.2 as providing a "severance package" is distinction without a difference. In order to be considered a stipulated damages provision, paragraph 6.2 need not explicitly state that it provides for a payment in the event of a breach. In this regard, paragraph 6.2 is analogous to a contractual provision that provides for a payment where there is an early termination of the contract. Courts have treated such contractual

provisions as stipulated damages clauses subject to the reasonability test.  See Wasserman's Inc. v. Township of Middletown, 645 A.2d 100, 102, 106-07 (N.J. 1994) (treating provision in cancellation clause of lease that provided for lessor to pay 25% of lessee's average gross receipts for one year, if lessor cancelled lease prior to expiration of thirty-year term, as a stipulated damages provision subject to law governing enforceability of such provisions); see also Spialter v. Testa, 392 A.2d 1265, 1267, 1268-70 (N.J. Super. 1978).

Lynx's contention that even if paragraph 6.2 is considered a stipulated damages clause, it "would be an eminently reasonable one" also should be rejected.  Lynx argues that because the payment required by paragraph 6.2 is based on commissions, it should not be deemed an arbitrary penalty amount.  In stating that lost commissions are capable of accurate estimate, Defendants merely were making the point that based on its past sales performance, Lynx could estimate the *actual* commissions it would lose if ASG terminated the Agreement.  Paragraph 6.2 does not do this.  Paragraph 6.2 is not reasonably related to actual lost commission damages that Lynx could suffer because:  (1) three years is much longer than the actual time period Lynx would suffer any damages; and (2) Lynx would receive the benefit of increased sales that were due entirely to efforts by ASG or another sales representative.  Although payments required under paragraph 6.2 are based on commissions, they are not based on a reasonable approximation of the commissions Lynx actually would lose if ASG terminated the Agreement.  Thus, paragraph 6.2 is an unreasonable penalty provision.

B. **Count Six**

Defendants are seeking summary judgment on Count Six of Lynx's Amended Complaint, a claim for violations of the New Jersey Sales Representative Law, because Lynx sold Repellex to "ultimate consumers" and, therefore, is not as sales representative as defined by the statute. Lynx could easily defeat Defendants' request for summary judgment on this count by flatly

denying that it sold Repellex to "ultimate consumers." In its Opposition Memo of Law, however, Lynx fails to deny that it sold Repellex to "ultimate consumers."

Instead, Lynx attacks Defendants evidence as taken "out of context" and tries to distract the Court's attention by pointing to documents that show Lynx sold Repellex to distributors. There is no dispute that Lynx sold Repellex to distributors. This fact, however, does not end the inquiry. If Lynx also sold Repellex to "ultimate consumers," then it does not come within the definition of sales representative under New Jersey's Sales Representative Law, which clearly states that a sales representative "shall not include one who sells or takes orders for the sale of products to the ultimate consumer." N.J.S.A. § 2A:61A-1(c).

In its carefully worded response, Lynx all but admits that it sold Repellex to "ultimate consumers": "If some of Lynx's sales of Repellex were to end users (a factual assertion for which defendants have produced no evidence), certainly many of them were not." Opposition Memo of Law at p. 13. This statement, combined with Lynx's failure to unequivocally deny that it sold Repellex to "ultimate consumers," should be deemed an admission by Lynx that it did sell Repellex to "ultimate consumers." Lynx's argument that a "reasonable interpretation" of the statute still supports its claim is in reality a request that the Court ignore the plain language of the statute. In short, Lynx has all but admitted that it does not fall within the definition of a "sales representative" under the New Jersey Sales representative Act and, therefore, Defendants are entitled to summary judgment on Count Six.

    C.    **Count Seven**

Lynx has failed to even address Defendants' argument that they are entitled to summary judgment on Count Seven because the sales representatives' laws of states other than New Jersey are inapplicable to Lynx and, therefore, Lynx has no standing to bring claims under them. On this basis alone, Defendants should be granted summary judgment on Count Seven.

In addition, even if the laws of other states apply to Lynx, Lynx's arguments concerning the New York statute governing sales representatives should be rejected. The fact that New York was part of Lynx's territory and that Lynx made sales to businesses in New York is insufficient as a matter of law to bring Lynx within the New York statute. The applicable New York statute defines "sales representative" as "a person or entity *who solicits orders in New York state* . . . ." McKinney's Labor Law § 191-a (emphasis added). Thus, to come within the statute, there must be evidence that a sales representative *actually solicited* orders within the geographic confines of New York state, not merely evidence that it sold products to companies located in New York. As one New York court interpreting this statute stated: "Obviously, there is a difference between the solicitation of a sale and the sale itself." See McCoy Associates, Inc. v. Nulux, Inc., 218 F. Supp.2d 286, 292-93 (E.D.N.Y. 2002) (dismissing sales representative's claim under Labor Law § 191-a, *et seq.* after finding that sales representative's attendance at sales meetings in New York with principal and sale of products to New York customers did not mean that sales representative solicited business in New York). Evidence of actual solicitation of orders within New York is absent from this case.

