IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., | |
| Plaintiff, | Civil Action No. 02-CV-2741 |
| v. | |
| ASG CONSULTANTS, LTD., et al., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S RENEWED MOTION TO COMPEL AND FOR SANCTIONS**

**I.   INTRODUCTION**

Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal and Kal Grewal (collectively "Defendants") file this Memorandum of Law in opposition to Plaintiff Lynx Associates, Inc.'s ("Lynx") Renewed Motion to Compel and for Sanctions (the "Motion"). The Motion should be denied because: (1) the documents sought by Lynx either have been produced or will be produced by Monday, December 15, 2003, and (2) Defendants' delay in producing these documents was caused by extenuating circumstances that jeopardized their business. Thus, neither sanction sought by Lynx is warranted under the facts of this case.

**II.   FACTUAL BACKGROUND**

Defendants Amar and Kal Grewal are husband and wife and reside in British Columbia, Canada. They also conduct the business of Defendant ASG out of British Columbia. ASG is a small company that has only three employees other than the Grewals -- a receptionist, an employee who deals with production, and a part-time student employee.

On the afternoon of Friday, August 1, 2003, at approximately 2:20 p.m., Lynx's counsel faxed to Defendants' counsel subpoenas and notices of deposition for Defendants Amar Grewal

and Kal Grewal.[1] See Exhibit 1 to Plaintiff's memorandum of Law in Support of its Renewed Motion to Compel and for Sanctions ("Lynx's Memo of Law").  The subpoenas and notices of deposition for Amar and Kal Grewal purported to schedule their depositions for 10:00 a.m. the following Friday at the offices of Lynx's counsel in Rydal, Pennsylvania -- less than seven days from the date counsel sent the subpoenas and notices to Defendants' counsel and three days before the close of discovery in this case.  Attached to each deposition notice was a request to produce five categories of documents.

Defendants objected to the deposition notices and the documents requests and Lynx filed a motion to compel the Grewals to attend the depositions.  Defendants filed an opposition to this request, asserting their legitimate basis for not responding to the deposition notices or the document requests.  See Defendants' memorandum of Law in Opposition to Plaintiff's Motion to Compel Attendance at Deposition (attached hereto as Exhibit A).  The Court scheduled a conference call on October 23, 2003 to resolve this motion.  The day before the conference call, counsel for Defendants accepted the offer from counsel for Lynx to produce all documents sought by the document requests in lieu of holding the depositions.  Counsel for Defendants asked for fifteen days to produce the documents, believing that Defendants would be able to produce the necessary documentation within that time.  As a result of the parties' agreement, the October 23, 2003 conference call with the Court was cancelled.

Defendants always have intended to comply with the agreement the parties reached on October 22, 2003.  Unfortunately, difficulties related to ASG's business demanded their attention

---

[1] At the time, Defendants' counsel had not yet learned that the Court granted Plaintiff's motion to amend the complaint and that Amar and Kal Grewal were parties to this action.  Defendants' counsel did not learn of this development until the following Tuesday, August 5, 2003.

{00006855;v1}                                    2

and became the focus of their efforts. As a result, the agreed upon production of documents was delayed by approximately 34 days.

The difficulties with ASG's business began in September 2003. ASG's shipments of its Repellex products into the United States were stopped at the Canadian border beginning in September. Repellex contains dried blood from cattle sources, and as a result of concerns related to mad cow disease, the United States Department of Agriculture would not allow Repellex to be shipped into the United States beginning in September. Any Repellex products ASG attempted to ship into the United States were impounded at warehouses and/or shipped back to ASG in British Columbia.

ASG had to obtain a Veterinary Permit for Importation and Transportation of Controlled Materials and Organisms and Vectors in order to resume shipments into the United States. This permit was issued to ASG on October 15, 2003. See United States Veterinary Permit for Importation and Transportation of Controlled Materials and Organisms and Vectors (attached hereto as Exhibit B). However, it was not effective until it was signed by a signatory in the United States. On October 30, 2003, ASG was able to have one of its sales representatives in the Unites States sign the permit as a U.S. signatory. See Exhibit B. Thus, ASG was unable to ship Repellex into the Unites States during approximately September and October 2003.

The inability to ship Repellex into the United States significantly impacted ASG's business because Repellex products sold in the United States account for all of ASG's sales. By November 1, 2003, when ASG could resume shipping Repellex to the United States, ASG had a large number of backorders to fill in a short time due to Winter and the end of the season. Filling these orders and dealing with other difficulties related to the inability to ship Repellex into the United States during September and October 2003 required virtually all of Defendants' time and

effort. Dealing with these issues was made even more difficult by the fact that Amar Grewal, ASG's owner and principal, was on the road for much of September and October attending approximately twenty-six distributor trade shows to obtain Spring 2005 early orders.

