IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNX ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-cv-2741 |
| | ) | |
| ASG CONSULTANTS LTD., | ) | |
| AMAR GREWAL and KAL | ) | |
| GREWAL, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT AGAINST INDIVIDUAL DEFENDANTS**

Plaintiff, Lynx Associates, Inc. ("Lynx"), first brought this action against ASG Consultants Ltd. ("ASG") because, after failing to pay Lynx the commissions it already owed Lynx, ASG terminated the parties' Sales Agency Agreement without cause. Lynx now has received documents from defendants that establish that there is no genuine issue of material fact concerning an important part of the case, whether Amar and Kal Grewal are the alter egos of ASG. As defendants' own documents establish that the Grewals are ASG's alter egos, Lynx moves this Court for partial summary judgment against the Grewals, and respectfully asks that judgment be entered that they are personally liable for ASG's debts and liabilities to Lynx.

I.     **UNDISPUTED FACTS**

**Relationship between Lynx and ASG**

Lynx is a sales agency specializing in the horticultural industry with its principal place of business in New Jersey. Lynx has spent many years and invested substantial amounts of time and money fostering strong business relationships with horticultural wholesalers and customers. ASG is a Canadian company that manufactures "Repellex," which protects gardens from deer.

On August 1, 1998, Lynx and ASG entered into a Sales Agency Agreement in which Lynx agreed to be ASG's exclusive sales representative in twenty-two states in the eastern United States.  *See* Exhibit 1, August 1, 1998 Agreement.  The term of that Agreement was to run for three years, and thereafter run from year to year, unless it was terminated either for cause (Section 7.1 of the Agreement) or without cause (Section 7.2).  If terminated without cause, Lynx was entitled to receive commissions for three years following the termination.

Even though Lynx increased ASG's sales, in August 2001 ASG terminated Lynx, shortly after the first one year renewal term began.  Lynx is therefore entitled to receive commissions for three years after that date, and the "rate shall be at fifty percent (50%) of the amount the Agency would have earned pursuant to paragraph 6.1 of this agreement."  Exhibit 1 at 6.2.[1]  ASG also failed to pay Lynx commissions Lynx had earned before the date of termination.

**The Grewals as ASG's alter egos**

During discovery, plaintiff's counsel learned that there were grounds to file an amended complaint against Amar Grewal, ASG's sole shareholder, and his wife, Kal Grewal, because they were acting as ASG's alter egos.  The Court granted leave to amend the complaint, but Lynx only recently obtained documents from defendants detailing, in part, the financial dealings between ASG and the Grewals.[2]

Amar Grewal is ASG's president and sole shareholder.  In June 2003, he testified that his

---

[1] Lynx and defendants have filed cross-motions for summary judgment on the issue of the proper interpretation of their Agreement, specifically paragraphs 6.1, 7.1 and 7.2.

[2] Counsel for Lynx received some of the documents on which the instant motion relies on December 16, 2003, and the remainder on January 5, 2004.  Defendants still have not produced all the relevant documents, but those that have been produced show there is no genuine dispute over the relevant facts that show the Grewals act as ASG's alter egos.

salary formerly was determined "by draws, depending on the necessity of what I require." Exhibit 2, deposition of Amar Grewal at p. 39-40. In other words, he "drew up from the company that which [he] needed to live." Exhibit 2, Grewal depo. at p. 40. Mr. Grewal further explained that although he now has a set salary, he continues to draw additional money for living expenses. *See* Exhibit 2, Grewal depo. at p. 41. His wife, Kal Grewal, is an employee of ASG. Amar Grewal testified that formerly his wife did not take a salary but was "just taking draws necessary to ... live on." Exhibit 2, Grewal depo. at p. 40-41. As of June 2000, however, she had an employment contract in which ASG had agreed to pay her $15.00 an hour for her services as office manager, with no benefits, and she agreed to invoice ASG on a monthly basis for those hours she worked. *See* Exhibit 3, Kal Grewal's employment contract. Assuming (generously) that she worked forty hours a week for fifty weeks in a year, her annual wages under that contract would be approximately $30,000.00. Yet ASG records show that it "advanced" Kal Grewal $53,479.10 in the year ended January 31, 2002, and $40,576.24 in the year ended January 31, 2003. *See* Exhibit 4, ASG's "Account QuickReport," for the periods ending January 31, 2002 and January 31, 2003 entitled "Advance – KG."

