**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNX ASSOCIATES, INC.<br>24 Cayuga Avenue<br>Oakland, NJ 07436-4026<br><br>      Plaintiff<br><br>      v.<br><br>ASG CONSULTANTS LTD.<br>36 Hett Creek Drive<br>Port Moody, B.C., Canada V3H427<br><br>and<br><br>AMAR GREWAL and KAL GREWAL,<br>husband and wife,<br>36 Hett Creek Drive<br>Port Moody, B.C., Canada V3H427<br><br>and<br><br>NATURA PRODUCTS INC.<br>36 Hett Creek Drive<br>Port Moody, B.C., Canada V3H427<br><br>      Defendants | Civil Action No. 02-CV-2741<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Lynx Associates, Inc., by way of Complaint against the defendant says:

<u>NATURE OF CASE</u>

1.    The plaintiff is a company that contracted with defendant ASG Consultants Ltd. ("ASG") to act as that defendant's sales representative to sell products manufactured or supplied by ASG in a designated territory.

2. The defendant ASG has wrongfully terminated the plaintiff's contract and failed to pay sums of money to the plaintiff as required by the applicable contract, in breach of the contract and in violation of various applicable statutes.

3. Defendants Amar and Kal Grewal are the shareholders of defendant ASG, which they do not treat as a separate legal entity but rather as their personal instrumentality. Rather, they act as its alter egos, stripping it of independent control of its assets, and thus they must be held personally responsible for ASG's liabilities to prevent illegality and injustice, including ASG's liabilities to Lynx Associates, Inc.

4. Defendant Natura Products Inc. ("Natura") is a closely held corporation that is closely affiliated with ASG, sharing common ownership, management, assets and the same address, causing Natura to be ASG's alter ego or successor, and ASG has transferred substantial sums of money to Natura in recent years, which transfers may be fraudulent.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of costs and interest

6. Venue in this Court is proper under 28 U.S.C. §1391(a) and (c) as a substantial part of the events and omissions giving rise to plaintiff's claim arose in this judicial district, plaintiff sold defendant ASG's products in this judicial district and conducts a substantial volume of business in this judicial district.

## PARTIES

7. Plaintiff Lynx Associates, Inc. ("Lynx") is a New York corporation with its principal

place of business in Oakland, New Jersey.

8. Defendant ASG Consultants Ltd. ("ASG") is a Canadian company with its principal place of business at 36 Hett Creek Drive, Port Moody, British Columbia, Canada.

9. Defendants Amar Grewal and Kal Grewal, (collectively, "the Grewals") also residing in Port Moody, British Columbia, Canada, are husband and wife and are the sole shareholders of defendant ASG and act as its alter egos.

10. Defendant Natura Products, Inc. ("Natura") is a Canadian company with its principal place of business at 36 Hett Creek Drive, Port Moody, British Columbia, Canada, and shares common ownership, management and assets with ASG.

## FACTUAL ALLEGATIONS

11. ASG is a manufacturer of a seedling protection system and trades under the name of "Repellex."

12. The Grewals are the sole shareholders of ASG, and maintain full control over all its affairs.

13. The Grewals own the facility at which all of ASG's business is done, and lease that facility to ASG.

14. Defendant Kal Grewal takes no salary from ASG, but instead at her discretion draws whatever amount of money she desires for her personal use from ASG's corporate funds.

15. Defendant Amar Grewal also draws money from ASG's corporate funds as he desires for his personal use.

16. As ASG does not own its facility, and does not have extensive equipment or inventory on hand, it has limited assets.

17. The Grewals' use of ASG as their personal instrumentality, especially their disregard of corporate boundaries by taking ASG's funds for their personal use, renders ASG's assets vulnerable to being stripped.

18. The Grewals do not treat ASG as a distinct legal entity.

19. Natura is located at the same address as ASG.

20. Upon information and belief, Natura has two shareholders, one of whom is Amar Grewal.

21. Amar Grewal manages both ASG and Natura.

22. Natura manufactures products similar to those ASG manufactures, for example, mosquito and tick repellants.

23. Natura and ASG share sales forces and distribution methods.

24. ASG has transferred large sums of money to Natura in the last three years.

25. ASG has paid many of Natura's operating expenses over the last three years.

26. ASG and Natura do not act as distinct legal entities.

27. Plaintiff Lynx is a sales agency engaged in the business of representing manufacturers and distributors in the horticultural industry, and has spent many years and invested substantial amounts of time and money fostering strong business relationships with horticultural wholesalers and customers in the Territory in which it does business.

## ASG - LYNX CONTRACT

28. On or about August 1, 1998, ASG and Lynx entered into a Sales Agency Agreement (the "Contract"). *See* Contract, attached hereto as Exhibit 1 and made part hereof.

