IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASG CONSULTANTS, LTD., et al., <br><br> Defendants. | Civil Action No. 02-CV-2741 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Defendants ASG Consultants, Ltd. ("ASG"), Amar Grewal and Kal Grewal, through their undersigned counsel, file this Memorandum of Law in opposition to Plaintiff Lynx Associates, Inc.'s ("Lynx") Motion for Leave to File a Second Amended Complaint (the "Motion").

**I.   INTRODUCTION**

Lynx is seeking the Court's permission, well after the close of discovery and very near to the time that a trial will be scheduled in this matter, to add yet another defendant to this case. This time, Lynx is seeking to add Natura Products, Inc. ("Natura"), a company also owned by Defendant Amar Grewal. Lynx seeks to add Natura t assert claims against it for piercing the corporate veil, successor liability and fraudulent conveyance.

Lynx's Motion should be denied for two reasons. First, neither Lynx's Motion nor the allegations in the attached proposed second amended complaint state a cause of action for piercing the corporate veil, successor liability and fraudulent conveyance. The fact that ASG and Natura have common ownership and ASG has loaned funds to Natura to cover operating expenses during its start-up period do not support Lynx's claims for piercing the corporate veil, successor liability or fraudulent conveyance. Second, this Motion is untimely because Lynx

admits that it was aware that Natura was a company in which Amar Grewal had an ownership interest as early as 2002, yet it failed to pursue discovery concerning Natura early in this case or add Natura as a defendant when it amended its original complaint in August 2003. Discovery in this case ended long ago and a trial date is near. Lynx should not be permitted to amend its complaint for a second time at this late date.

## II.    FACTS

Natura is a Canadian corporation that was incorporated in February 2001. See Affidavit of Amar Grewal ("Grewal Aff.") at p. 1, ¶2 (attached hereto as Exhibit A). Amar Grewal is the sole shareholder of Natura. Id. at p. 1, ¶3. Natura is a start-up company that did not have any sales until approximately December 2002. Id. at p. 2, ¶10.

Natura manufactures a line of products that is completely separate from the Repellex line of products manufactured by ASG. Id. at p. 1, ¶4. Natura manufactures and sells a product known as Gel-E-Bean water retentive capsules that accounts for approximately seventy percent of its product line. These are small capsules containing a water based solution that can be placed in plants of all varieties to reduce the need to water the plants. Id. at p. 1, ¶5. Natura also manufactures and sells organic herbicides that destroy weeds, organic insecticides that can be used on plants, organic mosquito and tick repellent that can be used by humans, and a deer repellent, Deer-Attack. Id. at p. 1, ¶6.

The only product manufactured by Natura that serves as similar purpose as the Repellex line of products is Deer-Attack. This repellent is significantly different than Repellex, however, because it is a sweet-smelling product made using essential oils such as peppermint and cinnamon (like the rest of Natura's organic product line). In contrast, Repellex is a blood-based product. While the two products have a similar purpose -- repelling deer -- they are entirely different products and the manufacturing process for each is distinct. Id. at p. 2, ¶7.

Natura has its own manufacturing facility that is separate from the two facilities used by ASG for the Repellex line of products. Natura leases a manufacturing facility in North Delta, British Columbia (ASG's manufacturing facilities are in Port Coquitlam, British Columbia). This facility is owned by MSK Ventures, Inc., a company in which neither myself, my wife nor ASG has any financial or ownership interest. Id. at p. 2, ¶8. Natura also has its own employees. Id. at p. 2, ¶9.

ASG has loaned funds to Natura to pay operating expenses to the extent that its expenses are not covered by revenue from Natura's sales. Id. at p. 2, ¶13. This includes the amounts that are reflected on ASG's balance sheets referenced in Lynx's Memorandum of Law in Support of Motion for Leave to File a Second Amended Complaint ("Lynx's Memo of Law"). Id. at p. 2, ¶13; see also Lynx's Memo of Law at Exhibits 5 and 7. Natura has signed promissory notes for all amounts loaned to it by ASG. Id. at p. 3, ¶14.

Natura experienced a loss of approximately $168,000.00 for the year that ended January 31, 2003. Id. at p. 2, ¶11. For the most recent fiscal year ending January 31, 2004, Natura is projected to have a loss of approximately $50,000.00. Id. at p. 2, ¶12.

Amar and Kal Grewal are not Natura's landlords as contended b Lynx. See Lynx's Memo of Law at p. 3. ASG and Natura have the same corporate address because this is the Grewals' home address, but as stated above, the companies conduct their manufacturing operations out of separate facilities and the Grewals do not own Natura's manufacturing facility.

