IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNX ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 02-cv-2741 |
| ) | |
| ASG CONSULTANTS LTD., ) | |
| AMAR GREWAL and KAL ) | |
| GREWAL, ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

In their response to the motion of Lynx Associates, Inc. ("Lynx") to amend the complaint to add Natura Products, Inc ("Natura"), defendants have provided some documents and made some new factual assertions that illustrate even more clearly why the motion should be granted.[1] Defendants now have revealed that Amar Grewal, the sole shareholder of ASG, who uses ASG's corporate accounts as if they were his personal funds, also owns 100% of Natura. Furthermore, all the money ASG advanced to Natura is secured by nothing more than two perfunctory promissory notes that do not even state *when* Natura is to repay the "loan," or the interest rate on that loan.

Defendants' arguments are 1) there is not enough evidence to justify holding Natura responsible for ASG's liabilities and 2) Lynx's motion is untimely. Neither argument is correct.

In 2002, Lynx's president, Michael Kozak, was told that Amar Grewal was a partner in another business that shared booth space with ASG at a trade show. That fact alone is totally innocuous, and would not justify piercing the corporate veil. Similarly, Lynx could not have

---

[1]Defendants are Amar Grewal, Kal Grewal, and ASG Consultants, Ltd. ("ASG").

sought to have ASG's transfers to Natura set aside as fraudulent until it learned that Amar Grewal was shifting ASG's money into Natura's operations.

In fact, only in defendants' response to this motion did defendants reveal yet another key fact – Amar Grewal not only is the one and only shareholder of ASG, but he is *also* Natura's sole shareholder.  *See* Amar Grewal's affidavit attached to defendants' response.  When Lynx's president first learned about Natura, he was given to believe Mr. Grewal had a "partner" named Thandi.  *See* Exhibit 4, Kozak affidavit.  Therefore, all Lynx's president knew in 2002 was that Amar Grewal, who owned ASG, also had an investment in another company.  Only in 2004 did the truth come out that Amar Grewal wholly owns both ASG and Natura, and that he treats them as one entity, using ASG's checks to pay for Natura's expenses.

### **Defendants' new factual allegations**

Defendants produced, for the first time, two promissory notes to ASG that Amar Grewal signed on Natura's behalf as attachments to their response. *See* Exhibit 1 to defendants' response.  These new documents coincide with what Lynx already ascertained and pointed out to the Court from ASG's financial statements, that "advances" were made to a "related company."  The notes show, however, how informal those "advances" were.  ASG loaned substantial sums of money to Natura and in return received nothing but a "promise to pay ASG Consultants, Inc. (ASG) the principal sum . . . plus applicable accrued interest."  There is no stated interest rate.  There is no repayment schedule.   There is no date when payment of the debt is due.  In fact, there is no date stated for when repayment is even to begin.

The promissory notes reflect the advances on the balance sheets found at Exhibits 5 and 7 of Lynx's initial memorandum, as Amar Grewal admits in his affidavit.  Defendants' response

states that these promissory notes encompass all the different payments ASG made for Natura's operating expenses. There is no basis in the record for that claim. Amar Grewal's affidavit refers to Lynx's exhibits 5 and 7 (the balance sheets) and says this is the money to which the promissory notes refer, but his affidavit does not state anywhere that these advances encompass the specific invoices ASG paid as reflected in Exhibit 9 through 12 and 14 through 22 to Lynx's memorandum. He could easily have said so if it were the case.

Even if the promissory notes do encompass all the money ASG paid for Natura's operating expenses, these notes do nothing more than show the method by which Amar Grewal is siphoning money from ASG to Natura. At most, these notes only reflect that "ASG anticipates that Natura will repay these funds once it is an established company with higher sales revenues." Defendants' memorandum at 4. Without a stated repayment schedule, terms and conditions defining default, a stated interest rate, or anything else one would expect to see in an enforceable loan agreement, that is all there is, hope and anticipation.