### D.   Count Nine

Lynx's Opposition Memo of Law highlights the dearth of evidence that exists to support Lynx's claim that ASG's corporate veil should be pierced in this case to hold Amar and Kal Grewal personally liable. It also illustrates that Lynx's claim for piercing the corporate veil is based on speculation about what could possibly happen, conjecture and unsupported innuendo.

Lynx makes a broad generalization that alleged "testimony of corporate undercapitalization, commingling of funds, and ignoring corporate formalities" supports its claim. This statement is pure hyperbole. The actual testimony in this case shows that there is no such evidence. For example, Lynx claims that Amar Grewal "testified that both he and his wife

take money from ASG's corporate funds as they wish for their personal use" and that "he can and does take money from the corporation at will." These statements seriously mischaracterize Mr. Grewal's testimony.

Mr. Grewal actually testified that at one time his salary was determined "usually by draws, depending upon the necessity of what I require," that he now has a salary that he believes may be "[p]robably close to four thousand dollars a month," and that he takes draws for living expenses when necessary. See Grewal Trans. at p. 39, l.9-24-p. 40, l.1; p. 41, l.8-12 and 20-24 (Exhibit A to Defendants' Memo of Law). In addition, Mr. Grewal testified that his wife now has a salary and does not take draws:

> Q. Does [Kal Grewal] draw a salary?
>
> A. At the end -- we're talking about at the end of the contract with Lynx?
>
> Q. Yes, at the time that the contract with Lynx ended.
>
> A. Oh --
>
> Q. Did she draw a salary?
>
> A. No, she didn't. We were again just taking draws necessary to --
>
> Q. Necessary for you to live on.
>
> A. Yes.
>
> Q. Is that still the case?
>
> A. No, she's on payroll now.

See id. at p. 40, l.17-p. 41, l.5 (Exhibit A to Defendants' Memo of Law). Lynx's claim that the Grewals own the facility from which ASG operates and lease it to ASG also is not entirely accurate. The Grewals own one of the warehouse facilities out of which ASG presently operates,

which they lease to ASG, but not the other facility out of which ASG operates.  See id. at p.36, l.21-p. 39, l.8 (Exhibit A to Defendants' Memo of Law).

Moreover, neither of the cases principally relied upon by Lynx support their claim.  In College Watercolor Group v. William H. Newbauer, Inc., 360 A.2d 200, 207 (Pa. 1976), the court specifically noted the generally accepted rule "that a corporation is an entity distinct from its shareholders even if the stock is held entirely by one person" and found that the corporate veil should be pierced in that case only because the individual defendant used his control of a corporation to further his own personal interests.  There is no evidence in this case that the Grewals are using ASG to further their own personal interests.  Likewise, Lynx's reliance on S.T. Hudson Engineers, Inc. v. Camden Hotel Dev. Assocs., 747 A.2d 931 (Pa. Super. 2000), is misplaced because there is no evidence that the Grewals have "ignored corporate formalities to take their corporation's money, instead of paying the corporation's contractual obligations" as claimed by Lynx.

In short, once Lynx's gross exaggerations are laid bare, it is apparent that the actual facts relied upon by Lynx do not support its claim that there has been improper "corporate undercapitalization, commingling of funds, and ignoring corporate formalities" or "siphoning [of] funds from the corporation by the dominant shareholders."  In other words, the real facts do not support piercing the corporate veil.

In particular, there is absolutely no evidence that ASG is being utilized to further some illegitimate purpose or to perpetrate fraud.  Moreover, with regard to Kal Grewal, there is absolutely no evidence to even suggest that she is ASG's alter-ego.  She is not a director and does not take draws from corporate funds.  While Amar Grewal is the sole shareholder of ASG and does take draws from the company for living expenses, these facts are insufficient as a

matter of law to trans form him into ASG's alter-ego. Accordingly, Defendants are entitled to summary judgment on Count Nine.[3]

### III. CONCLUSION

Defendants' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment is supported by the evidentiary record and the applicable law. Accordingly, for all of the reasons set forth in this reply, as well as those set forth in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment, Defendants respectfully request that the Court grant them summary judgment on Counts One and Three through Nine of Lynx's First Amended Complaint.

Respectfully submitted,

KLEINBARD, BELL & BRECKER LLP

_____
Robert B. Bodzin
Eric J. Schreiner
1900 Market Street, Suite 700
Philadelphia, PA  19103
(215) 568-2000

Dated:  November 6, 2003

---

[3] Lynx also argues that summary judgment on Count Nine should be denied because there is outstanding discovery relating to the Grewals' relationship to ASG. Defendants submit that summary judgment is warranted on Count Nine based on the record presently before the Court. If the Court disagrees, however, any decision on Count Nine could be deferred until the documents Lynx seeks are produced and the parties make supplemental submissions with respect to Count Nine only based on those documents.