Due to the circumstances described above, Defendants were not able to gather the information and documents sought by Lynx until early December, after back orders were filled and ASG's business was placed back on track. On the afternoon of Thursday, December 4, 2003, Defendants provided the documents requested by Lynx to their counsel. Counsel reviewed these documents and then produced them to counsel for Lynx via overnight delivery on the following Wednesday, December 10, 2003. See December 10, 2003 letter from Eric J. Schreiner to Mitchell A. Kramer (attached hereto as exhibit C). Defendants' counsel produced these documents before receiving the Court's order to show cause, which was delivered with the next day's mail.

As indicated in the December 10, 2003 letter to Lynx's counsel, Defendants still need to produce sales information for the period of February 2003 to present and a corporate tax return for the year 2001. Defendants are attempting to locate the 2001 corporate tax return and will produce it as soon as it is located. The additional sales information is being compiled and will be produced shortly.

### III.     ARGUMENT

Lynx seeks two sanctions through its Motion: (1) a default judgment against Defendants; and (2) an order that Amar and Kal Grewal are ASG's alter-egos, which is tantamount to a default judgment against these individual Defendants or at the very least will result in the exclusion of any evidence that these individual Defendants are not ASG's alter-ego. Neither sanction is justified under the facts of this case.

Lynx's request for sanctions is predicated upon Federal Rule of Civil Procedure 37(d), which provides a court with the discretion to "make such orders in regard to the failure as are just . . . ." Fed. R. Civ. Proc. 37(d).  Rule 37(d)'s grant of discretion to a court to make orders that are "just" is consistent with Rule 37's general approach that a court look to surrounding circumstances to determine if an award of sanctions is fair and warranted under the circumstances.  See Fed. R. Civ. Proc. 37(a)(4)(A) (providing for award of reasonable expenses in connection with successful discovery motion "unless the court finds that . . . the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust."); Fed. R. Civ. Proc. 37(b)(2) (where a court order is violated, court "may make such orders in regard to the failure as are just" and award reasonable expenses "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.").

Lynx's request for the sanction of a default judgment and an order that Amar and Kal Grewal are the alter-egos of ASG (which is tantamount to a default judgment against them) should be denied because "default judgments are 'extreme' sanctions and are reserved for cases where no other sanction will be effective." Philadelphia Cervical Collar v. Jerome Medical, 2003 U.S. Dist. LEXIS 6572 at *8 (E.D. Pa. March 31, 2003) (attached hereto as Exhibit D). The Third Circuit has established a set of six factors that a court must evaluate when considering a default judgment as a discovery sanction:

1. the extent of the party's personal responsibility;

2. the prejudice to the adversary caused by the failure to respond to discovery;

3. a history of dilatoriness by the disobedient party;

4. willfulness or bad faith by the disobedient party;

    5.  effectiveness of alternative sanctions; and,

    6.  meritoriousness of the claim or defense.[2]

Id. at *9 (citing Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867 (3d Cir. 1984)).

  Applying this standard, neither of the sanctions sought by Lynx are warranted under the facts of the present case.  With respect to factors one and four, as explained above, Defendants' delay in producing the requested documents was attributable to business difficulties that demanded virtually all of their time and energy during October and November.  Thus, while there is some personal responsibility on the part of Defendants for the late production of the documents, there is a legitimate explanation for this delay.  In addition, there was no willfulness or bad faith on the part of Defendants.

  Lynx also has not been prejudiced by the delay in production of documents.  Defendants have responded to the document requests on December 10, 2003.  Those documents that have not been produced (sales figures for February 2003 to present and a 2001 corporate tax return) will be produced shortly.  In view of the fact that there is still one month until this case even is placed into the trial pool, Lynx has not been prejudiced.  There also is no history of dilatoriness by Defendants in this case.  Defendants have not failed to comply with discovery orders of this Court or even been compelled to respond to discovery by an order of this Court.  The parties had a legitimate dispute surrounding the depositions of Amar and Kal Grewal, which was resolved by the parties' agreement that Defendants would produce documents responsive to the document requests attached to the deposition notices.  Defendants admittedly were late producing these documents.  This, however, does not constitute a history of dilatoriness.

  Furthermore, alternative sanctions are available, such as ordering Defendants to produce all required documents (which largely has occurred) and providing Lynx with additional time to

---

[2] All of these factors must be considered by a court and no single factor is dispositive.  Id.

review these documents if necessary.  Finally, Defendants have meritorious defenses to Lynx's claims.  Many of these defenses are set forth in detail in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment previously filed with the Court.  In addition, Defendants are prepared to assert the defense at trial that ASG legitimately terminated the Sales Agency Agreement for cause if this defense is necessary.  Moreover, the individual Defendants are prepared to present evidence that they are not the alter-egos of ASG.