ASG has produced no reports for the year since January 31, 2003, but it did produce documents entitled "Account QuickReports" that detail ASG's payments to Amar and Kal Grewal for the years ended January 31, 1999 through January 31, 2003. ASG's records for those years show it advancing Amar Grewal a total of $615,013.88. *See* Exhibits 5 through 9, ASG's "Account QuickReport" for the years ended January 31, 1999 through January 31, 2003, respectively, detailing advances made to Amar Grewal. Further, ASG's total advances to Kal Grewal over the two year period from January 31, 2001 to January 31, 2003 were $94,055.34.

*See* Exhibit 4. The advances to the couple total $709,069.22.

Many of these advances are clearly marked as payments for the Grewals' personal expenses. For instance, over the course of these five years, ASG paid a total of $10,223.00 to Meadowridge School, $2,162.00 to Sylvan Learning Center, $2,921.71 to Inlet Montessori School, and $75.00 to Bramblewood Montessori Preschool Daycare. *See* Exhibits 4 through 9. ASG also made thirteen payments to Sara Townes for daycare, totaling $3,798.79. *See* Exhibit 4.

There are also payments to Costco Wholesale, *see* Exhibits 4 and 8, a number of payments to the Bank of Montreal to pay Amar Grewal's credit card bills, *see* Exhibits 5-9, and payments for the purchase of a "Z3" from H & M Imperial Auto, Ltd., as well as for automobile insurance in June 2000. *See* Exhibit 7. Furthermore, in addition to what the "Account QuickReports" call "advances" to Amar Grewal, ASG produced another "Account QuickReport" for the period ending January 31, 2003 entitled "Withdrawal – ASG." ("ASG" is not only part of the company's name but these letters are Amar S. Grewal's initials). This report lists a $2,000.00 withdrawal by "Amar Grewal." This report also lists several credit card payments, including three to the Bank of Montreal that specifically were for "personal expenses." *See* Exhibit 10, "Account QuickReport" for the period ending January 31, 2003 entitled "Withdrawal – ASG." Finally, ASG made at least one substantial shareholder loan to Amar Grewal. Thereafter, it "reclassified" the shareholder loan as wages, thus obviating any need by Amar Grewal to pay the loan back. At the same time, ASG "reclassified" Amar Grewal's draws to wages as well. *See* Exhibit 11, "Account QuickReport" for the period February 2001 through January 2002, entitled "Wages – A. Grewal."

In at least one year, ASG made substantial advances to the Grewals at a time the corporation itself was declaring a loss on its income tax returns. In the year that ended on January 31, 2002, ASG advanced Amar Grewal $232,968.72 and Kal Grewal $53,479.10, or a total of $286,447.82 . *See* Exhibits 4 and 8. For that same year, ASG reported a loss of $46,526 on its corporate tax return. *See* Exhibit 12, ASG's corporate tax return for the year ended January 31, 2002.

The Grewals also siphoned ASG funds to finance the Grewals' personal real estate investments. ASG occupied, in 2001, two facilities that it used as warehouses and production facilities, Units 42 and 46. *See* Exhibit 2, Grewal depo. at p. 36-37. It did not own either. Rather, Amar and Kal Grewal owned both facilities and leased them to ASG. *See* Exhibit 2, Grewal depo. at p. 38. ASG, however, provided the funds for their purchase. *See* Exhibit 13, copies of ASG checks paying for the purchase of Unit 42.