29. Pursuant to the Lynx Contract, ASG appointed Lynx as ASG's sole and exclusive sales representative for goods and services manufactured or supplied (the "Products") by ASG

in a territory comprising Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, Tennessee, West Virginia, Kentucky, Ohio, Indiana, Michigan, Wisconsin, Minnesota and Iowa (the "Territory").

30. Lynx had the exclusive right to represent ASG's Products in the Territory.

31. Lynx had fostered strong personal and business relationships over many years with its customers in said Territory.

32. The Contract had an initial term commencing August 1, 1998, and ending August 1, 2001.

33. The Contract provided as follows:

> In the event of a 'without cause termination' under paragraph 7.2 by the Principal, commission shall continue to be earned by the Agency for a period of three (3) years following the termination of this Agreement. The rate shall be at fifty percent (50%) of the amount the Agency earns pursuant to paragraph 6.1 of this agreement.

*See* Exhibit 1 at par. 6.2.

34. On September 28, 2001, plaintiff received a letter, from Bilfield & Sandel Co., L.P.A., attorneys for ASG, purporting to terminate the Agreement "for cause" which letter stated in part as follows:

> Firstly, the agreement between Lynx Associates, Inc. and ASG Consultants dated August 1, 1998, has been terminated as you acknowledge in your letter of August 24, 2001. The agreement was elected by ASG Consultants Ltd. to be terminated for cause. You were notified by correspondence dated November 14, 2000 of several issues and concerns on the part of my clients which have not been addressed and cured.

*See* September 28, 2001, letter, attached here as Exhibit 2 and made part hereof.

35. That letter followed a letter dated April 19, 2001, attached hereto and made part hereof as Exhibit 3, which spoke about termination of the Contract and continuation of the relationship. This letter either failed to properly terminate the agreement or triggered the termination without cause provisions of the agreement.

36. Paragraph 7.1 of the Contract, entitled "For Cause Termination" provides as follows:

> 7.1.1 Commission of a felony by either party in the course of performance of the Agreement shall entitle the other to effect immediate termination upon the giving of written notice.
>
> 7.1.2 The election of one party (the "aggrieved party") to terminate this Agreement upon (1) the actual breach or actual default by the other party in the reasonable performance of the defaulting party's obligation and duties under this Agreement and (2) the failure of the defaulting party to cure the same within thirty (30) days (the "cure period") after receipt by the defaulting party of a good faith written notice from the aggrieved party specifying such breach or default and (3) provided that the defaulting party has not cured the default and the aggrieved party may then give written notice to defaulting party of his or its election to terminate fifteen (15) days after expiration of the cure period.
>
> 7.1.3 The other party is declared insolvent or bankrupt, or makes an assignment for the benefit of creditors, or a receiver is appointed or any proceeding is demanded by, for or against the other under any provision of the Federal Bankruptcy Act or any amendment thereof is not removed within sixty (60) days after notice from the other party of election to terminate.

*See* Exhibit 1 at par. 7.1.

37. None of the circumstances set forth in paragraph 7.1 of the Contract occurred, and the ASG's purported termination "for cause" was in fact a termination of the Lynx "without cause" and without foundation or justification under the Agreement. Lynx was not given notice of any breach of its agreement with defendant or an opportunity to cure. In fact,

Lynx was not in breach of the contract.

38. In addition to terminating Lynx without cause, ASG has failed to compensate Lynx as required by the Contract.

## COUNT I

## BREACH OF CONTRACT

39. The averments contained in paragraphs one through 38 are incorporated by reference as though set forth fully herein.

40. Defendant ASG breached the Contract by terminating the plaintiff in violation of the explicit provisions of the Contract.

41. Defendant ASG breached the Contract by terminating the plaintiff contrary to the terms of the Contract, without cause, asserting that good cause existed to terminate the Contract where none exists and by failing to pay damages as required by the Contract.

42. As a result of defendant ASG's breaches of the Contract, plaintiff has suffered and will continue to suffer damages including amounts defendant agreed to pay, lost profits, diminution of the value of its business, and loss of good will.

## COUNT II

## BREACH OF CONTRACT

43. The averments contained in paragraphs one through 42 are incorporated by reference as though set forth fully herein.

44. The Contract gave plaintiff the exclusive right to solicit orders on behalf of defendant ASG within the Territory. *See* Exhibit 1 at par. 1.

45. The Contract further gave plaintiff the right to receive commissions on all accepted

orders solicited within and/or delivered to the Territory.  *See* Exhibit 1 at par. 6.1.

46. Defendant ASG breached the Contract by permitting individuals or entities other than plaintiff to solicit orders within the Territory and failing to pay plaintiff commissions for all orders solicited and/or delivered in the Territory.

47. As a result of defendant ASG's breaches, plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its business, and loss of good will.