Lynx's claims that ASG funds are being "siphoned off" to Natura and "stripped" (Lynx's Memo of Law at p. 4 and 9), and also that Natura "appears to be the Grewals' new business vehicle" (Lynx's Memo of Law at p. 7 and 9), are gross mischaracterizations. Natura is a start-up company with low revenues. ASG has advanced monies to Natura to pay legitimate operating

expenses. ASG anticipates that Natura will repay these funds once it is an established company with higher sales revenues. Lynx's attempt to create the impression that funds are being transferred to Natura to hide them, to evade creditors, or to re-establish ASG's operations under another company's name is misleading and simply wrong. Any advances from ASG to Natura were for the payment of legitimate operating expenses and ASG and Natura both continue to have their own operations.

Lynx also is incorrect when it alleges that ASG spent "close to $200,000.00 on Natura's behalf in the fiscal year 2002." See Lynx's memo of Law at p. 5. The advances by ASG to Natura reflected in Exhibits 5 and 7 to Lynx's Memo of Law include all separate payments that ASG made on behalf of Natura to suppliers during the relevant time period.[1] The separate invoices that ASG paid on behalf of Natura are encompassed within the total amounts advanced to Natura as set forth on Exhibits 5 and 7. See Lynx's memo of Law at p. 4. Indeed, the advance by ASG on January 31, 2003 of $153,854.75 that Lynx specifically references (see Lynx's Memo of Law at p. 4) reflects amounts paid by ASG for Natura's operating expenses for the year that ended January 31, 2003. In short, ASG did not spend "close to $200,000.00 on Natura's behalf in the fiscal year 2002" (Lynx's Memo of Law at p. 5); rather, it spent $168,090.29, which includes $11,174.83 in advances from the 2001 fiscal year. See Exhibits 5,7, and 8 to Lynx's Memo of Law.[2]

---

[1] The total advances for the year ending January 31, 2003 set forth on Exhibit 7, which were $168,090.00, include the total advances for the year ending January 31, 2002 set forth on Exhibit 5, which were $11,175.00. See Exhibit 8 to Lynx's Memo of Law ("Account Quick Report" for Total Die From Natura Products as of January 31, 2003).

[2] The dollar figures set forth on Exhibits 5 through 8 are in Canadian dollars.

III.    **ARGUMENT**

A.    **Lynx's Motion Should be Denied Because the Proposed Second Amended Complaint Fails to State a Claim Against Natura**

Lynx has requested that the Court permit it to amend its amended complaint yet a second time pursuant to Rule 15(a). Since Lynx is beyond the deadlines prescribed under that Rule, the Court has discretion to determine whether, in the interests of justice, Lynx should be permitted to amend it amended complaint yet again. The Third Circuit has recently held that an amendment to a pleading is not appropriate when the amendment would be "futile." See In Re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1332 (3d Cir. 2002). The court further explained, "an amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. Here the proposed amendment should not be permitted because it fails to state any claims against Natura upon which relief could be granted.

    1.    **Piercing the Corporate Veil**

Allowing Lynx to amend its amended complaint to add Natura as a defendant based on its theory of piercing the corporate veil is futile because Natura is not the alter-ego of ASG.

There is a strong presumption against piercing the corporate veil. See Lumax Industries, Inc. v. Mary Carol Aultman, 543 Pa. 38, 669 A.2d 893 (1995). "Care should be taken on all occasions to avoid making the entire theory of corporate entity useless." Id. (citing Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967)). A court should disregard the corporate form and pierce the corporate veil only where a corporation's separate existence is a subterfuge. In Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330 (3d Cir. 2000), for example, the Third Circuit observed:

> We have commented that "Pennsylvania, like New Jersey, does not allow recovery unless the party seeking to pierce the corporate veil on an alter ego theory establishes that the controlling corporation wholly ignored the separate status of the controlled corporation

> and so dominated and controlled its affairs that its separate existence was a mere sham. . . .  In other words, both Pennsylvania and New Jersey require a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons."

Id. at 334, n.6 (quoting Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 14-15 (3d Cir. 1990) (per curiam)); see also Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3d Cir. 1994) ("[G]enerally a shareholder is not personally liable to perform corporate obligations.  The corporate veil is pierced only when the corporation was an artifice and a sham to execute illegitimate purposes and an abuse of the corporate fiction and immunity that it carries.") (citations omitted); Catsouphes v. Atex Associates, Inc., 671 A.2d 208, 210 (N.J. Super. 1996) ("'We begin with the fundamental propositions that a corporation is a separate entity from its shareholders, . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.'  . . .  However, in limited cases such as 'fraud, injustice, or the like,' courts may pierce the corporate veil to impose liability upon shareholders. . . . The justification for imposing personal liability upon a shareholder 'is to prevent an independent corporation from being used to defeat the ends of justice, . . . to perpetrate fraud, to accomplish a crime, or otherwise to evade the law, . . . .'") (citations omitted).