Amar Grewal also asserts that Natura operates a different manufacturing facility than does ASG. That may or may not be true, but as the Court already has seen, Natura and ASG have the same mailing address, 36 Hett Creek Drive, Port Moody, British Columbia. *See*, Exhibit 3, a printout of Natura's website, and defendants' Exhibit 1, the promissory notes listing ASG's address. Amar Grewal also asserts his two businesses make different products, although he admits both make some sort of deer repellant (he neglects to mention that both make a tick and mosquito repellant).

More important and more relevant, however, Mr. Grewal admits that Natura lost a great deal of money. The pattern of events taking shape from Amar Grewal's continuing admissions

3

and productions of documents is clear.  Amar Grewal owns two companies, ASG and Natura.  ASG has shown recent losses on its tax returns, is not paying its attorneys fees in this litigation, and is unable to pay court-ordered sanctions in a timely fashion.  Yet Amar Grewal and his wife use ASG's funds like a personal checking account, and also use ASG's money to prop up his other company, Natura, which itself is losing money.  In so doing, he is rendering ASG insolvent.  That is exactly the sort of situation that requires the corporate veil to be pierced, to prevent corporate insiders from rendering the corporate debtor unable to meet its obligations.

### The Corporate Veil Between Amar Grewal's Companies Should Be Pierced

At the time Lynx filed this motion, it was not yet aware that Amar Grewal owned not only all of ASG but also all of Natura.  That fact sheds a great deal of light on why the funds flow so freely between the two corporations.  It is appropriate to hold that one corporation is the alter ego of another when the corporations have identical owners, there is a commingling of assets between the corporations, and the corporations operate in each other's names.  *Stochastic Decisions, Inc. v. DiDomenico*, 565 A.2d 1133, 1135-36 (N.J.Super. 1989).  In *Stochastic,* just as in this case, the defendants argued that the corporations involved maintained separate existences and "never engaged in the same business." *Id.* at 1135.  The court, however, found those arguments irrelevant.  There, as here, not only was there common ownership and management (indeed, here, identical ownership and management), but there, as here, the assets of one corporation were readily commingled with that of the other.  In addition, as the court stated in *Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001), a key factor to consider in piercing the corporate veil is "gross undercapitalization."  The equitable remedy of piercing the corporate veil is especially needed when one corporation (Natura) is so

4

undercapitalized that it cannot pay its own operating expenses and it is borrowing money from its sister corporation (ASG) which, in turn, is unable to pay its own bills.

The *Pearson* court set forth other considerations that would lead to piercing the corporate veil, including a failure to observe corporate formalities. 247 F.3d at 484. Here, one corporation "loaned" another money without even a perfunctory loan document, simply paying the other's bills, and only some time later formalized that "loan" with promissory notes so deficient in specificity as to be unenforceable. Another factor was the insolvency of the debtor corporation, and here ASG has proved itself unable to pay attorneys fees or court-ordered sanctions, at least on time. *Id.* at 485. Yet another factor is the siphoning of funds from the debtor corporation, just as Amar Grewal has siphoned funds from ASG to Natura. Moreover, ASG and Natura, like the sister corporations held to be jointly liable in *Stochastic,* 565 A.2d at 1135, present themselves to those with whom they do business as, in essence, one entity. Thus, for example, suppliers sent invoices that, on the same document, billed for items sold to Natura and items sold to ASG. For example, Associated Labels invoiced "ASG Consultants, Ltd." for labels for four sets of Repellex product labels and two sets of Natura product labels on August 26, 2002. *See* Exhibit 16, an Associated Labels invoice to ASG.

When a corporation is "being drained of its profits" so as to leave it "insolvent to the detriment" of those who brought suit against it, it would be appropriate to pierce the corporate veil. *Arch v. American Tobacco Co.,* 984 F.Supp. 830, 840 (E.D.Pa. 1997). In *Arch,* smokers suing tobacco companies sought to pierce the veil between the domestic subsidiary over which they could get jurisdiction and the foreign parent. The defendants in this case cited *Arch,* see defendants' memorandum at 7, because that court observed that mere difficulty in collecting a

5

judgment against the foreign parent did not justify piercing the veil.  What defendants failed to note is what the *Arch* court said would justify piercing the veil, evidence that "B & W is being drained of profits by BAT, and thus left insolvent...."  *Id.* at 840.  Amar Grewal is draining ASG of its profits to prop up Natura, itself a losing proposition.  By so doing, Mr. Grewal and Natura are rendering ASG unable to meet current financial obligations including attorneys fees and court-ordered sanctions.  That alone justifies piercing the corporate veil.