In short, applying the Poulis factors, default judgment is not an appropriate sanction under the facts of this case.  Accordingly, Lynx's request for a default judgment and its request for an order that Amar and Kal Grewal are the alter-egos of ASG, which is tantamount to a default judgment against these Defendants, should be denied.

In addition, Lynx's request for an order that Amar and Kal Grewal are ASG's alter-egos should be denied because it amounts to an order excluding any evidence that they are not ASG's alter-egos.  "[T]he exclusion of critical evidence is an extreme sanction that should be used only in cases of willful deception or flagrant disregard of a court order." Philadelphia Cervical Collar, 2003 U.S. Dist. LEXIS 6572 at *9.  In evaluating such a request, a court should consider four factors:

> 1. the prejudice or surprise to the party against whom the evidence would be excluded;
> 2. the ability of that party to cure the prejudice;
> 3. the extent to which the exclusion of evidence would disrupt the orderly and efficient trial the case; and,
> 4. bad faith or willfulness on the party [sic] of the disobedient party.

Id. (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977)).

Applying these factors to the present case militates against the sanction sought by Lynx. Amar and Kal Grewal would be extremely prejudiced if the Court entered an order that they are the alter-egos of ASG. They would be completely stripped of the ability to present any defense to their individual liability. Moreover, there is no way to cure this prejudice, because such an order would make Amar and Kal Grewal presumptively liable for any verdict against ASG. It would, in effect, decide all issues pertaining to Amar and Kal Grewal's personal liability.

Finally, while the extent of disruption at trial as the result of excluding evidence that Amar and Kal Grewal are not the alter-egos of ASG would likely be minimal, the sanction sought by Lynx also is unwarranted because there has been no bad faith or willfulness by Defendants. As explained above, the delay in producing the requested documents largely was caused by circumstances that threatened the very continued existence of ASG's business. For these reasons, Lynx's request for a sanction that Amar and Kal Grewal be deemed the alter-egos of ASG, which would be the equivalent of an order excluding Defendants from presenting evidence that the individual Defendants are not the alter-egos of ASG, should be denied.

The cases relied upon by Lynx where issue/witness preclusion or dismissal was granted as a sanction are inapposite because they involved parties that willfully disobeyed court orders and/or engaged in unjustified delay. In <u>Riverside Memorial Mausoleum, Inc. v. Sonnenblick-Goldman Corp.</u>, 80 F.R.D. 433 (E.D. Pa. 1978), for example, the court described the three-year old case as follows: "This case presents a picture of persistent and studied indifference by the plaintiffs to court orders and to the time requirements of the Federal Rules of Civil Procedure." <u>Id.</u> at 434. Indeed, the court previously had dismissed the case after the plaintiff had failed to comply with orders setting filing dates for briefs. <u>Id.</u> at 436. In addition, at the time the court granted the motion for sanctions precluding certain evidence, the plaintiff had not responded to

the interrogatories that were the subject of the motion. Id.; see also Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d 1187, (3d Cir. 1971) (sanction of dismissal granted because plaintiffs failed to provide responsive, and in some cases any, answers to interrogatories that were required by court orders to which plaintiffs consented even though the time for answering had been extended); Neal v. Director, District of Columbia Dept. of Corrections, 1995 WL 517248 (D.D.C. Aug. 9, 1995) (sanction precluding testimony from non-party fact witnesses granted where: (i) defendants failed to comply with court order requiring them to answer interrogatory seeking identification of witnesses by specific date; (ii) order requiring defendants to answer interrogatory specifically provided that if witnesses were not identified by this date defendants would be precluded from calling witnesses; (iii) at time sanction was granted defendants had not specifically identified any witnesses as required by court order; and, (iv) court had repeatedly admonished defendants against delay because defendants continued to retaliate against plaintiff employees during time discovery was being taken).

### IV.  CONCLUSION

Amar and Kal Grewal did not improperly refuse to be deposed and Defendants have not refused to produce documents as Lynx contends. Defendants asserted legitimate objections to the request for the depositions of Amar and Kal Grewal. Ultimately, Lynx's request to depose Amar and Kal Grewal was voluntarily withdrawn based on the parties' October 22nd agreement that Defendants would produce the requested documents. Defendants have complied with this agreement (with the exception of some remaining documents that Defendants will produce shortly), albeit approximately 34 days late. This delay was caused by extenuating circumstances that temporarily threatened the very ability of ASG to continue its operations. Lynx now has the documents (or shortly will have the documents) that they requested well in advance of any trial

of this matter. Under these circumstances, Lynx is not entitled to the harsh sanctions that it seeks. Accordingly, for all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

                                      Respectfully submitted,

                                      KLEINBARD, BELL & BRECKER LLP

                                      _____

                                      Robert B. Bodzin
                                      Eric J. Schreiner
                                      1900 Market Street, Suite 700
                                      Philadelphia, PA  19103
                                      (215) 568-2000

Dated:  December 12, 2003