When defendants produced the documents detailing some of the ways in which ASG and the Grewals intermingled their financial affairs, defendants, also for the first time, disclosed that the Grewals have an interest in another company, Natura Products, Inc. ("Natura"). ASG's balance sheet shows that, in both 2002 and 2003, ASG made advances to a "related company." In 2003, those advances totaled $168,090.00. *See* Exhibit 14, ASG's Statement of Income and Retained Earnings for the year ended January 31, 2003; *see also* Exhibit 15, ASG's "Account QuickReport" for the year ended January 31, 2003, detailing ASG's payments to Natura. Natura maintains an address at the same location as ASG, and manufactures and sells very similar products to ASG. *See* Exhibit 16, a printout of the pages of Natura Products' website, "http://www.naturaproducts.ca."

II.  **DISCUSSION**

There is no dispute that the individual defendants have constantly and consistently intermingled their personal and corporate assets. Defendants have produced abundant and uncontradicted evidence, in the form of their own business records, that establish that Amar and Kal Grewal are ASG's alter egos. As there is no dispute about the facts leading to the legal conclusion that the individual defendants are ASG's alter egos, the Court should grant summary judgment on that issue.

Summary judgment "is no longer a disfavored procedural shortcut...." *Big Apple BMW, Inc. v. BMW of North America,* 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied,* 507 U.S. 912(1993). Rather, it is "designed to secure a just, speedy and inexpensive determination of cases before they proceed to trial." *Schlegel v. Life Insurance Co. of North America*, 269 F.Supp.2d 612, 615 n.1 (E.D.Pa. 2003), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Schlegel* at 615 n.1, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-52 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson,* 477 U.S. at 251-52. Here, the facts are undisputed that Amar and Kal Grewal use corporate funds for personal purposes on a longstanding, frequent and regular basis. No reasonable jury could find anything other than that the Grewals " did not keep [their] personal interests separate from the corporate interests," *College Watercolor Group v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200, 207 (1976), and that there was "siphoning the

funds from the corporation by dominant shareholders," *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 334 n.7 (3d Cir. 2000).

As there is no real dispute that the Grewals siphoned corporate funds and did not keep their personal interests separate from ASG's corporate interests, Lynx is entitled to judgment as a matter of law.

### A. ASG Is A Mere Instrumentality For The Grewals' Personal Interests

When the sole shareholder of a corporation keeps no distinction between his personal and corporate interests, courts in both the United States and Canada will disregard the corporate form in the interest of equity. If that shareholder treats the corporation's assets as his own, the corporation should be viewed as his alter ego, and he as the corporation's alter ego.

The alter ego theory of liability "is available whenever one party seeks to hold the corporation owner liable for any claim or debt." *Good v. Holstein,* 787 A.2d 426, 420 (Pa.Super. 2001)(piercing corporate veil between corporation and sole shareholder on alter ego theory). Indeed, "a court will not hesitate to treat as identical the corporation and the individuals owning all its stock and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." *Id.,* quoting *Kellytown Co. v. Williams,* 284 Pa.Super. 613, 426 A.2d 663, 668 (1981). An alter ego finding is most appropriate when there is a sole shareholder who does not separate his personal and corporate assets. For instance, in *In Re Velis*, 123 B.R. 497 (D.N.J. 1991), the district court, applying New Jersey law, held that the corporation in which the debtor was the sole shareholder was a "fiction," because the "corporation has been co-opted by and rendered indistinguishable from its owner." *Id.* at 509. The shareholder there had taken assets from his personal corporation

and converted them to "liquid assets for his immediate and sole use." *Id.  See also S.T. Hudson Engineers, Inc. v. Camden Development Associates,* 747 A.2d 931 (Pa.Super. 2000).  In *S.T. Hudson*, an engineering firm brought a breach of contract claim against the partnership that hired him, the corporation that was the controlling partner, and the individual who owned the corporation.  The court held that the individual defendant was the corporation's alter ego.  Its reasoning was succinct:

> CWDC is a corporation in which Malcolm Lazin is the sole shareholder, officer, and employee.   In fact, some payments made to Appellee for work performed pursuant to the subject contract were tendered by personal checks, drawn on the personal account of Malcolm Lazin.