COUNT III

BREACH OF THE IMPLIED COVENANT OF

GOOD FAITH AND FAIR DEALING

48. The averments contained in paragraphs one through 47 are incorporated by reference as though set forth fully herein.

49. Defendant ASG's termination of the plaintiff constituted a breach of the implied covenant of good faith and fair dealing.

50. ASG persistently had backorder problems, thereby limiting the amount of the product that Lynx could sell.

51. ASG failed to deliver Products in a prompt and reasonable manner, thereby limiting the amount of Products that Lynx could sell.

52. As a result of defendant ASG's breaches of the covenant of good faith and fair dealing, the plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its business, and loss of good will.

COUNT IV

INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

53. The averments contained in paragraphs one through 52 are incorporated by reference as though set forth fully herein.

54. Prior to entering into its Contract with defendant ASG, plaintiff had long-standing, well-established relationships with wholesalers and customers in the horticultural business.

55. Plaintiff also developed and entered into numerous advantageous business relationships with horticultural wholesalers and customers that purchased defendant ASG's Products through plaintiff.

56. Defendant ASG knew of these relationships and in fact entered into its business relationship with plaintiff to capitalize on these relationships.

57. By terminating plaintiff without cause and by contacting and selling Products directly to plaintiffs' customers, defendant ASG intended to disrupt these various relationships and to misappropriate and take unfair advantage of plaintiff's reputation and good will.

58. As a result of this conduct, plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its businesses, and loss of good will.

## COUNT V

INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

59. The averments contained in paragraphs one through 58 are incorporated by reference as though set forth fully herein.

60. Plaintiff had well-established relationships with subagents engaged by plaintiff to assist with the solicitation of orders of defendant ASG's Products within the Territory.

61. Defendant ASG knew of these relationships and in fact entered into its business relationship with plaintiff to capitalize on these relationships.

62. By terminating plaintiff without cause and by improperly contacting and soliciting these subagents to work on behalf of defendant ASG, defendant ASG intended to disrupt plaintiff's relationships with its subagents, and to misappropriate and take unfair advantage of plaintiff's reputation and good will.

63. As a result of this conduct, plaintiff has suffered and will continue to suffer damages including lost profits, diminution of the value of its businesses, and loss of good will.

## COUNT VI

### VIOLATION OF THE NEW JERSEY SALES REPRESENTATIVES' RIGHTS LAW

64. The averments contained in paragraphs one through 63 are incorporated by reference as though set forth fully herein.

65. Plaintiff is a "Sales Representative" as defined under the Sales Representatives' Rights Law, N.J. Stat. Ann. 2A:61A-1(c).

66. Defendant ASG is a "Principal" as defined under the Sales Representatives' Rights Law, N.J. Stat. Ann. 2A:61A-1(b).

67. Under N.J. Stat. Ann. 2A:61A-2, "when a contract between a principal and a sales representative to solicit wholesale orders is terminated, the commissions and other compensation earned and unpaid through the last day of the contract shall become due and payable within 30 days. When a sales representative is discharged the commissions and other compensation earned and unpaid through the last day of the contract shall become due and payable within seven days."

68. Contrary to the requirement of N.J. Stat. Ann. 2A:61A-2, defendant ASG has failed to pay the commissions owing and due to plaintiff.

69. Numerous and repeated demands have been made upon defendant ASG to account for and to pay the commissions outstanding to the plaintiff, but defendant ASG has failed and refused to do so.

70. As a result of defendant ASG's violations of the New Jersey Sales Representatives's Rights law, plaintiff has suffered damages including unpaid commissions and is entitled to costs and attorney fees.

## COUNT VII

### VIOLATION OF VARIOUS SALES REPRESENTATIVE'S LAWS

71. The averments contained in paragraphs one through 70 are incorporated by reference as though set forth fully herein.

72. Plaintiff is owed commissions for sales into a number of states in the Territory that require payment of commissions to be made within a limited time after termination of the contract between the agent and its principal. In each case, the time for payment of commissions has passed without payment being made.

73. Those states in which exemplary damages, multiple damages, and/or liquidated damages plus counsel fees and costs are to be paid on past-due commissions, are New Hampshire, Massachusetts, New York, Pennsylvania, Maryland, Tennessee, Ohio, Indiana, Michigan, Wisconsin, Minnesota and Iowa. Each of those states was part of plaintiff's Territory.

74. As a result of defendant ASG's violations of the laws protecting sales representatives in various states, plaintiff has suffered damages including unpaid commissions, and is

entitled to multiple, exemplary, and/or liquidated damages, costs, and attorney fees.