In this case, Lynx seeks to pierce the corporate veil because Natura and ASG have common ownership and ASG has loaned money for operating expenses to ASG.  There is absolutely no basis to claim, however, that Natura's separate existence is a subterfuge or a sham.  Indeed, the evidence is to the contrary.  Natura is a separate company that manufactures and sells it own line of products, which are distinct from ASG's product line.  See Grewal Aff.  It has its own manufacturing facility and its own website.  See id.; Lynx's Memo of Law at Exhibit 3.  Despite having the same ownership, Natura is not the alter-ego of ASG.

Lynx also claims that it should be granted leave to pursue it piercing the corporate veil claim against Natura because Defendants could use Natura to strip ASG of its assets. Lynx cannot pierce the corporate veil on this basis. See Arch v. American Tobacco Co., 984 F.Supp. 830 (E.D. Pa. 1997) (holding that "the possibility that a plaintiff may have difficulty enforcing a judgment against a defendant is not enough to justify piercing the corporate veil."). In short, there is no basis to pierce the corporate veil against Natura and deem it ASG's alter-ego and, therefore, allowing Lynx to amend its amended complaint to assert a claim on this basis would be futile.

### 2. Successor Liability

Allowing Lynx to amend its amended complaint to add Natura as a defendant based on its theory of successor liability is futile because Natura plainly is not the "successor" to ASG in any sense of the word.

ASG and Natura are separate companies each manufacturing and selling their own distinct product lines. As clearly demonstrated by the cases cited by Lynx in its Memo of Law, successor liability contemplates that one company has ceased operations and a second company should be liable for its debts. Indeed, the second factor identified in Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 275-76 (D.N.J. 1994), is "a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible."

In this case, ASG has not ceased operations but continues to manufacture and sell its Repellex line of products. Likewise, Natura has not assumed any responsibility for the operation of ASG's business. ASG is a fully operational and ongoing business. The mere fact that a limited short term cash flow may have impacted its ability to pay certain bills does not mean that it has ceased operations. The theory of successor liability simply is inapplicable under the current facts.

      **3.**      **Fraudulent Conveyance**

Allowing Lynx to amend its amended complaint to add Natura as a defendant based on its claim of fraudulent conveyances also is futile because the New jersey Fraudulent Transfer Act does not apply in this case and even if it did, it is plain that Lynx's allegations do not establish a claim under this act.

Lynx has alleged fraudulent conveyances between two Canadian companies whose operations are both located in Canada. Any fraudulent conveyance between these companies necessarily would have taken place in Canada. Clearly, New Jersey's Fraudulent Conveyance Act would not apply to the actions of these companies. Even if this New Jersey law did apply, Lynx's allegations fall well short of articulating a claim for fraudulent conveyance.

Lynx cannot establish a claim under either section 25:2-25 or section 25:2-27. ASG's loan of funds to Natura to pay its operating expenses was not done with any intent to hinder, delay or defraud a creditor and it had nothing to do with the current litigation. ASG was not insolvent at the time it advanced any funds to Natura and it has not become insolvent as a result of advancing funds to Natura. ASG continues to operate it business manufacturing and selling its Repellex line of products. Consequently, allowing Lynx to pursue a fraudulent conveyance claim against ASG and Natura would be futile.

      **B.**      **Lynx's Motion Should be Denied Because it is Untimely**

Lynx's Motion also should be denied because Lynx has unduly delayed in seeking to add Natura as a defendant and, therefore, its Motion is untimely. Discovery in this action closed months ago and the case will be scheduled for trial soon. Lynx's claim that it "only learned of Natura's existence at the end of December 2003" (Lynx's Memo of Law at p. 6) is directly refuted by Michael Kozak in the affidavit he submitted in support of the Motion. In his affidavit, Mr. Kozak, the president of Lynx, states that at a trade show in 2002 he was aware of Natura, he

was told Amar Grewal was a partner in Natura, and he saw that Natura and ASG shared a booth. <u>See</u> Affidavit of Michael Kozak at ¶¶4-5 (Exhibit 4 to Lynx's Memo of Law). Despite this knowledge, Lynx did not pursue any discovery concerning Natura early in this case and did not pursue this issue during Mr. Grewal's deposition in June 2003. It is simply too late for Lynx to now attempt to add yet another party to this case, particularly one that it has been aware of since the beginning of this action.

### IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully submit that Lynx's Motion should be denied.

Respectfully submitted,

_____
Robert B. Bodzin
Eric J. Schreiner (ES1579)
KLEINBARD, BELL & BRECKER LLP
1900 Market Street; Suite 700
Philadelphia, PA  19103
215-568-2000

Attorneys for Defendants

Dated:  February 23, 2004