**Natura is ASG's successor**

Defendants' only argument against Natura being ASG's successor is based on a misreading of the decision in *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265 (D.N.J. 1994)(discussed at length in the initial memorandum at 9-11).  In that case, the court set forth some factors to consider in finding successor liability.  As pointed out in the initial memorandum, Natura clearly meets some of them, continuity of management, location and business operations and common ownership, for example.  Defendants assert, however, that one factor mentioned in *Glynwed* was that the first corporation ceased doing business, and they claim ASG has not done so.  This argument ignores the clear statement in *Glynwed* that, "[n]ot all of these factors need be present for a de facto merger or continuation to have occurred." *Id.* at 276, quoting *Luxliner P.L. Export v. RDI Luxliner,* 13 F.3d 69, 73 (3d Cir.1993) and *Good v. Lackawanna Leather Co.,* 96 N.J.Super. 439, 452, 233 A.2d 201 (1967).  Defendants are wrong in asserting that cessation of business is a requirement of successor liability, and they have made no other argument.

**ASG's transfer of funds to Natura was fraudulent**

Lynx already has pointed out in its initial memorandum the ways in which ASG's

transfer of funds meets the criteria of several different types of fraudulent conveyances under the New Jersey Fraudulent Conveyance Act, and defendants have not actually addressed any of these. Defendants do make some assertions of alleged fact, however, that are worth exploring. *See* Defendants' response at 8. First, defendants assert that ASG "loaned" Natura funds. The specious nature of the loan documents speaks for itself. Second, they assert in conclusory fashion that the "loans" were not done with the intent to hinder, delay or defraud any creditors. That is a factual defense raised to one set of allegations, but the allegations Lynx has made concerning an intent to hinder, delay or defraud creditors remain colorable and supported by reasonable inferences in the record. *See* N.J.S.A. §25-2-26 (factors to determine actual intent include whether transfer was to an insider, made at a time when the debtor had been sued or threatened with suit or at a time when a substantial debt had been incurred). Moreover, the "lack of intent" defense applies to only one type of fraudulent conveyance.

    Defendants also assert that ASG has not become insolvent as a result of advancing funds to Natura. Yet at the time it first "loaned" money to Natura, ASG was losing money. (The first promissory note is dated January 31, 2002; the tax return for the year ended that same date showed a loss. *See* Exhibit 5 to Lynx's initial memorandum, a copy of that tax return). Currently, ASG is not paying its obligations to its own lawyers. It seems disingenuous to deny that, at the very least, Lynx has a colorable claim that ASG is insolvent.

## **CONCLUSION**

    Defendants now assert that Amar Grewal took money from ASG, which he owns, and used that money to pay the bills for another company he owns, Natura. They assert that some time later, after ASG had been paying Natura's bills, Natura agreed to pay that money back. Yet

there is no date set for when the debt is due, and even the exact amount of this debt is unknown, since Natura did not even agree to a stated interest rate. Given defendants' own factual assertions, the need to amend the complaint to include Natura could not be clearer.

                                            Respectfully submitted,

                                            KRAMER & KRAMER, LLP

Dated: March 3, 2004              BY: /s/ Mitchell A. Kramer (MK867)
                                                Mitchell A. Kramer
                                                1077 Rydal Road, Suite 100
                                                Rydal, PA   19046
                                                (215) 887-9030

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Reply Memorandum in Support of Motion For Leave To File A Second Amended Complaint to be served on counsel for defendants via Facsimile and First Class Mail, as follows:

>Robert B. Bodzin, Esquire
>Eric J. Schreiner, Esquire
>Kleinbard, Bell & Becker LLP
>1900 Market Street, Suite 700
>Philadelphia, Pennsylvania 19103
>Facsimile: (215) 568-0140

Date: March 3, 2004                                        /s/ Mitchell A. Kramer (MK867)
                                                          Mitchell A. Kramer
                                                          Attorney for Plaintiff