747 A.2d at 936.  If the sole shareholder paying his corporation's bills is enough to make him its alter ego, certainly the corporation paying the shareholder's bills, as happened with ASG and Amar Grewal, is more than enough.

> The *Velis* court explained a corporation and its shareholders are alter egos to extent that
>
> (1) the shareholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs;  (2) there is such a unity of interest and ownership that the separate personalities of the corporation and its owners no longer exist;  and (3) adherence to the doctrine of the corporate entity would promote injustice or protect fraud, the corporate identity will be deemed a fiction and disregarded.

123 B.R. at 509.  In the case at bar, Amar Grewal not only is the sole owner of ASG's stock, but it is clear he and his wife use it as an instrumentality for the transaction of their own affairs.  As the documents show, and Amar Grewal admitted, he and his wife withdraw corporate funds any time they wish for personal use.  They pay day care expenses, schooling expenses, groceries and buy cars with corporate funds without regard to corporate formalities.  The unity of interest and ownership shows that there is no real separation between the "personalities" of ASG and the

Grewals. *See, e.g., Bridgestone/Firestone, Inc. v. Carr's Tire Service, Inc.*, 1992 WL 365512 (E.D.Pa. 1992) (finding a corporation and its shareholder to be alter egos because corporate formalities were not followed and corporate funds were used to make monthly payments to the shareholder's wife).

The central point is that piercing the corporate veil is appropriate when the shareholders in a closely held corporation "intermingled their personal interests with those of the corporation," *Cerami v. Dignazio*, 424 A.2d 881, 890 (Pa.Super. 1980). As the Pennsylvania Superior Court explained, "the fiction of corporate identity will be disregarded where the corporation is used in furtherance of personal interests." *Id.* Similarly, in *College Watercolor Group v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976), the Pennsylvania Supreme Court affirmed the decision to hold the sole shareholder personally liable for a judgment against his wholly owned corporation for selling watercolor reproductions that violated the plaintiff's trademarks and trade secrets. As the Pennsylvania Supreme Court explained:

> It has been held that the corporate veil is properly pierced whenever one in control of a corporation uses that control or corporate assets to further one's own personal interests.

*Id.*, 360 A.2d at 207. In that case, the individual shareholder (Newbauer) threatened the plaintiff (also a corporation) that Newbauer's corporation would not pay its debts to plaintiff unless the plaintiff agreed to sell Newbauer stock in the plaintiff. "This fact alone supports the conclusion that Newbauer did not keep his personal interests separate from the corporate interests." *Id. See also Commonwealth ex rel. Maier v. Maier*, 274 Pa.Super. 580, 418 A.2d 558 (1980) (where supporting spouse is sole stockholder of corporation and determines his own salary, court may pierce corporate veil and use corporate income as basis for determining earning capacity).

9

Similarly, in *In re Jamie, Inc.,* 230 B.R. 36, 42 (D.N.J. 1998), the court explained that under New Jersey law

> Factors including ownership of a significant amount of stock coupled with the operation of the corporation essentially as the principal's "personal business conduit," therefore weigh heavily in favor of finding an alter ego relationship.

*Accord In re Cooper,* 147 B.R. 678, 683 (Bankr.D.N.J.1992). *See, e.g., Bridgestone/Firestone, Inc. v. Carr's Tire Service, Inc.*, 1992 WL 365512 (E.D.Pa. 1992) (finding a corporation and its shareholder to be alter egos because corporate formalities were not followed and corporate funds were used to make monthly payments to the shareholder's wife).