## COUNT VIII

## BREACH OF CONTRACT

75. The averments contained in paragraphs one through 74 are incorporated by reference as though set forth fully herein.

76. Defendant ASG contracted to pay plaintiff bonus commissions based on the amount of sales within the Territory, as well as the percentage increase of such sales. The required bonus commissions were set forth in a writing, faxed to Lynx on or about September 26, 2000, which was accepted by Lynx. *See* September 26, 2000, facsimile, attached hereto and made part hereof as Exhibit 4.

77. Defendant ASG failed to pay commissions as required by the September 26, 2000, facsimile.

78. As a result of defendant ASG's breach, plaintiff has suffered and will continue to suffer damages including unpaid commissions, diminution of the value of its business, and loss of good will.

## COUNT IX

## PERSONAL LIABILITY OF DEFENDANTS AMAR AND KAL GREWAL

79. The averments contained in paragraphs one through 78 are incorporated by reference as though set forth fully herein.

80. The Grewals have complete control over ASG.

81. The Grewals siphon ASG's corporate funds for their personal benefit.

82. The Grewals use of ASG's corporate funds ignores corporate formalities.

83. ASG is a mere puppet or alter ego of its controlling shareholders, the Grewals.

84. The Grewals' complete control of ASG's corporate funds, and their conduct in withdrawing those funds for personal benefit without corporate formalities, places ASG at risk of having its assets stripped and unavailable to pay ASG's debts and liabilities.

85. The Grewals' ability and willingness to strip ASG of its assets, which assets are needed to pay plaintiff the sales commissions ASG owes to plaintiff, jeopardizes the public policy of the various sales representatives laws that show a legislative intent to protect sales representatives' right to payment.

86. Justice and respect for public policy requires that this Court "pierce the corporate veil" between ASG and the Grewals, treat ASG and Grewals as alter egos, and hold the Grewals personally liable on all the Counts in this Complaint aforepleaded.

## COUNT X

## LIABILITY OF DEFENDANT NATURA PRODUCTS INC.– ALTER EGO

87. The averments contained in paragraphs one through 86 are incorporated by reference as though set forth fully herein.

88. ASG and Natura share common ownership.

89. ASG and Natura have a common management.

90. ASG pays some or all of Natura's operating expenses.

91. ASG and Natura share methods of sales and distribution.

92. ASG has transferred substantial assets to Natura.

93. Natura is ASG's alter ego.

94. The transfer of funds from ASG to Natura places ASG at risk of having its assets stripped and unavailable to pay ASG's debts and liabilities.

95. ASG's assets are needed to pay plaintiff the sales commissions ASG owes to plaintiff

96. Justice and respect for public policy requires that this Court "pierce the corporate veil" between ASG and Natura and, treat ASG and Natura as alter egos, and hold Natura liable on all the Counts in this Complaint against ASG.

## COUNT XI

### SUCCESSOR LIABILITY OF DEFENDANT NATURA PRODUCTS INC.

97. The averments contained in paragraphs one through 96 are incorporated by reference as though set forth fully herein.

98. Natura and ASG share a continuity of management, personnel, location, assets and general business operations.

99. Natura is a mere continuation of ASG.

100. Natura has provided a means by which ASG's ownership can continue ASG's business operations.

101. Natura therefore is liable for ASG's debts and liabilities as ASG's successor.

## COUNT XII

### FRAUDULENT CONVEYANCE TO NATURA PRODUCTS INC.

102. The averments contained in paragraphs one through 101 are incorporated by reference as though set forth fully herein.

103. ASG has transferred a substantial amount of its funds to Natura since August 2001.

104. At the time ASG transferred funds to Natura, it had already incurred liabilities to plaintiff, Lynx Associates, Inc., as detailed in various Counts in this Complaint.

105. Upon information and belief, ASG was and is insolvent at the time of these various

transfers.

106. ASG made transfers to Natura with the intent to hinder, delay or defraud ASG's creditors including Lynx.

107. ASG did not receive reasonably equivalent value in exchange for its transfers to Natura.

108. ASG's transfers to Natura are fraudulent as to Lynx.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against all defendants as follows:

1. For actual damages in an amount according to proof at trial;

2. For compensatory damages suffered by plaintiff for violations of the applicable statutes in an amount according to proof at trial;

3. For multiple damages as required or authorized by statute;

4. For punitive and exemplary damages in an amount according to proof at trial and sufficient to punish defendants and to deter others from similar wrongdoing;

5. For an order enjoining all further transfers from ASG to Natura;

6. For an order avoiding all past transfers from ASG to Natura as fraudulent;

7. For attorney fees;

8. For pre and post judgment interest;

9. For costs of suit; and

10. For such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

                              Kramer & Kramer, LLP


                              By:_____
                                  Mitchell A. Kramer
                                  1077 Rydal Road, Suite 100
                                  Rydal, PA  19046
                                  (215) 887-9030

s:\Lynx\secondamendedcomplaint.wpd