The law in Canada is no different. The Queen's Bench Court, describing the doctrine of piercing the corporate veil in Canadian law, has said it is appropriate to hold a sole shareholder liable for the contractual obligations of his shareholder when the funds paid to the corporation "flowed through the corporation to the individual." *C-L Associates, Inc. v. Airside Equipment Sales, Inc.,* 2003 MBQB 104 (Manitoba Court of Queen's Bench, 2003) at ¶ 17, citing *Canadian Opera Co. v. 670800 Ontario, Inc.*, [1990] OJ No. 2270 (QL)(Gen.Div.). A copy of the *C-L Associates* decision is attached for the Court's convenience. *See also Rohani v. Rohani*, 2003 BCSC 1438 (British Columbia Supreme Court, 2003), at ¶7 ("As to piercing the corporate veil, I concluded on the evidence that the Husband routinely drew funds from Myfam [his corporation] to finance his own living expenses and those of his Wife. He treated Myfam has his alter ego and at all material times he made the decisions that guided its corporate affairs.") The *Rohani* decision is also attached for the Court's convenience.

ASG's funds "flowed through the corporation to the individual" who owned ASG, Amar Grewal, and to his wife. They used the corporation to finance their living expenses. There was

10

no separation between the "personalities" of the corporation and of its sole shareholder. Therefore, Amar and Kal Grewal are ASG's alter egos.

### B. Injustice Will Result Unless The Corporate Veil Is Pierced

As all these courts emphasize, the purpose of piercing the corporate veil is to prevent injustice, especially the sort of injustice that will arise when a corporation is stripped of its assets rendering it unable to pay its debts and liabilities. As the Court has been informed by defendants' counsel, Kleinbard Bell & Brecker, LLP, ("KBB"), ASG is not paying its counsel fees. *See* KBB's motion for leave to withdraw as counsel. ASG also, when required to pay plaintiff's counsel fees as sanctions, offered to pay only half of the fees plaintiff's counsel detailed for defendants' counsel, *see* plaintiff's motion to enforce sanctions, and even then requested a delay of two additional weeks before paying those fees. The need for the delay was given as "[d]ue to ASG and the Grewals' current distressed financial condition . . . ." Exhibit 17, a letter dated January 7, 2004 from KBB to plaintiff's counsel. Both the Grewals and ASG now appear to be claiming financial difficulties, while at the same time the Grewals have shown that they will withdraw any funds they wish from ASG's accounts for any purpose. They easily can withdraw money from ASG to cover their own alleged financial difficulties and leave ASG a worthless shell. The temptation to do this seems especially great when Natura, their other company, can go forward to act as their new business vehicle to produce future income.

When a shareholder deprives his corporation of assets it needs to pay its debts and liabilities – and right now, it appears the Grewals may have deprived ASG of assets sufficient even to pay its counsel fees – the Court should pierce the corporate veil. For example, in *Karo Marketing Corp. v. Playdrome America*, 52 A.2d 341(N.J. Super. 2000), a judgment creditor of a

management company for a corporation's subsidiaries brought action against the parent corporation, its subsidiaries, and its shareholders to recover against all of them for terminating the plaintiff's management contract.  The Superior Court of New Jersey held that the allegations supported piercing the corporate veil.  The shareholders of the corporation that had breached its contract with plaintiff had stripped the first corporation of its assets and put them into another, related corporation.  The court found that, "Plaintiff has produced ample evidence to pierce the corporate veil of Playdrex and RAM and to reach those individuals who are responsible for its inability to collect its debt."  *Id.* at 347.  Similarly, in *C-L Associates, Inc. v. Airside Equipment Sales, Inc.,* 2003 MBQB 104 (Manitoba Court of Queen's Bench, 2003), the Canadian court relied on the same principles of justice and equity to pierce the corporate veil so that Airside's creditor could reach the assets that had flowed out of that company, leaving it without funds, into the hands of its sole shareholder and, ultimately, into another company he had set up to do business to replace Airside.

Much like the shareholders in both *Airside* and *Karo,* Amar and Kal Grewal have been freely taking ASG's assets for years.  Also much like the shareholders in those other cases, the Grewals appear to be shifting funds from one corporation, which is being sued, to another corporation.  At a time when ASG is alleged to be in financial difficulty, its assets have been advanced to another, related company, Natura.  Whether Natura is just another alter ego for the Grewals is not yet established.  However, ASG's own documents clearly establish that the Grewals have always used ASG as their alter ego, treating its funds as their own.

Furthermore, as ASG owns no real estate and its liquid assets are constantly being transferred to the Grewals, unless the Grewals are held liable for ASG's debts, an injustice

against the plaintiff will occur.  ASG's funds appear to be so scarce that it cannot pay its attorneys and would have difficulty paying Court ordered sanctions.  Given the reasons for that situation, equity demands that the corporate veil be pierced to reach the Grewals as individuals.

## CONCLUSION

ASG Consultants Ltd is the alter ego and instrumentality of Amar and Kal Grewal.  For years the Grewals have drawn no distinction between corporate funds and money available to them for their personal use.  In these circumstances, the debts and liabilities of ASG Consultants Ltd. are properly the debts of Amar and Kal Grewal as well.  Therefore, plaintiff, Lynx Associates, Inc., respectfully moves this Court to grant summary judgment in its behalf and hold the Grewals jointly and severally liable with ASG Consultants Ltd. for whatever liability ASG Consultants Ltd. has to plaintiff.

DATED: January 30, 2004                                    Respectfully submitted,

                                                                  Kramer & Kramer, LLP

                                                                  By: s/Mitchell A. Kramer_____
                                                                       Mitchell A. Kramer   (MK867)
                                                                       1077 Rydal Road, Suite 100
                                                                       Rydal, PA 19046
                                                                       (215) 887-9030

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of Plaintiff's Motion for Partial Summary Judgment Against Individual Defendants and accompanying Memorandum of Law to be served upon defendants via first class mail and facsimile as follows:

> Robert B. Bodzin, Esquire
> Eric J. Schneider, Esquire
> Kleinbard, Bell & Becker LLP
> 1900 Market Street, Suite 700
> Philadelphia, Pennsylvania 19103
> Facsimile: (215) 568-0140

Date: January 30, 2004                                    s/Mitchell A. Kramer
                                                          Mitchell A. Kramer   (MK867)
                                                          Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 02-cv-2741 |
| ASG CONSULTANTS LTD., | ) |
| and | ) |
| AMAR GREWAL and KAL GREWAL, | ) |
| Defendants | ) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AGAINST THE INDIVIDUAL DEFENDANTS**

Plaintiff, Lynx Associates, Inc., hereby moves for partial summary judgment against the individual defendants as detailed more fully in the supporting memorandum of law.

Date: January 30, 2004

Respectfully submitted,

Kramer & Kramer, LLP

By:  s/Mitchell A. Kramer
Mitchell A. Kramer   (MK867)
1077 Rydal Road, Suite 100
Rydal, PA 19046
(215) 887-9030

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNX ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-cv-2741 |
| | ) | |
| ASG CONSULTANTS LTD., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMAR GREWAL and KAL GREWAL, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**ORDER**

AND NOW, this   day of        , 2004, upon consideration of plaintiff's Motion for Partial Summary Judgment Against the Individual Defendants and all responses thereto, it is hereby ORDERED that the motion is GRANTED.  It is further ORDERED that defendants, Amar Grewal and Kal Grewal, are found to be the alter egos of defendant, ASG Consultants Ltd., and all judgments binding ASG Consultants Ltd. in this action jointly and severally bind Amar Grewal and Kal Grewal as well.

_____
                                                                                                        J.